**MILSTEIN, ADELMAN & KREGER, LLP**
Wayne S. Kreger, State Bar No. 154759
Sara D. Avila, State Bar No. 263213
2800 Donald Douglas Loop North
Santa Monica, California 90405
Telephone: (310) 396-9600
Fax: (310) 396-9635

**WHATLEY DRAKE KALLAS**
Joe Whatley, Jr. (*Pro Hac Vice*) NY Bar No. 4406088)
1540 BROADWAY, 37TH FLOOR
NEW YORK , NY 10036
Telephone: (212) 447-7070

**LAW OFFICES OF HOWARD WEIL RUBINSTEIN**
Howard W. Rubinstein (*Pro Hac Vice*) FL Bar No. 104108)
Post Office Box 4839
Aspen, Colorado 81611
Telephone: (832) 715-2788

Attorneys for Plaintiff Sabena Lakshmi Kammula

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABENA LAKSHMI KAMMULA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>KELLOGG COMPANY, a Delaware corporation; KELLOGG USA, INC., a Michigan corporation; KELLOGG SALES COMPANY, a Delaware corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | No. CV09-08102 (MMM) (RZx)<br><br>CLASS ACTION<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION<br><br>[Filed concurrently with Notice of Motion and Motion for Class Certification; Declaration of Wayne S. Kreger, Esq.; Declaration of Sabena Kammula; [Proposed] Order]<br><br>Date:  March 29, 2010<br>Time: 10:00 A.M.<br>Crtrm: 780<br>Judge: Hon. Margaret  M. Morrow |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................1

II.   BACKGROUND ......................................................................................4

    A.   Procedural History ........................................................................4

    B.   Factual Background .......................................................................5

    C.   Meet and Confer............................................................................8

III.  PROPOSED CLASS DEFINITION ........................................................8

IV.   ARGUMENT......... ...................................................................................8

    A.   This Action Satisfies The Requirements of Rule 23(a) ..................10

        1.   Numerosity Is Established ......................................................10

        2.   Commonality Is Established Because This Case Is
              Comprised Of Uniform Misrepresentations And
              Omissions Which Gave Rise To Common Questions
              Subject to Common Proof ......................................................11

        3.   Typicality Is Established Because Plaintiff's Claims
              Are Based On The Same Conduct And The Same
              Injury As The Class ...............................................................12

        4.   Adequacy Of Representation Is Satisfied By Plaintiff
              And Her Counsel ...................................................................13

            a)   Plaintiff Nor Her Counsel Has Any Conflict
                  Of Interest With The Proposed Class............................13

            b)   Plaintiff And Her Counsel Will Prosecute This
                  Action Vigorously .........................................................14

                (1)   Ms. Kammula Is An Adequate Class
                       Representative ......................................................14

                (2)   Counsel Are Qualified, Experienced And
                       Have The Resources to Vigorously Prosecute

Milstein, Adelman & Kreger, LLP<br>2800 Donald Douglas Loop North<br>Santa Monica, California 90405

i

This Action ............................................................ 14

B.   The Court Should Certify A Rule 23(b)(2) Class ................................ 15

1.   Plaintiff's Primary Goal Is Injunctive Relief ............................ 16

C.   The Court Should Certify A Rule 23(b)(3) Class ................................ 17

1.   Common Issues Predominate Over Individual Issues .............. 17

a)   Individual Reliance Is Irrelevant To The
Inquiry On Plaintiff's UCL And CLRA Claims ............ 19

b)   Individual Reliance Is Irrelevant To The
Inquiry On Plaintiff's Fraud Claims .............................. 21

2.   Class Action Is The Superior Method of Adjudication ............ 23

D.   The Court Should Appoint MAK And WDK As Class Counsel ........ 24

V.   CONCLUSION............................. .............................................. 24

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anchem Products, Inc. v. Windsor* (1997)
    521 U.S. 591 .................................................................9, 17, 23

*Blackie v. Barrack* (9th Cir. 1975)
    524 F.2d 891 ................................................................9, 22, 23

*Crawford v. Honig* (9th Cir. 1994)
    37 F.3d 485 ..........................................................................13

*Dukes v. Wal-Mart, Inc.* (9th Cir. 2007)
    474 F.3d 1214 ...................................11, 12, 14, 16, 23

*Eisen v. Carlise & Jacquelin* (1974)
    417 U.S. 156 ..........................................................................9

*Gen. Tel. Co. of Southwest of Falcon* (1982)
    457 U.S. 147 ........................................................................12

*Gulf Oil v. Bernard* (1981)
    452 U.S. 89 ...........................................................................3

*Haley v. Medtronic, Inc.* (C.D. Cal. 1996)
    169 F.R.D. 643 ....................................................................14

*Hanlon v. Chrysler Corp.* (9th Cir. 1998)
    150 F.3d 1011 ...............................10, 11, 12, 13, 17, 18

*Hanon v. Dataproducts Corp.* (9th Cir. 1992)
    976 F.2d 497 ..................................................................10, 12

*In re Abbott Labs. Norvir Antitrust Litig.* (N.D. Cal. June 11, 2007)
    2007 WL 1689899, *6 ..................................................10, 19

*In re First Alliance Mortgage Co.* (9th Cir. 2006)
    471 F.3d 977 ..................................................................21, 22

*In re Mego.Fin.Corp.Sec.Litig.* (9th Cir. 2000)

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

iii

1

213 F.3d 454 ....................................................................................9

2

*In re Syncor ERISA Litigation* (C.D. Cal. 2005)

3

227 F.R.D. 338 .................................................................................4

4

*Jimenez v. Domino's Pizza, Inc.* (C.D.Cal. 2006)

5

238 F.R.D. 241 ..............................................................................14

6

*John Wayne, et al. v. Biotech Research, et al.* (C.D.Cal. September 6, 2007)

7

CV-06-1861 AHM (JWJx) ............................................................18

8

*Jordan v. Los Angeles County* (9th Cir. 1982)

9

669 F.2d 1311 ...............................................................................10

10

*Lerwill v. Inflight Motion Pictures, Inc.* (9th Cir. 1978)

11

582 F.2d 507 .................................................................................13

12

*Medrano v. WCG Holdings, Inc.* (C.D.Cal. Oct. 15, 2007)

13

2007 WL 4592113, *3 .....................................................................9

14

*Molski v. Gleich* (9th Cir. 2003)

15

318 F.3d 937 .................................................................................16

16

*Mortimore v. FDIC* (W.D. Wash. 2000)

17

197 F.R.D. 432 ..............................................................................11

18

*Negrete v. Allianz Life Ins. Co. of N. Am.* (C.D.Cal.2006)

19

238 F.R.D. 482 .........................................................................17, 21

20

*O'Connor v. Boeing North American, Inc.* (C.D.Ca. 1998)

21

184 F.R.D. 311 ................................................................................9

22

*Phillips v. Accredited Home Lenders Holding Co.* (C.D.Cal. may 16, 2007)

23

2007 U.S. Dist. LEXIS 59880 ......................................................12

24

*Plascencia* (N.D. Cal., August 21, 2009)

25

2009 WL 2560732 at *10 ..............................................................20

26

*Reynoso v. South County Concepts* (C.D.Cal. Oct. 15, 2007)

27

2007 WL 4592119, *3 ...............................................................9, 23

28

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

*Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al.* (C.D. Cal. Nov.13, 2008)

     SACV 07-1306 JVS (RNBx) ........................................................15

*Slaven v. BP Am., Inc.* (C.D.Cal. 2000)

     190 F.R.D. 649 ........................................................10

*Sollenbarger v. Mountain Sttes Tel. & Tel. Co.* (D.N.M. 1988)

     121 F.R.D. 417 ........................................................9

*Staton v. Boeing Co.* (9th Cir. 2003)

     327 F.3d 938 ........................................................12

*Thompson Medical Co., Inc. v. F.T.C.*, (D.C. Cir. 1986)

     791 F.2d 189, cert. *denied* 479 U.S. 1086 (1987) ...........................................2

*Valentino v. Carter-Wallace, Inc.* (9th Cir. 1996)

     97 F.3d 1227 ........................................................17, 23

*Von Collin v. County of Ventura* (C.D. Cal. 1999)

     189 F.R.D. 583 ........................................................10

*Walters v. Reno* (9th Cir. 1998)

     145 F.3d 1032 ........................................................15

*Weiner, et al. v. Dannon Company, Inc.* (C.D.Cal. January 30, 2009)

     255 F.R.D. 658 ........................................................3, 18

*Williams v. Gerber Prods. Co.* (9th Cir. 2008)

     552 F.3d 934 ........................................................3

*Yamamoto v. Omiya* (9th Cir. 1977)

     564 F.2d 1319 ........................................................9

*Zinser v. Accufix Research Inst.* (9th Cir. 2001)

     253 F.3d 1180 ........................................................9, 10, 17

**STATE CASES**

*In re Tobacco II Cases* (2009)

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

v

46 Cal.4th 298.................................................................................19, 20, 21

*Mass. Mutual Life Ins. Co. v. Superior Court* (Cal. App. 4th Dist. 2002)

    97 Cal.App.4th 1282........................................................................21

*Richmond v. Dar Indus., Inc.* (1981)

    29 Cal. 3d 462....................................................................................3

*Vasquez v. Superior Court* (1971)

    4 Cal.3d 800.......................................................................21, 22, 23

*Wilens v. TD Waterhouse Gp., Inc.* (2003)

    120 Cal.App.4th 746..........................................................................3

**FEDERAL STATUTES**

Fed.R.Civ.P. 23(a) ...............................................................................10

Fed.R.Civ.P. 23(a)(1)...........................................................................10

Fed.R.Civ.P. 23(a)(3)...........................................................................12

Fed.R.Civ.P. 23(a)(4)...........................................................................13

Fed.R.Civ.P. 23(b)(2) ..........................................................................15

Fed.R.Civ.P. Rule 23(b)(3) .............................................................17, 23

Fed.R.Civ.P. 23(b)(3) Advisory Committee Notes, 1966 Amendment ..................18

Fed.R.Civ.P. 23(b)(3)(A) – (D) ...........................................................23

Fed.R.Civ.P. 23(g) ...............................................................................24

Fed.R.Civ.P. 23(g)(1)(A)......................................................................24

**OTHER AUTHORITIES**

Advisory Committee on Rule 23, Proposed Amendments to the Rules of Civil Procedure, 39 F.R.D. 69, 103 (1966)...........................................................9

*Newberg on Class Actions* § 3.3 (4th ed. 2002) ...................................10

*Newberg on Class Actions*, § 4:30 (4th ed. 2002) ................................24

Schwarzer, Tashima & Wagstaffe (The Rutter Group 1998)

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

*Cal.Prac. Guide: Fed.Civ.Pro.Before Trial* § 10:250....................................9

Wright, Miller & Kane § 1754 at 49.........................................................9

**Milstein, Adelman & Kreger, LLP**
**2800 Donald Douglas Loop North**
**Santa Monica, California 90405**

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

# I. INTRODUCTION

This is a very simple case about one big lie told by Defendants Kellogg Company, Kellogg USA, Inc. and Kellogg Sales Company (collectively, "Kellogg" or "Defendants") to every single class member who purchased Kellogg's Rice Krispies or Cocoa Krispies cereal (the "Immunity Cereals" or the "Products"). Taking advantage of the media hype surrounding the H1N1 flu virus in 2009, Kellogg preyed upon worried parents and other consumers when it unveiled the so-called "improved" version of Cocoa Krispies and Rice Krispies. Specifically, starting in summer 2009, Kellogg unveiled a large banner on the front of every box, proclaiming each Product "NOW HELPS SUPPORT YOUR CHILD'S IMMUNITY" and contains "25% daily value of antioxidants and nutrients." Kellogg's use of the word "NOW" signaled to parents and other consumers the cereals were new and improved versions of the cereals Kellogg previously manufactured. Based on these prominent and uniform misrepresentations, Kellogg duped thousands of California consumers into purchasing the Immunity Cereals

In truth, though, the Immunity Cereals do not support consumers' immunity or provide these levels of antioxidants and nutrients. Indeed, when called to the carpet by the attorney general for the state of Oregon on their bold immunity claims, Defendants chose to discontinue use of the immunity claims rather than provide reliable and competent scientific evidence. Indeed, Kellogg will likely argue class certification is unnecessary because it reached an agreement with the Attorney General for the State of Oregon in December 2009 that it would cease shipment and destroy packaging with the immunity claims, among other things (set forth in detail below). Kellogg's agreement with the Oregon attorney general, however, demonstrates California residents would be well-served by a collective remedy.[1]

---

[1] This action is subject to LR 23-3. On February 2 parties filed with the Court a stipulation and proposed order to extend the statutory time to file a motion for class certification because discovery is incomplete. Dkt. 22. The extension was not

Further, certification of a California class is still necessary to both obtain a permanent injunction enjoining Defendants from making such immunity claims in the future, and provide restitution to California residents who purchased the Immunity Cereals.

First, common factual issues predominate. Kellogg made the identical false promise and written misrepresentations to every single class member.  Indeed, they appear on each and every box of the Immunity Cereals in a large, bold font that is nearly the size of the name of the cereal.  As such, this case can be resolved by considering four simple factual issues on a classwide basis:

1. Did Kellogg claim, on the front label of each Rice Krispies and Cocoa Krispies box, that each Product "NOW HELPS SUPPORT YOUR CHILD'S IMMUNITY"? This fact is indisputable.

2. Did Kellogg claim, on the front label of each Rice Krispies and Cocoa Krispies box, that it contained "25% daily value of antioxidants & nutrients"?  This fact, too, is indisputable.

3. Does Kellogg have the requisite competent and reliable scientific evidence to support its promises of supporting a child's immunity and providing 25% daily value of antioxidants and nutrients? Inasmuch as Kellogg is required to have such information at the time the claims were made (*see, e.g. Thompson Medical Co., Inc. v. F.T.C.*, 791 F.2d 189 (D.C. Cir. 1986), cert. *denied* 479 U.S. 1086 (1987)), this fact is easily ascertained from Kellogg's own files.

4. Has Plaintiff and the Class been damaged, and if so, what is the nature and amount of the damages?

granted. Plaintiff respectfully reserves the right to supplement this motion with additional evidence, as parties complete discovery.

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

2

1   Second, once those factual issues are resolved, the application of the relevant law
2   poses no obstacle to certification. The Court need look no further than its recent
3   decision in *Weiner, et al. v. Dannon Company, Inc.*, 255 F.R.D. 658 (C.D.Cal. January
4   30, 2009), which found the Rule 23(b)(3) predominance of common questions
5   requirement was satisfied in a putative class action alleging violations of the CLRA
6   and the UCL. *Dannon,* 255 F.R.D. at 668-671. There, this Court found that the
7   defendant's "alleged misrepresentations regarding the clinically proven health benefits
8   of the Products are prominently displayed on all of the Products' packaging" and thus
9   "the alleged misrepresentations were made to all class members." *Id.*, 255 F.R.D. at
10  669. *See also Williams v. Gerber Prods. Co*., 552 F.3d 934 (9th Cir. 2008) (reversing
11  dismissal of action, finding that the reasonable consumer should not "be expected to
12  look beyond misleading representations on the front of the box to discover the truth
13  from the ingredient list in small print on the side of the box").

14      Third, and more fundamentally, Kellogg sold thousands of boxes of the
15  Immunity Cereals based on patently false representations as to the Products'
16  benefits. Indeed, these representations were material, as "the characteristic that
17  distinguishes the Products from others on the market is their respective alleged
18  health benefit." *Dannon*, 255 F.R.D. at 669. This is further evidenced by Kellogg's
19  use of the word "NOW" in its bold statement that the Immunities Cereals "help
20  support [a] child's immunity."

21      Accordingly, hundreds of thousands of consumers have lost money and people
22  will continue to be defrauded by Kellogg if an injunction does not issue prohibiting
23  its false and advertising. The Supreme Court has long recognized that class actions
24  "serve an important function in our system of civil justice." *Gulf Oil v. Bernard,*
25  452 U.S. 89, 99 (1981). "Class actions are designed to adjudicate the claims of
26  many individuals at the same time, thereby eliminating the possibility of repetitious
27  litigation and providing small claimants with a method of obtaining redress for

28

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

3

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

claims that would otherwise be too small to warrant individual litigation." *Wilens v. TD Waterhouse Gp., Inc.*, 120 Cal.App.4th 746, 752 (2003) (citing *Richmond v. Dar Indus., Inc.,* 29 Cal. 3d 462, 469 (1981)). In addition, "allowing these individual claims to move forward separately would create a risk of inconsistent judgments involving identical [misrepresentations by Kellogg] exactly the problem which class actions are designed to prevent." *In re Syncor ERISA Litigation*, 227 F.R.D. 338, 343 (C.D. Cal. 2005).

Therefore, Plaintiff Sabena L. Kammula, on behalf of herself and the proposed class, respectfully requests that the Court issue an order granting this motion for class certification and (i) certify a California class under Rules 23(b)(2) and 23 (b)(3) and (ii) appoint Milstein, Adelman & Kreger, LLP and Whatley, Drake & Kallas, LLC, as counsel pursuant to Fed. R. Civ. P. 23(g).

## II. BACKGROUND

### A. Procedural History

On November 4, 2009, Plaintiff notified Defendants their immunities claims were in violation of the California Civil Code §§1750, et seq. ("CLRA"). Kammula Decl. ¶ 12. Plaintiff filed her original Complaint with this Court on November 5, 2009. Dkt. 1. The original Complaint only alleged a Cocoa Krispies Class. Personal service of the Complaint was deemed effective on November 20, 2009. Dkt. 10, 23, 24. Plaintiff filed a First Amended Complaint ("FAC"). The FAC added the Rice Krispies Sub-Class. FAC ¶ 36. Plaintiff agreed to extend the time for Defendants to respond to the operative Complaint. Dkt. 10. Defendants therefore filed an Answer to the First Amended Complaint ("Def. Answer") on January 22, 2010. Dkt. 21.

Pursuant to Local Rule 23-3, Plaintiff's motion for class certification was due within 90 days of service of the Complaint, on February 20, 2010. Parties stipulated to extend the deadline to a date to be determined at the initial status conference.

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

1    Dkt. 22.  The Court, however, did not enter the proposed stipulation extending the
2    time for Plaintiff to file the motion.  Kreger Decl. ¶ 7.

3    **B. Factual Background**

4    Defendant Kellogg Company is a Delaware corporation with a principal place
5    of business in Michigan.  FAC ¶ 14; Def. Answer at 8:13-14.  Defendant Kellogg
6    USA, Inc. is a Michigan corporation with its principal place of business in Michigan.
7    FAC ¶ 15; Answer  at 8:13-14. Defendant Kellogg Sales Company is a Delaware
8    Corporation with its principal place of business in Michigan.  FAC ¶ 16; Answer at
9    9:13-24.  Kellogg USA Inc. and Kellogg Sales Company operate as wholly-owned
10   subsidiaries of Kellogg Company.  FAC ¶ 14; Answer at 8:13-14.  Defendants
11   Kellogg Company, Kellogg Sales Company and Kellogg USA Inc. shall be
12   collectively referred to herein as "Kellogg" or "Defendants."

13   Cocoa Krispies is a "chocolatey, sweetened rice cereal" and Rice Krispies is a
14   "toasted rice cereal."  FAC ¶ 3; Answer at 3:10-11. Rice Krispies and Cocoa
15   Krispies shall be collectively referred to herein as the "Immunity Cereals" or the
16   "Products."  The Immunity Cereals are both packaged and marketed by Defendants.
17   FAC ¶ 3; Answer at 3:10-11.

18   Plaintiff is an individual residing in Los Angeles County, California.  FAC ¶ 13.
19   Plaintiff is the mother of two children. FAC ¶ 13.  In middle to late 2009, Plaintiff
20   became particularly concerned with improving the immune systems of her children.
21   Declaration of Sabena Kammula ("Kammula Decl.") ¶ 3.  During that time, Plaintiff
22   purchased Cocoa Krispies and Rice Immunity Cereals, relying on the label of each
23   of the Products.  Kammula Decl. ¶ 4.

24   Through a variety of advertising, including but not limited to television, print,
25   internet, and the packaging and labeling of the Immunity Cereals, Defendants
26   engaged in advertising and marketing campaigns suggesting the Immunity Cereals

27

28

help support their children's immunity.  *See* FAC ¶¶ 22, 23.  Indeed, Defendants made the following representations regarding the benefits of Immunity Cereals:

   a. **FRONT LABEL OF PRODUCTS:**
   - **"NOW HELPS SUPPORT YOUR CHILD'S IMMUNITY"**
   - **"25% DAILY VALUE OF ANTIOXIDANTS & NUTRIENTS"**

   b. **BACK LABEL OF PRODUCTS:**
   - **"Helping to support your family's IMMUNITY"**
   - **"has been improved to include antioxidants and nutrients that your family needs to help them stay healthy."**

FAC ¶¶ 4, 23; Answer at 4:14-17, 13:14-17.  A true and correct copy of the front of the Cocoa Krispies packaging is attached as **Exhibit "1"** to the Declaration of Wayne S. Kreger ("Kreger Decl.").  A true and correct copy of the back of the Cocoa Krispies packaging is attached as **Exhibit "2"** to the Kreger Decl.  A true and correct copy of the front of the Rice Krispies packaging is attached as **Exhibit "3"** to Kreger Decl.  A true and correct copy of the back of the Rice Krispies packaging is attached as **Exhibit "4"** to the Kreger Decl.

The above claims are false, deceptive and misleading.  FAC ¶ 24.  Defendants do not have competent and reliable scientific evidence to support their claims about the Immunity Cereals.  FAC ¶ 24.  Defendants do not cite to a single clinical trial or study on whether the Immunity Cereals support a child's immunity.  FAC ¶ 24.  Defendants introduced the Immunity Cereals into the marketplace to profit from a growing trend in the manufacturing, advertising and sales of so-called "functional foods."  FAC ¶ 25.

However, contrary to their consistent and uniform claims, Defendants make numerous material omissions.  Specifically, Defendants fail to disclose whether inclusion of certain ingredients outweighs the benefits of the Immunity Cereals, and render the "immunity" claims false and misleading. FAC ¶ 26.  Defendants also fail to

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

disclose whether the form and amount of the "antioxidants and nutrients" purportedly the Immunity Cereals "now" includes actually support a child's immunity.  FAC ¶ 27.

Defendants' uniform false representations to hundreds of thousands of consumers, including Plaintiff Sabena L. Kammula, led class members to collectively spending millions of their hard-earned dollars in reliance upon claims such as "NOW HELPS SUPPORT YOUR CHILD'S IMMUNITY[,]" among other claims. Defendants' immunity claims lead parents and those seeking to boost their immune systems, to believe the Immunity Cereals would have the tangible effect of supporting their body's immune system.  *See* FAC ¶ 28.   Indeed, Plaintiff believed, as the labels stated, that they would support immunity and would keep her family healthy. Kammula Decl. ¶ 6. Ms. Kammula would not have purchased the Products, but for Defendants' representations that consuming the Products would boost the immune systems of her children.  FAC ¶ 30.

Defendant recognized the false and misleading nature of its immunity claims, and issued a news release announcing "its decision to discontinue the immunity statements on all Kellogg's Rice Krispies cereals."  Kreger Decl., **Exhibit 5**.  Further, on December 17, after the filing of the instant action, the Oregon Attorney General announced an agreement with Kellogg to "stop shipping cereal boxes with the immunity language by January 15, destroy more than 2 million units of packaging with the immunity claim, and cease making such health claim unless it provides the Oregon Department of Justice with advance notice and competent reliable scientific evidence."   Defendants also agreed to donate cereal to Oregon Food Bank and Feeding America. Kreger Decl., **Exhibit 6**.  Such an arrangement with the Oregon Attorney General demonstrates common factual issues predominate, and that a remedy for California consumers can be fashioned on a classwide basis.

**C. Meet and Confer**

Before bringing this motion and consistent with Local Rule 7-3, on February 12, 2010, counsel for Plaintiff met and conferred with counsel for Kellogg regarding the substance of this motion.  Kreger Decl., at ¶ 2.

## III.   PROPOSED CLASS DEFINITION

Plaintiff seeks to certify two California classes pursuant to Rules 23(a), 23(b)(2), and 23(b)(3), as follows.  The proposed Cocoa Krispies Class consists of:

> **All persons residing in the State of California who purchased Cocoa Krispies for personal use and not for resale during the time period June 2009[2] through the date of certification.**

The proposed Rice Krispies Class consists of:

> **All persons residing in the State of California who purchased Rice Krispies for personal use and not for resale during the time period June 2009[3] through the date of certification.**

Excluded from both classes are any employees of Kelloggs, and any individuals receiving renumeration from Kelloggs.

## IV.   ARGUMENT

The dual purposes of Rule 23 are:  "(1) to promote judicial economy through the efficient resolution of multiple claims in a single action; and (2) to provide persons

---

[2] Plaintiff alleges Defendants unveiled the immunity language on its labels as early as June 2009. Upon confirmation through discovery, Plaintiff will amend the class definition to reflect the actual date the Immunity Cereals were available for purchase.

[3] Plaintiff alleges Defendants unveiled the immunity language on its labels as early as June 2009. Plaintiff will amend the class definition to reflect the actual date the Immunity Cereals were available for purchase.

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

with smaller claims, who would otherwise be economically precluded from doing so, the opportunity to assert their rights." *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 318 (C.D.Ca. 1998) (granting class certification) (citing Wright, Miller & Kane § 1754 at 49; Schwarzer, Tashima & Wagstaffe, *Cal.Prac. Guide: Fed.Civ.Pro.Before Trial* § 10:250 (The Rutter Group 1998)); *See also Eisen v. Carlise & Jacquelin*, 417 U.S. 156, 175 (1974); *Sollenbarger v. Mountain Sttes Tel. & Tel. Co.*, 121 F.R.D. 417, 436 (D.N.M. 1988). "[F]raud perpetrated on numerous persons by the use of similar misrepresentations" is particularly suited for a class action. *Anchem Products, Inc. v. Windsor*, 521 U.S. 591, 624 (1997) ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of antitrust laws") *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975) (quoting Advisory Committee on Rule 23, Proposed Amendments to the Rules of Civil Procedure, 39 F.R.D. 69, 103 (1966)), *cert denied*, 429 U.S. 816 (1976).

Given the purposes of the class action device, district courts have "broad discretion" to determine whether the Rule 23 requirements are met. *Zinser,* 253 F.3d at 1186; *In re Mego.Fin.Corp.Sec.Litig.*, 213 F.3d 454, 461 (9th Cir. 2000); *Yamamoto v. Omiya*, 564 F.2d 1319, 1325 (9th Cir. 1977). Further, the Rule 23(a) requirements are permissive. *See e.g. Reynoso v. South County Concepts*, 2007 WL 4592119, *3 (C.D.Cal. Oct. 15, 2007); *Medrano v. WCG Holdings, Inc.*, 2007 WL 4592113, *3 (C.D.Cal. Oct. 15, 2007). Thus, a trial court is only required to form a reasonable judgment. *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir 1975). In this regard, "[t]he court is bound to take the substantive allegations of the complaint as true." *Id.*

This proposed class action squarely meets the criteria of Rule 23(a)(1) to (4) of the Federal Rules of Civil Procedure and is maintainable under the Rule 23(b)(2) and 23 (b)(3) factors.

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

**A. This Action Satisfies The Requirements of Rule 23(a)**

Commonly referred to as the numerosity, commonality, typicality and adequacy requirements, *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), under Fed. R. Civ. P. 23(a), a district court may certify a class if: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). Plaintiff bears the burden of demonstrating "each of the four requirements of Rule 23(a) *and* at least one of the requirements of Rule 23(b)" are met. *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (italics added).

**1. Numerosity Is Established**

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed.R.Civ.P. 23(a)(1)). "where 'the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.'" *In re Abbott Labs. Norvir Antitrust Litig.*, 2007 WL 1689899, *6 (N.D. Cal. June 11, 2007) (quoting Newberg on Class Actions § 3.3 (4th ed. 2002)); *see also Von Collin v. County of Ventura,* 189 F.R.D. 583, 590 (C.D. Cal. 1999).

Although the number of class members by itself is not dispositive, as a general matter, courts have found that the numerosity requirement is satisfied when class size exceeds 40 members. *See Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D.Cal. 2000) (citations omitted). Other facts include geographical diversity, ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought. *Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982).

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Here, the proposed class fulfills the numerosity requirement. Given that each box of Krispies Cereal costs about $3.08 per box (wholesale), the class comprises of tens, if not hundreds, of thousands of California consumers. *See* Kreger Decl., **Exhibit 6.** Clearly, the numerosity requirement is met.

### 2. Commonality Is Established Because This Case Is Comprised Of Uniform Misrepresentations And Omissions Which Give Rise To Common Questions Subject To Common Proof

Under Rule 23(a)(2), there must be questions of law and/or fact common to the proposed class. Courts have described the showing needed to meet the commonality requirement as "minimal" and "not high." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *accord Mortimore v. FDIC,* 197 F.R.D. 432, 436 (W.D. Wash. 2000).

In assessing commonality, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon,* 150 F.3d at 1019. Additionally, "[t]he commonality test is qualitative rather than quantitative – one significant issue common to the class may be sufficient to warrant certification." *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214, 1225 (9th Cir. 2007).

This case is based on uniform misrepresentations made prominently on every box of Immunity Cereals sold to every class member. Accordingly, it is indisputable that the claims of all class members "stem from the same source." *See Hanlon*, 150 F.3d at 1019-20. As such, the case can be boiled down to a few common issues that can easily be resolved according to class-wide proof:

**Issue 1:**  Did Kellogg claim, on the label of each box, that the Products would "support your child's immunity"?

**Issue 2:**  Did Kellogg claim, on the label of each box, that the Products contain "25% daily value antioxidants & nutrient"?

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

**Issue 3:**   At the time Kellogg made the Immunity Cereals and related representations on its labels (and in its other advertising), did Kellogg have the requisite competent and reliable scientific evidence to substantiate those claims?

**Issue 4**:   Does Kellogg conduct constitute unfair competition and/or deceptive advertising under applicable law?

**Issue 5:**   Should Kellogg be permanently enjoined and agree to provide restitution to California consumers?

Accordingly, there is a common core of salient facts and legal issues. *See Hanlon,* 150 F.3d at 1019; *see also Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Phillips v. Accredited Home Lenders Holding Co.*, 2007 U.S. Dist. LEXIS 59880 (C.D.Cal. may 16, 2007) (commonality satisfied where claims arose from "the same solicitations"). Thus, the Rule 23(a)(2) commonality requirement is easily satisfied.

### 3.   Typicality Is Established Because Plaintiff's Claims Are Based On The Same Conduct And The Same Injury As The Class

Third, "[t]he typicality prerequisite of Rule 23(a) is fulfilled if 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Hanlon,* 150 F.3d at 1020 (quoting Fed.R.Civ.P. 23(a)(3)).   "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *accord Dukes,* 474 F.3d at 1232. Under Rule 23(a)'s "permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 140 F.3d at 1020. *See also Gen. Tel. Co. of Southwest of Falcon*, 457 U.S. 147, 157 (1982).

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Here, Plaintiff's claims are identical to the claims of the proposed Class. Plaintiff purchased and used the Immunity Cereals because she believed that the Products "help support [Plaintiff's] child's immunity". *See* Kammula Decl., ¶ 6. Plaintiff's claims pose the same questions of law and fact as the class members and arise from the same label claims that give rise to the claims of the other class members. Plaintiff suffered the same injury – the loss of purchase – and seeks an injunction on behalf of all Class members.  Accordingly, Plaintiff is well-suited to represent the Class.

### 4.   Adequacy Of Representation Is Satisfied By Plaintiff And Her Counsel

"The final hurdle interposed by Rule 23(a) is that 'the representative parties will fairly and adequately protect the interests of the class.'" *Hanlon*, 150 F.3d at 1020 (quoting Fed.R.Civ.P. 23(a)(4)).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs an their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf o the class?" *Id. See also Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Hanlon,* 150 F.3d at 1021; *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994).

### a)   Plaintiff Nor Her Counsel Has Any Conflict Of Interest With The Proposed Class

The class representative may not have interests antagonistic to the remainder of the class. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Here, Plaintiff's claims arise from the same uniform misrepresentations and standardized conduct of Kellogg as the Class, and Plaintiff seeks remedies equally applicable and beneficial to the Class.

---

### b) Plaintiff And Her Counsel Will Prosecute This Action Vigorously

#### (1) Ms. Kammula Is An Adequate Class Representative

The general rule is that an adequate class representative needs only to have personal experience with the claims of the lawsuit and a general familiarity with the facts, but not necessarily a clear recollection of all facts relevant to their claims. *See e.g., Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 249 (C.D.Cal. 2006).

Here, Plaintiff has personal experience with the claims of the lawsuit and is quite familiar with the underlying facts. *See* Kammula Decl., ¶ 1. Plaintiff purchased and used the Product based on the promises and representations of supporting immunity. *See id.* at ¶¶ 3-6.

Plaintiff attempted to have Defendants change the label's misleading misrepresentations prior to seeking money damages in this lawsuit. *See id.* at ¶¶ 12. When her attempts "fell on deaf ears," and Kellogg ignored her correspondence, Plaintiff promptly amended her Complaint to add money damages. *See id.* at ¶ 13. Clearly, Ms. Kammula will actively monitor and control this litigation and protect the interests of the Class. *See id.* at ¶¶ 9-12.

#### (2) Counsel Are Qualified, Experienced And Have The Resources To Vigorously Prosecute This Action

In considering the requirement that "Plaintiffs are represented by qualified and competent counsel[,]" *Dukes*, 474 F.3d at 1233, "the Court will look to the professional qualifications, skills, experience and resources of the lawyers." *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 650 (C.D. Cal. 1996).

Milstein, Adelman & Kreger, LLP ("MAK") and Whatley, Drake & Kallas, LLC ("WDK") are experienced attorneys in class action and complex litigation. MAK has represented many thousands of plaintiffs in over 250 complex actions, recovering

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

over $500 million for its clients. MAK is a well-known class action law firm, which specializes in these types of consumer class actions.  *See* Kreger Decl., ¶¶ 11-15.

Whatley, Drake & Kallas LLC ("WDK") is one of the largest plaintiffs' law firms in the United States. WDK is a law firm specializing in class actions and complex litigation.  WDK's class action experience expands through a broad spectrum of practice areas, including consumer fraud and abuse, health care, securities fraud, antitrust and trade regulation, mass torts, and insurance.  *See* Kreger Decl., ¶¶ 24-25. Attached as **Exhibit "7"** to the Kreger Decl. is a true and correct copy of WDK's firm resume.

**B. The Court Should Certify A Rule 23(b)(2) Class**

Pursuant to Rule 23(b)(2), a class action is proper where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."   Fed.R.Civ.P. 23(b)(2). The standard for certification is minimal, as "[i]t it sufficient if class members complaint of a pattern or practice that is generally applicable to the class as a whole[, e]ven if some class members have not been injured by the challenged practice." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). Although common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2). *Id.*

Here, Plaintiff and the Class complain of a standard and uniform practice of fraudulent and false claims appearing on the label of the Immunity Cereals that is generally applicable to the Class as a whole. As such, this case is no different than *Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al.*, SACV 07-1306 JVS (RNBx) (C.D. Cal. Nov.13, 2008) wherein this Court certified as nationwide Rule 23(b)(2) class when the conduct at issue involved alleged misrepresentations on the label of a supplement product. *See Rivera, supra,* at pp.6-8; Kreger Decl., **Exhibits 1-4**.

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

## 1.  Plaintiff's Primary Goal Is Injunctive Relief

"[C[lass actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive or declaratory relief, but may include cases that also seek monetary damages." *Molski v. Gleich*, 318 F.3d 937, 949 (9th Cir. 2003) (explaining that "the claim for monetary damages must be secondary to the primary claim for injunctive or declaratory relief."). In determining the applicability of Rule 23(b)(2), district courts "examine the specific facts and circumstances of the case, focusing predominantly on the plaintiff's intent in bringing the suit." *Dukes,* 474 F.3d at 1234. The key question is whether the plaintiffs' primary goal is to obtain injunctive relief, not whether plaintiffs will ultimately prevail or the possible size of the damages award. *See id.*, at 1234-35.

Here, Plaintiff demonstrated her primary goal in bringing this action is to obtain injunctive relief and stop Kellogg's false and misleading label claims.  *See* Kammula Decl. 12-13.  Plaintiff wants to make sure that the labels for Immunity Cereals are accurate so that users of the Product can know what they are buying and putting into their bodies. *Id.*

The damages component of the claims in this case, though substantial, is secondary to the goal of stopping the false labeling. Compare *Dukes*, 474 F.3d at 1235 (a suit by current and former employees for gender discrimination was primarily motivated by the desire to protect those class members); *Molski*, 318 F.3d at 950 (primary goal was to end practice of disability discrimination by owner and operator of service stations).

Plaintiff's claims allege injunctive relief is necessary to restrain Kellogg from continuing to commit their fraudulent and unfair policies.

In this regard, Plaintiff's letter pursuant to California's Consumer Legal Remedies Act (Cal. Civil Code § 1750, *et seq.*), and her requests for specific forms of injunctive relief in both her original Complaint and First Amended Complaint,

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

demonstrate Plaintiff's primary goal for this action is specific injunctive relief with respect to the Krispies Cereal labeling and advertising. *See* Amended Complaint, Exh. A ("CLRA Letter"); *see also* Amended Complaint at ¶ 79.

### C. The Court Should Certify A Rule 23(b)(3) Class

Class certification pursuant to Rule 23(b)(3) requires "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members of the class, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. Rule 23(b)(3). "Certification under Rule 23(b)(3) is proper 'whenever the actual interests of the parties can be served best by settling their differences in a single action." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 489 (C.D.Cal.2006) (quoting *Hanlon*, 150 F.3d. at 1022).

### 1. Common Issues Predominate Over Individual Issues

"The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than individual basis." *Hanlon*, 150 F.3d at 1022. The Court rests its examination on the legal or factual questions of the individual class members. *Id.* Central to this inquiry is "the notion that the adjudication of common issues will help achieve judicial economy." *Zinser*, 253 F.3d at 1189 (*quoting Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc.*, 521 U.S. at 617.

---

As this Court noted in *John Wayne, et al. v. Biotech Research, et al.,* CV-06-1861 AHM (JWJx) (C.D.Cal. September 6, 2007):

> The Court is required to find, as a condition of holding that a class action may be maintained under this subdivision, that the questions common to the class predominate over the questions affecting individual class members. It is only where this predominance exists that economies can be achieved by means of a class-action device. In this view, a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action…on the other hand, although having a common core, a fraud-[type] case may be unsuited for treatment as a class action if there was a material variation in the representations made or in the kinds of degrees of reliance by the persons to whom they were addressed.

Fed.R.Civ.P. 23(b)(3) Advisory Committee Notes, 1966 Amendment.

Here, common questions of fact and law predominate over any alleged idiosyncratic differences between proposed class members. Common factual issues predominate because all of Plaintiff's UCL and CLRA claims are based on the identical false promise and representation that Kellogg makes uniformly on every single Krispies Cereal box it sold to the proposed class members – that the Product will "support the body's immune system" and help consumers "stay healthy" and the like. *See e.g. Hanlon v. Chrysler Corp.,* 140 F.3d 1011, 1022 (9th Cir. 1998). Further, Defendants' misrepresentations regarding the Immunity Cereals' abilities to help support a child's immunity "are prominently displayed on all of the products' packaging" and thus "the alleged misrepresentations were made to all class members."

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

*Weiner, et al., v. Dannon Company, Inc.*, 255 F.R.D. 658 (C.D.Cal. January 30, 2009) (finding Rule 23(b)(3) predominance was satisfied).

As discussed above regarding "commonality," the factual questions posed by this case are simple: (1) were theses misrepresentations on every box; (2) does Kellogg have competent and reliable scientific evidence to support the boxes' bold representations; and, (3) what are the damages. These are all common issues that can easily be proven on a classwide basis.

Moreover, unlike most putative consumer fraud class actions that are based on an array of oral and written representations, this case is much simpler because it deals with a uniform, written misrepresentation made to every single class member. The primary issue for trial is simply whether the uniform representation is true of false. Accordingly, there are few, if any, significant individualized factual issues posed here.

### a) Individual Reliance Is Irrelevant To The Inquiry On Plaintiff's UCL And CLRA Claims

Kellogg may attempt to argue Plaintiff's UCL and CLRA claims pose individualized issues of reliance. It is well-settled that "claims brought under the California Unfair Competition Law are commonly certified for class treatment." *In re Abbott Laboratories Norvir Antitrust Litig.*, 2007 WL 168999, *8 (N.D.Cal. June 11, 2007)(finding that alleged conduct subject to common proof presented common questions of fact and law that class action was superior method of adjudication of UCL claim). Indeed, until recently, Kellogg was likely to argue that, pursuant to Proposition 64, each proposed class member must demonstrate reliance, and therefore the degree to which UCL claims involve individual issues that predominate over common issues turns on whether Proposition 64 imposed a new standing requirement that *all* class members must satisfy, or whether it is sufficient for Plaintiffs to show that *they* have standing. However, the California Supreme Court recently answered this question in *In re Tobacco II Cases*, 46 Cal.4th 298 (2009). The Court clarified

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

that only the named plaintiff in a UCL class action need demonstrate injury, causation and reliance. *Id.* As the California Supreme Court noted:

> While a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct, the plaintiff need not demonstrate it was the only cause. It is not necessary that the plaintiff's reliance upon the truth of the fraudulent misrepresentations be the sole or even the predominant or decisive factor influencing his conduct. It is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision. Moreover, a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material. A misrepresentation is judged to be "material" if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and as such materiality is generally a question of fact unless the jury could not reasonably find that a reasonable man would have been influenced by it."

*Id.* at 326. *Plascencia*, 2009 WL 2560732 (N.D. Cal., August 21, 2009). The *Plascencia* court was the first known case to apply the *In re Tobacco II* ruling. There, Northern District Judge Claudia Wilken held that, in light of *Tobacco II*, putative class members need not establish reliance. *Id.* "Common issues will thus predominate on UCL claims…as *Tobacco II* sets out a liberal approach to the reliance inquiry." *Id.*

Here, Plaintiff may prove with generalized evidence that Kellogg's conduct was "material" and "likely to deceive" members of the public. *Plascencia*, 2009 WL 2560732 at *10. Consumers were actually deceived by Kellogg's material

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

performance claims on their Immunity Cereals boxes.  It is clear Plaintiff suffered the same material deception as experienced by the proposed Class and appropriately seeks an injunction on behalf of all Class members.  Accordingly, Plaintiff is typical and well-suited to represent the Class.

Indeed, where such claims are "predicated on identical allegations," and "common, standardized sales materials," courts in the Central District of California have held that "[c]ommon issues regarding [defendants] fraudulent scheme predominate over questions affecting only individual members of the subclass." *Negrete*, 238 F.R.D. at 495-96 (certifying California UCL class action). Most notably, while post-Proposition 64 cases require that a class representative must allege an injury in fact and reliance, it is now well-established that there is no requirement that all absent class members must do the same. *See In re Tobacco Cases*, 46 Cal.4th 298. Regardless, under California law, there is an inference of reliance in the present case because Plaintiff alleges Kellogg made a single, material misrepresentation to each class member. *See Vasquez v. Superior Court*, 4 Cal.3d 800 (1971); *Mass. Mutual Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282 (Cal. App. 4th Dist. 2002) (the interference of reliance applies to CLRA claims).

### b) Individual Reliance Is Irrelevant To The Inquiry On Plaintiff's Fraud Claims

Any alleged differences in reliance of potential class members on the uniform misrepresentations do not outweigh the common course of Kellogg's conduct. *See e.g. In re First Alliance Mortgage Co.*, 471 F.3d 977, 989-991 (9th Cir. 2006). In *First Reliance*, the Ninth Circuit upheld the district court's certification of a class of borrowers alleging consumer fraud, noting that "[c]lass treatment has been permitted in fraud cases where, as in this case, a standardized sales pitch is employed." Rejecting the defendants' argument that individualized reliance issues predominated, the Ninth Circuit found that it "is the underlying scheme which demands attention.

Each plaintiff is similarly situated with respect to it, and it would be folly to force each bond purchaser to prove the nucleus of the alleged fraud again and again." *Id.* at 990-91.

According to *First Reliance*, the relevant test is whether the consumer fraud claims stem from a "common course of conduct." *Id.* at 990, quoting *Blackie*, 524 F.2d at 902 ("Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct in its broad outlines actionable, which is not defeated by slight differences in class members' positions").

The Ninth Circuit's view accords with that of the California Supreme Court that reliance may be inferred on a classwide basis where the alleged consumer fraud arises from uniform and standardized misrepresentations. In *Vasquez*, 4P.3d 964, the Court found if the plaintiffs "can establish that they were false, it should not be unduly complicated to sustain the burden of proving reliance thereon as a common element." The *Vasquez* Court went on to state:

> The rule in this state and elsewhere is that it is not necessary to show reliance upon false representations by direct evidence. The fact of reliance upon alleged false representations may be inferred from the circumstances attending the transaction which often times afford much stronger and more satisfactory evidence of the inducement which prompted the party defrauded to enter into the contract than his direct testimony to the same effect . . . The requirement that reliance must be justified in order to support recovery may also be shown on a class basis.   If the court finds that a reasonable man would

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

22

have relied upon the alleged misrepresentations, an inference of

justifiable reliance by each class member would arise.

*Id.* Therefore, based on the "common course of conduct" at issue in this case, class certification is appropriate. *Blackie*, 524 F.2d at 903-04.

## 2.   A Class Action Is The Superior Method Of Adjudication

Finally, a class action must be "superior to other available methods for the fair and efficient adjudication of a controversy." Fed.R.Civ.P. 23(b)(3). "A class action is the superior method for managing litigation if no realistic alternative exists." *Reynoso v. South County Concepts*, 2007 WL 452119, *4 (C.D.Cal. Oct. 14, 2007) (quotations omitted). In addition, a class action is superior where, as here, "class-wide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino*, 97 F.3d at 1234. Regarding the question of superiority, Rule 23(b)(3) sets forth four (4) nonexclusive factors:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C)  the desirability or undesirability of concentrating the litigation of the claims in a particular forum; (D) the difficulties likely to be encountered in the management of the litigation.

Fed.R.Civ.P. 23(b)(3)(A) – (D).

Each of the factors supports class certification here. First, the primary policy of the class action mechanism is to enable the collective vindication of the rights of numerous persons whose small claims may not be worth pursuing in individual actions. *See Amchem Prods., Inc.*, 521 U.S. at 617. Indeed, they would clog the "courts with innumerable individual suits litigating the same issues repeatedly." *Dukes*, 474 F.3d 1244.

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

---

23

Second, this suggests that a class action is needed because the amount at issue here ($3.08 multiplied by the number of units of Kellogg Immunity Cereals purchased in California) for an individual plaintiff is not enough to warrant an individual filing. *Newberg on Class Actions*, § 4:30 (4th ed. 2002).

### D. The Court Should Appoint MAK And WDK As Class Counsel

Rule 23(g) requires a district court to appoint class counsel for any class that is certified. *See* Fed.R.Civ.P. 23(g)(1)(A). In appointing class counsel, Rule 23(g) lists four factors for consideration: (1) the wok counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions or other complex litigation and the type of claims in the litigation; (3) counsel's knowledge of the applicable law; and, (4) the resources that counsel will commit to representing the class. Fed.R.Civ.P. 23(g).

## V. CONCLUSION

For the reasons stated herein, Plaintiff, on behalf of herself and the proposed class, respectfully requests that the Court issue an order granting this motion for class certification and: (1) certifying a Rule 23(b)(2) class; (2) certifying a Rule 23(b)(3) class; and (3) appointing Milstein, Adelman & Kreger, LLP and Whatley, Drake & Kallas, LLC as class counsel pursuant to Fed.R. Civ.P. 23(g).

DATED: February 18, 2010                  Respectfully submitted,

                                          Attorneys for Plaintiff Sabena L. Kammula

                                          /s/ Wayne S. Kreger
                                          MILSTEIN, ADELMAN & KREGER LLP
                                          Wayne S. Kreger (Cal. Bar No. 154759) 2800
                                          Donald Douglas Loop North
                                          Santa Monica, CA 90405

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WHATLEY DRAKE KALLAS
Joe R. Whatley, Jr.
1540 Broadway, 37th Floor
New York , NY 10036

LAW OFFICES OF HOWARD WEIL
RUBINSTEIN
Howard Weil Rubinstein (*Pro Hac Vice*)P.O.
Box 4839
Aspen , CO 81611

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION [Case No. CV09-08102 (MMM) (RZx)]