1  **MILSTEIN, ADELMAN & KREGER, LLP**
   Wayne S. Kreger, State Bar No. 154759
2  Sara D. Avila, State Bar No. 263213
   2800 Donald Douglas Loop North
3  Santa Monica, California 90405
   Telephone: (310) 396-9600
4  Fax: (310) 396-9635

5  **WHATLEY DRAKE KALLAS**
   Joe Whatley, Jr. (*Pro Hac Vice*) NY Bar No. 4406088)
6  1540 BROADWAY, 37TH FLOOR
   NEW YORK , NY 10036
7  Telephone: (212) 447-7070

8  **LAW OFFICES OF HOWARD WEIL RUBINSTEIN**
   Howard W. Rubinstein (*Pro Hac Vice*) FL Bar No. 104108)
9  Post Office Box 4839
   Aspen, Colorado 81611
10 Telephone: (832) 715-2788

11
   Attorneys for Plaintiff Michelle Weeks
12

13                  UNITED STATES DISTRICT COURT
14
              FOR THE CENTRAL DISTRICT OF CALIFORNIA
15

16 | SABENA LAKSHMI KAMMULA, | No. CV09-08102 (MMM) (RZx) |
17 individually and on behalf of all others
   similarly situated,                    | CLASS ACTION
18                                         |
          Plaintiff,                       | SUPPLEMENTAL DECLARATION
19                                         | OF WAYNE S. KREGER, ESQ. IN
      vs.                                  | SUPPORT OF SUPPLEMENTAL
20                                         | POINTS AND AUTHORITIES IN
   KELLOGG COMPANY, a Delaware             | SUPPORT OF MOTION FOR CLASS
21 corporation; KELLOGG USA, INC., a       | CERTIFICATION [FED.R.CIV.P. 23]
   Michigan corporation; KELLOGG          |
22 SALES COMPANY, a Delaware               | [Filed concurrently with Supplemental
   corporation, and DOES 1 through 100,    | Notice of Motion; Supplemental
23 inclusive,                              | Memorandum of Points and
                                           | Authorities; Declaration of Michelle
24        Defendants.                      | Weeks; [Proposed] Order]

25                                         | Date:  October 18, 2010
26                                         | Time: 10:00 A.M.
                                           | Crtrm: 780
27                                         | Judge: Hon. Margaret  M. Morrow

28
                            REDACTED
                                0
   SUPPLEMENTAL DECLARATION OF WAYNE S. KREGER, ESQ. [CASE NO. CV09-08102 (MMM) (RZx)]

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

## DECLARATION OF WAYNE S. KREGER

I, Wayne S. Kreger, hereby declare as follows:

1. I am an attorney duly licensed to practice law in the state of California and before this Court and am a senior partner and co-owner in the law firm Milstein, Adelman & Kreger, LLP ("MAK"), counsel for Plaintiff Sabena Kammula.  I have personal knowledge of the following matters and, if called to testify concerning them, could do so competently.

2. I am the head of MAK's Complex Litigation group.  Over the past eighteen years, I have represented thousands of plaintiffs in numerous complex and class action cases in state and federal courts throughout the country.   I am admitted to practice before the United States Supreme Court and am a member of the bars of California, New York, and the District of Columbia.

3. On November 4, 2009, original class representative Sabena Kammula, individually and on behalf of all other similarly-situated California consumers, notified Defendants their immunities claims were in violation of the California Civil Code §§1750, et seq. ("CLRA").  Plaintiff filed the original Complaint in this action on November 5, 2009. Dkt. 1.  The original Complaint only alleged a purported Cocoa Krispies Class.

4. The Complaint was personally served on November 20, 2010. Dkt. 10, 23, 24.

5. Plaintiff filed a first amended complaint ("FAC") on December 9, 2009. Dkt. 14.  The first amended complaint added allegations for a sub-class of individuals who purchased Rice Krispies. FAC ¶ 36.

6. Plaintiff filed the Second Amended Complaint ("Complaint" or "SAC") on May 6, 2010 and dismissed Plaintiff Sabena Kammula on May 21, 2010. Dkts. 44 and 47. Plaintiff Michelle Weeks is the current proposed Class representative.

7. Defendants filed an Answer to the First Amended Complaint ("Def. Answer") on or about January 22, 2010. Dkt. 21.

8.   Pursuant to Local Rule 23-3, Plaintiff's motion for class certification was due within 90 days of service of the Complaint. The Parties stipulated to extend the deadline to a date to be determined at the initial status conference. Dkt. 22.  The Court did not sign the proposed order submitted with the stipulation, so Plaintiff filed the original class certification motion on February 18, 2010.   Dkt. 27.   The Court graciously permitted Plaintiff to supplement the motion for class certification. Dkt. 35.

9.   Kellogg introduced the Immunity Cereals into the marketplace to profit from a growing trend in the manufacturing, advertising and sales of so-called "functional foods."

10.  Although Kellogg also marketed the other Krispies Brand cereals (e.g. Frosted Krispies and Jumbo Krispies), at this time Plaintiff seeks class certification only on behalf of those who purchased Rice Krispies and Cocoa Krispies during the Class Period.

11. On multiple occasions my office met and conferred with counsel for Defendants Kellogg Co., Kellogg USA, Inc. and Kellogg Sales Co. (collectively, "Kellogg") regarding Plaintiff's Motion for Class Certification over the past several weeks.   Most recently, on February 12, 2010, in accordance with L.R. 7-3, my office met and conferred with attorney Dean Panos, counsel for Defendants, regarding the substance of the Motion for Class Certification.  My office confirmed with Mr. Panos, as we had discussed weeks before, that Plaintiff would move for class certification in accordance with L.R. 23-3.   On or about April 26, 2010, Defendants agreed to stipulate that the numerosity requirement of Rule 23(a)(1) is satisfied under the facts of this case.

12. MAK is an experienced class action firm.   MAK specializes in litigating complex cases across a broad range of practice areas, including construction defect litigation, consumer class actions, corporate fraud, civil rights, employment law, insurance bad faith, inverse condemnation, mass tort, pharmaceutical, product liability, and other high-profile disputes.

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

2

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

13.  MAK has particular expertise in litigating false and misleading advertising and label cases involving the same issues as those of the instant case.

14. Over the past several years, MAK has represented many thousands of plaintiffs in over 250 complex actions, recovering over $500 million for its clients.  In the past 3 years, MAK has served as lead or co-lead counsel in several certified class actions, including: *Shaffer v. Continental Casualty Company, et al.,* 2:06-cv-02235-PSG (C.D. Cal.) (class certification aff'd. at D.C. no. 2:06-cv-02235-PSG-PJW); *Heath, et al. v. County of San Bernardino*, EDCV 06-411-VAP (C.D. Cal.); *Abigana, et al. v. Rylock Company Ltd*., Alameda County, Case No. 2002 076625; *Klotzer, et al. v. International Windows*, Solano County Superior Court Case No. FCS 021196; and *Hufschmidt v. Allstate Insurance Company*, Los Angeles County Superior Court Case No.  BC291782. MAK served as lead counsel in the certified cases *LaRosa v. Nutramerica Corp* (Trimspa). Los Angeles Superior Court, Case No. BC 309427 and was co-lead counsel in *Klyachman, et al. v. The Vitamin Shoppe, et al.,* New Jersey Superior Court Case Number L-1739-07; *Herbert Gelman v. Biotab Nutraceuticals* (Extenze)*, Inc., et al.*, Los Angeles Superior Court Case No. BC415948; *Griar, et al., v. Glaxosmithkline, Inc. et al* (Paxil).*,* Los Angeles Superior Court Case No. BC288536; *Mary Fallon v. E.T. Browne Drug Co., Inc., et al.* (Palmers), Los Angeles Superior Court Case No. BC411117. I have been appointed by the court as co-lead counsel in the case In Re: Budeprion XL Marketing & Sales Litigation (MDL No. 2107). I am also on the pleadings and class certification committee in the case In Re: Light Cigarettes Marketing and Sales Practices Litigation (MDL No. 2068).

15. Of the above, Trimspa, Extenze, Palmers and Paxil involve the same issues involved in the instant case.

16.  MAK has no conflicts of interest and will prosecute this action vigorously on behalf of Plaintiff and the Class.

17. A true and correct copy of the front of the Cocoa Krispies packaging is attached hereto as **Exhibit "1."**

18. A true and correct copy of the back of the Cocoa Krispies packaging is attached hereto as **Exhibit "2."**

19. A true and correct copy of the front of the Rice Krispies packaging is attached hereto as **Exhibit "3."**

20. A true and correct copy of the back of the Rice Krispies packaging is attached as **Exhibit "4."**

21. A true and correct copy of the relevant portions of the June 2, 2010 Rule 30(b)(6) deposition of Kellogg Co. representative Anne Marie Suarez-Davis is attached hereto as **Exhibit "5."**

22. A true and correct copy of the relevant portions of the June 2, 2010 Rule 30(b)(6) deposition of Kellogg Co. representative Laura Zervic is attached hereto as **Exhibit "6."**

23. A true and correct copy of the Attorney General of Oregon's press release of the agreement with Kellogg regarding the Immunity Cereals is attached hereto as **Exhibit "7."** According to this press release, the agreement was reached more than a month after Plaintiff filed both her original complaint and amended complaint, and prior to Defendants filing their Answer. The press release is located online at http://www.doj.state.or.us/releases/2009/rel122209.shtml (last viewed February 10, 2010).

24. A true and correct copy of the letter agreement between Kellogg and the Attorney General of Oregon is attached hereto as **Exhibit "8."**

25. A true and correct copy of the relevant portions of the June 2, 2010 Rule 30(b)(6) deposition of Kellogg representative Tom Monroe is attached hereto as **Exhibit "9."**

26. A true and correct copy of the June 3, 2010 Federal Trade Commission ("FTC") Order to Show Cause and Order Modifying Order in the case *In the Matter of Kellogg Company,* FTC Docket No. C-4262 is attached hereto as **Exhibit "10."**

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

27. A true and correct copy of the June 3, 2010 Federal Trade Commission's Concurring Statement of Commissioner Julie Brill and Chairman Jon Leibowitz in the case *In the Matter of Kellogg Company,* FTC Docket No. C-4262 is attached hereto as **Exhibit "11."**

28. A true and correct copy of the Federal Trade Commission's News Release regarding the Order and Concurring Statement in the case *In the Matter of Kellogg Company,* FTC Docket No. C-4262 is attached hereto as **Exhibit "12."** The News Release is located at http://www.ftc.gov/opa/2010/06/kellogg.shtm (last viewed June 10, 2010).

29. Sara D. Avila is an Associate with MAK and concentrates her practice in the area of complex consumer litigation. She is licensed to practice law in the state of California.

30. Joe R. Whatley, Jr. is a partner with Whatley, Drake & Kallas, LLP ("WDK"), and appears in this action *pro hac vice*. Dkt. 9. WDK is one of the largest plaintiffs' law firms in the United States. Mr. Whatley is admitted to practice law in New York, Alabama and Colorado. WDK is a law firm specializing in class actions and complex litigation. WDK's class action experience expands through a broad spectrum of practice areas, including consumer fraud and abuse, health care, securities fraud, antitrust and trade regulation, mass torts, and insurance. Attached hereto as **Exhibit "13"** is a true and correct copy of WDK's resume.


I declare under the penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.


Executed on August 10, 2010 at Santa Monica, California.


<div style="text-align:center">

<u>/s/ Wayne S. Kreger</u>
Wayne S. Kreger
Declarant

</div>

<div style="text-align:left; font-style:italic;">Milstein, Adelman &Kreger, LLP<br>2800 Donald Douglas Loop North<br>Santa Monica, California 90405</div>

# EXHIBIT 1

# EXHIBIT 2

Enjoy this wholesome breakfast and help keep your family healthy.

# EXHIBIT 3



# EXHIBIT 4



EXHIBIT
Suarez-Davis

# EXHIBIT 5









# EXHIBIT 6









# EXHIBIT 7

## Oregon Department of Justice
## Attorney General John Kroger

Oregon DOJ Home  |  Media  |  Current Releases  |  2009  |  December 17, 2009 Media Release

## KELLOGG SETTLEMENT WILL PROVIDE NEARLY 500,000 BOXES OF CEREAL TO THE HUNGRY

**December 17, 2009**

**Settlement over questionable health claims will provide Oregon Food Bank with 108,000 boxes of cereal, Feeding America will receive 372,000**

Attorney General John Kroger today announced that Kellogg Company has agreed to donate nearly 500,000 boxes of cereal to organizations that feed the hungry as part of a settlement over questionable product marketing allegations.

"Kellogg should be credited with addressing the allegations quickly and constructively," said Attorney General Kroger. "This settlement will directly benefit Oregonians who are hungry."

The case focused on cereal box marketing claims that Rice Krispies "helps support your child's immunity." The claim was part of a promotional campaign for Rice Krispies, Cocoa Krispies, Frosted Krispies and MultiGrain Jumbo Krispies.

Today's settlement requires Kellogg to stop shipping cereal boxes with the immunity language by January 15, destroy more than 2 million units of packaging with the immunity claim, and cease making such health claim unless it provides the Oregon Department of Justice with advance notice and competent reliable scientific evidence.

Kellogg also will contribute 108,000 boxes of cereal to Oregon Food Bank ($332,000 wholesale value) and 372,000 boxes to Feeding America ($1,146,000 wholesale value). The donated cereal boxes contain 5,760,000 servings.

"We thank Attorney General Kroger's office for its work to ensure the integrity of our food and to help fight hunger," said Mike Moran, OFB's food resource manager. "This donation will fill breakfast bowls for hungry children throughout Oregon."

The timing of this settlement is especially important because hunger has reached record levels. Distribution of emergency food and the number of people served throughout the Oregon Food Bank Network escalated to historic highs during the past fiscal year and remains at alarmingly high levels.

Every month, more than 86,000 children eat meals from emergency food boxes. The U.S. Department of Agriculture reported that Oregon has one of the highest hunger rates in the country. Hunger affects a child's development, health, ability to learn and potential for a fulfilling and productive life.

Here's how you can help:

- Fill a bag with food and take it to any Jiffy Lube or U.S. Bank. Watch for other businesses in your neighborhood that are collecting food for the OFB Network.
- Donate cash online at www.oregonfoodbank.org.
- Visit www.oregonfoodbank.org to learn about many other ways to help.

David Hart, Assistant Attorney in Charge of the Financial Fraud/Consumer Protection Unit, handled the case for the Oregon Department of Justice.

Attorney General John Kroger leads the Oregon Department of Justice. The Department's mission is to fight crime and fraud, protect the environment, improve child welfare, and defend the rights of all Oregonians.

**Contact:**

Tony Green, (503) 378-6002 tony.green@doj.state.or.us

# EXHIBIT 8





# EXHIBIT 9







# EXHIBIT 10

**UNITED STATES OF AMERICA**
**FEDERAL TRADE COMMISSION**

**COMMISSIONERS:**        **Jon Leibowitz, Chairman**
                          **William E. Kovacic**
                          **J. Thomas Rosch**
                          **Edith Ramirez**
                          **Julie Brill**

---

In the Matter of                                )
                                                )
                                                )        **DOCKET NO. C-4262**
**KELLOGG COMPANY,**                            )
      **a corporation.**                        )
                                                )

### ORDER TO SHOW CAUSE AND ORDER MODIFYING ORDER

The Commission issued a Complaint and a Decision and Order ("Order") against Kellogg Company ("Kellogg") in Docket C-4262 on July 27, 2009. The Complaint alleged that Kellogg had violated Sections 5(a) and 12 of the Federal Trade Commission Act, 15 U.S.C. §§ 45(a) and 52, by falsely claiming that a breakfast of Frosted Mini-Wheats cereal is clinically shown to improve children's attentiveness by nearly 20%.

Beginning in approximately late July 2009, Kellogg disseminated or caused to be disseminated advertising for Kellogg's Rice Krispies cereal, Kellogg's Jumbo Multi-grain Krispies cereal, Kellogg's Frosted Krispies cereal, and Kellogg's Cocoa Krispies cereal (hereafter collectively "Krispies cereal") that included representations about the benefits of Krispies cereal for children's immunity. The staff opened an investigation into Kellogg's dissemination of, and substantiation for, those representations.

In view of the foregoing, the Commission has determined in its discretion that it is in the public interest to reopen the proceeding in Docket No. C-4262, pursuant to Section 3.72(b) of the Commission's Rules of Practice, 16 C.F.R. § 3.72(b), and to modify the Order, as set forth below. Among other things, the modification expands the product and claim coverage in Part II of the Order to require substantiation for all health claims for any food, and revises the definition of "competent and reliable scientific evidence" for purposes of substantiating such claims. Kellogg has consented to reopening this docket, has waived its rights under Section 3.72(b) of the Commission's Rules of Practice, 16 C.F.R. § 3.72(b), and has consented to the modifications set forth below. Accordingly,

**IT IS ORDERED** that this matter be, and it hereby is, reopened.

**IT IS FURTHER ORDERED** that the Order in Docket No. C-4262 be, and it hereby is, modified to delete Definition number 3, and to renumber Definitions 4, 5, and 6 as Definitions 3, 4, and 5, respectively.

**IT IS FURTHER ORDERED** that the Order in Docket No. C-4262 be, and it hereby is, modified to replace the current language in Part II with the following:

## II.

IT IS FURTHER ORDERED that respondent, directly or through any corporation, subsidiary, division, trade name, or other device, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of Kellogg's® Frosted Mini-Wheats® cereal or any other food, in or affecting commerce, shall not make any representation, in any manner, expressly or by implication, including through the use of a trade name or endorsement, about:

      A.    the benefits, performance, or efficacy of such product for cognitive function, cognitive processes, or cognitive health; or

      B.    any other health benefit of such product;

unless the representation is non-misleading, and, at the time of making such representation, respondent possesses and relies upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.  For purposes of this Part, competent and reliable scientific evidence means tests, analyses, research, or studies that have been conducted and evaluated in an objective manner by qualified persons and are generally accepted in the profession to yield accurate and reliable results.

**IT IS FURTHER ORDERED** that the Order in Docket No. C-4262 be, and it hereby is, modified to replace the current language in Part IX with the following:

## IX.

This order, as modified on May 28, 2010, will terminate on May 28, 2030, or twenty (20) years from the most recent date that the United States or the Federal Trade Commission files a complaint (with or without an accompanying consent decree) in federal court alleging any violation of the order, whichever comes later; provided, however, that the filing of such a complaint will not affect the duration of:

A.   Any Part in this order that terminates in less than twenty (20) years;

B.   This order's application to any respondent that is not named as a defendant in such complaint; and

C.   This order if such complaint is filed after the order has terminated pursuant to this Part.

Provided, further, that if such complaint is dismissed or a federal court rules that respondent did not violate any provision of the order, and the dismissal or ruling is either not appealed or upheld on appeal, then the order will terminate according to this Part as though the complaint had never been filed, except that the order will not terminate between the date such complaint is filed and the later of the deadline for appealing such dismissal or ruling and the date such dismissal or ruling is upheld on appeal.

By the Commission.

Donald S. Clark
Secretary

SEAL:
ISSUED:  May 28, 2010

**Exhibit A**



**Exhibit B**

# Helping to
# support your family's
# IMMUNITY

*Kellogg's®* *Rice Krispies®* has been improved to include antioxidants and nutrients that your family needs to help them stay healthy.

*Rice Krispies®* is still the same delicious cereal you love, now with an excellent source of vitamins A, B, C and E – antioxidants and nutrients that help support the body's immune system.

Enjoy this wholesome breakfast and help keep your family healthy.

# EXHIBIT 11

**In the Matter of Kellogg Company, FTC Docket No. C-4262**

Concurring Statement of Commissioner Julie Brill
and Chairman Jon Leibowitz

June 3, 2010

Today the Commission announced that it has modified the order previously entered in this matter to bar the world's leading producer of breakfast cereals, the Kellogg Company ("Kellogg"), from making unsubstantiated or misleading claims about the health benefit of any food it produces, markets, or sells. The Commission's action is in response to dubious health claims made by Kellogg regarding the ability of its Rice Krispies cereal to boost children's immunity. We approve of the Commission's action announced today, and we appreciate the hard work of FTC staff who obtained the order modification.

We write separately, however, because we are concerned that while Kellogg was developing its questionable Rice Krispies campaign last year, it was simultaneously negotiating with the FTC to resolve earlier allegations that the company had deceptively marketed Frosted Mini-Wheats as improving children's attentiveness.

In April 2009, the Commission made public its concern that Kellogg had engaged in false advertising by claiming repeatedly — on the Internet, in print ads, on TV, and on product packaging — that eating a bowl of Frosted Mini-Wheats cereal was "clinically shown to improve kids' attentiveness by nearly 20%."[1] The Commission alleged that the claims were untrue and therefore violated Sections 5 and 12 of the FTC Act.[2] Kellogg resolved the Commission's concern about the Frosted Mini-Wheats campaign by agreeing in February 2009 to a proposed consent order that prohibits Kellogg from making false or unsubstantiated claims about the benefits, performance, or efficacy of Frosted Mini-Wheats, or any other morning food or snack food, for cognitive function, cognitive processes, or cognitive health. After publishing an analysis of the proposed settlement in the Federal Register, and after the close of a public comment period, the Commission issued its final Decision and Order on July 27, 2009, incorporating the terms of the negotiated settlement.[3]

What is particularly disconcerting to us is that at the same time that Kellogg was making promises to the Commission regarding Frosted Mini-

---

[1] In re Kellogg Co., FTC Docket No. C-4262 (Compl. Apr. 20, 2009), available at http://www.ftc.gov/os/caselist/0823145/090420kelloggcmpt.pdf; id. (Exs. A-H), available at http://www.ftc.gov/os/caselist/0823145/090420kelloggcomplaintexha-h.pdf.
[2] 15 U.S.C. §§ 45, 52.
[3] Kellogg, supra note 1 (Decision and Order, July 27, 2009), available at http://www.ftc.gov/os/caselist/0823145/090731kelloggdo.pdf.

Wheats, the company was preparing to make problematic claims about Rice Krispies.

Around July 2009, Kellogg unveiled a new advertising campaign for Rice Krispies and other varieties of Krispies cereals (including Cocoa Krispies) that promoted the purported benefits of the Krispies cereals for children's immunity. On product packaging, for example, Kellogg claimed that Rice Krispies cereal "now helps support your child's immunity," with "25 percent Daily Value of Antioxidants and Nutrients — Vitamins A, B, C, and E." The back of the cereal box stated that "Kellogg's Rice Krispies has been improved to include antioxidants and nutrients that your family needs to help them stay healthy."

Kellogg's dubious claims that Rice Krispies boosts children's immunity were no doubt months in the making, as they required development by Kellogg's creative team, designing and printing of new packaging, the production of a new television commercial, and approval by management, before the new campaign's public roll-out in the summer of 2009. In light of the timing of the launch of the Rice Krispies campaign, it is reasonable to conclude that planning for the new "immunity" claims was well underway while Kellogg was negotiating and finalizing its agreement with the FTC to not make unsubstantiated "cognitive ability" claims about Frosted Mini-Wheats.

In 2009, Kellogg had sales of nearly $13 billion and a marketing and advertising budget of over $1 billion.[4] The company clearly has the means and ability to carefully test its children's food products to determine if the products in fact provide health benefits for kids. We are also confident that Kellogg has the wherewithal to carefully develop truthful and nonmisleading advertising about such health benefits. As a trusted, long-established company with a presence in millions of American homes, Kellogg must not shirk its responsibility to do the right thing when it advertises the food we feed our children.

We hope that the Commission action announced today communicates to industry that it has an obligation to be honest with the public, and that the FTC will act swiftly to challenge questionable health claims about children's food products. Our kids and parents deserve no less.

---

[4] See Kellogg Company 2009 Annual Report, at 56 (Note 18), available at http://annualreport2009.kelloggcompany.com/note18-10K.html.

# EXHIBIT 12



**Federal Trade Commission**
Protecting America's Consumers

For Release: 06/03/2010

# FTC Investigation of Ad Claims that Rice Krispies Benefits Children's Immunity Leads to Stronger Order Against Kellogg

Leading cereal maker Kellogg Company has agreed to new advertising restrictions to resolve a Federal Trade Commission investigation into questionable immunity-related claims for Rice Krispies cereal. This is the second time in the last year that the FTC has taken action against the company.

"We expect more from a great American company than making dubious claims – not once, but twice – that its cereals improve children's health," said FTC Chairman Jon Leibowitz. "Next time, Kellogg needs to stop and think twice about the claims it's making before rolling out a new ad campaign, so parents can make the best choices for their children."

Kellogg has agreed to expand a settlement order that was reached last year after the FTC alleged that the company made false claims that its Frosted Mini-Wheats cereal was "clinically shown to improve kids' attentiveness by nearly 20%."

At about the same time that Kellogg agreed to stop making these kinds of false claims in its cereal ads, the company began a new advertising campaign promoting the purported health benefits of Rice Krispies, according to the FTC. On product packaging, Kellogg claimed that Rice Krispies cereal "now helps support your child's immunity," with "25 percent Daily Value of Antioxidants and Nutrients – Vitamins A, B, C, and E." The back of the cereal box stated that "Kellogg's Rice Krispies has been improved to include antioxidants and nutrients that your family needs to help them stay healthy."

Under the original settlement order covering Frosted Mini-Wheats, Kellogg was barred from making claims about the benefits to cognitive health, process, or function provided by any cereal or any morning food or snack food unless the claims were true and substantiated.

The expanded order against Kellogg prohibits the company from making claims about any health benefit of any food unless the claims are backed by scientific evidence and not misleading.

The Commission vote to modify the 2009 settlement order was 5-0, with Commissioner Julie Brill and Chairman Jon Leibowitz issuing a separate joint concurring statement. "As a trusted, long-established company with a presence in millions of American homes, Kellogg must not shirk its responsibility to do the right thing when it advertises the food we feed our children," they wrote in the statement, which can be found on the FTC's website and as a link to this press release at: http://www.ftc.gov/os/caselist/0823145/100602kelloggstatement.pdf.

Copies of the expanded order and related documents can be found on the FTC's website and also are available from the FTC's Consumer Response Center, Room 130, 600 Pennsylvania Avenue, N.W., Washington, DC 20580.

NOTE: A consent agreement is for settlement purposes only and does not constitute an admission of a law violation. When the Commission issues a consent order on a final basis, it carries the force of law with respect to future actions. Each violation of such an order may result in a civil penalty of up to $16,000.

The Federal Trade Commission works for consumers to prevent fraudulent, deceptive, and unfair business practices and to provide information to help spot, stop, and avoid them. To file a complaint in English or Spanish, visit the FTC's online Complaint Assistant or call 1-877-FTC-HELP (1-877-382-4357). The FTC enters complaints into Consumer Sentinel, a secure, online database available to more than 1,800 civil and criminal law enforcement agencies in the U.S. and abroad. The FTC's website provides free information on a variety of consumer topics.

**MEDIA CONTACT:**

Mitchell J. Katz
*Office of Public Affairs*
202-326-2161

**STAFF CONTACT:**

Heather Hippsley or Shira Modell
*Bureau of Consumer Protection*
202-326-3285 or -3116

(FTC Docket No. C-4262)
(Kellogg.final)

**E-mail this News Release**
If you send this link to someone else, the FTC will not collect any personal information about you or the recipient.

**Related Items:**

*In the Matter of* Kellogg Company, a corporation.
FTC File No. 082 3145

* Concurring Statement of Commissioner Julie Brill
  and Chairman Jon Leibowitz

**Exhibit A**

* Front Label
* Back Label

Last Modified: Thursday, June 3, 2010

# EXHIBIT 13

 WhatleyDrake&Kallas

## History

**Whatley Drake and Kallas, LLC is a national plaintiffs' firm, committed to litigation that results in meaningful change.** WD&K was formed in Birmingham in 1998 as a successor to the firm of Cooper, Mitch, Crawford, Kuykendall & Whatley. The Firm has a legacy of serving leadership roles in significant complex class action and derivative litigation, including securities, 401k, healthcare, insurance, employment and mass tort litigation. WD&K also remains devoted to its longstanding representation of unions and workers throughout the United States. Our class action and complex litigation practice was strengthened in 2006 by the addition of a team of experienced class action attorneys in New York City.

**In 2007, WD&K was one of thirteen firms named to the National Law Journal's "Plaintiffs' Hot List," the annual list of the country's most prominent plaintiffs' firms.** Our national practice includes approximately 40 lawyers across offices in New York City, Birmingham and Boston. Throughout its history, WD&K has been at the forefront in class actions and complex cases across the United States, effecting meaningful change through settlements and verdicts for classes of people, businesses and pension funds.

**WD&K and its partners have served as co-lead counsel in numerous high profile class actions that have recovered billions of dollars for class members, and have achieved significant corporate reforms.** Examples of recent cases in which the Firm served in a leadership role and was extensively involved in the litigation and negotiation of settlements include: In re: Managed Care Litigation (resulting in billions of dollars in cash and value to a class of 900,000 physicians throughout the United States); In re Insurance Brokerage Antitrust Litigation (settlements with defendants Zurich Insurance Company and Arthur J. Gallagher on behalf of commercial policyholders for in excess of $130 million); In re: Qwest Savings and Retirement Plan ERISA Litigation (approximately $37.5 million); In re: HealthSouth Corporation Securities Litigation ($445 million); In re Denney v. Jenkens & Gilchrist ($81.6 million settlement on behalf of former clients of Jenkens & Gilchrist in connection with illegal tax shelters); In re MedPartners Securities Litigation ($65 million); In re Kmart 401(k) Litigation ($11.75 million).

**Whatley Drake & Kallas has gained a national reputation for its aggressive litigation style and its quality legal work. A significant aspect of the Firm's resources is its ability to try a complex case.** One of the Firm's founding partners, Joe R. Whatley, Jr., is an experienced trial lawyer and is one of the few lawyers representing plaintiffs in complex class action litigation who has tried a class action case to verdict. He won a

$1.28 billion jury verdict on behalf of a class of cattle ranchers against Tyson Fresh Meats, Inc. in Pickett v. Tyson Fresh Meats, Inc., No. 96-A-1103-N (M.D. Ala.). Mr. Whatley also won what was at the time the largest wrongful death verdict in Louisiana history in Dunn v. Consolidated Rail Corp., 890 F. Supp. 1262 (M.D.La. 1995). Mr. Whatley's experience in this regard has made him a highly sought after member of plaintiffs' leadership groups in numerous complex and multidistrict litigations.

WD&K and its partners have also gained a national reputation for their consistent dedication to the interests of their clients by achieving results which include both compensation to victims of wrongdoing and significant industry reforms.

## Firm Litigation

### Securities, Derivative and 401(k) Litigation

Whatley Drake and Kallas has been appointed to leadership positions in numerous securities and 401(k) class actions and derivative litigation. Examples of cases in which WD&K currently holds or has held a leadership position include, among others, the following:

**In re HealthSouth Corporation Securities Litigation.** WD&K acts as Liaison Counsel in this securities class action pending in the United States District Court for the Northern District of Alabama. To date, a partial settlement of $445 million with the corporation and board of directors has been approved.

**In re Merck & Co., Inc., Securities, ERISA and Shareholder Derivative Litigation.** Joe R. Whatley, Jr. was named Co-Lead Counsel in this shareholder derivative action pending against Merck in the United States District Court for the District of New Jersey arising out of the marketing and sale of Vioxx.

**Hildebrand v. W Holding Company,** WD&K has been named as Co-Lead Counsel in this securities class action against W Holding Company, WesternBank Puerto Rico and certain individuals pending in the United Stated District Court for the District of Puerto Rico.

**In re MedPartners Securities Litigation.** WD&K served as Liaison Counsel in this action which was filed in Circuit Court of Jefferson County, Alabama on behalf of a class of shareholders against MedPartners. A settlement of $65 million was obtained and approved by the court.

**In re Qwest Savings and Retirement Plan ERISA Litigation.** Joe R. Whatley, Jr. and WD&K were appointed Co-Lead Counsel in this class action filed on behalf of all participants and beneficiaries of Qwest's 401(k) retirement plan. The suit alleged that various fiduciaries of the plan failed to properly exercise their duties as required under

2

ERISA. A settlement of approximately $37.5 million was obtained and approved by the court.

**In re Rankin v. Conaway (Kmart).** WD&K served as Lead Counsel in this class action on behalf of participants and beneficiaries of Kmart's Retirement Savings Plans who lost money when Kmart filed for bankruptcy. The suit alleged that various fiduciaries of the Plan failed to properly exercise their duties as required under ERISA. WD&K obtained a settlement of $11.75 million that was approved by the court.

**In re Xcel Energy.** WD&K served as Co-Lead Counsel on behalf of participants and beneficiaries of Xcel's 401(k) Retirement Plan. A settlement of $8 million was obtained and approved by the court.

**In re Broadwing, Inc. ERISA Litigation.** WD&K was Co-Lead Counsel in this class action brought on behalf of the participants and beneficiaries of Cincinnati Bell, Inc. Savings and Securities Plan, the Broadwing Retirement Savings Plan, and the Plans themselves, to remedy defendant's breaches of fiduciary duty under ERISA. A settlement of $11 million was obtained and approved by the court.

**McPhail, et al. v. First Command, et al.** The Firm is Co-Lead Counsel representing a class of military and former military families that were defrauded by First Command. First Command and its officers are being sued because they sold to military families unsuitable financial products that contained, among other things, a 50% sales load in the first year of the product. WD&K won class certification and that decision was upheld by the Ninth Circuit Court of Appeals. First Command appealed that decision to the Supreme Court of the United States and cert was denied. A settlement of $12 million has been preliminarily approved by the United States District Court for the Southern District of California.

## Insurance and Healthcare Litigation

Whatley Drake & Kallas is a leader in complex litigation against the largest insurance, brokerage and managed care companies in the world. WD&K has been appointed to leadership positions in the following cases, among others:

**Love v. Blue Cross Blue Shield Association,** WD&K is Co-Lead Counsel in this action pending in the United States District Court for the Southern District of Florida. Settlements have recently been reached with approximately ninety percent (90%) of the defendants. The settlements provide for in excess of $130 million of monetary benefits and practice change relief valued in excess of two billion dollars.

**In re Managed Care Litigation, MDL No. 1334.** WD&K is a member of the Plaintiffs' Steering Committee and represents a class of physicians against nine of the largest managed case providers in the United States including AETNA, CIGNA, United, Healthnet, Humana, PacifiCare, Prudential and WellPoint. The suit alleged that these

3

defendants engaged in a civil conspiracy in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO") to wrongfully and fraudulently pay doctors less than the amounts to which they were entitled. Settlements were reached with AETNA, CIGNA, Healthnet, Humana, Prudential and Wellpoint consisting of monetary relief and significant business practice changes valued in the billions of dollars have been obtained and approved by the court.

**In re Monumental Life Insurance Company, Industrial Life Insurance Litigation.** WD&K served as a member of the Plaintiffs' Steering Committee in this action pending in the United States District Courts for the Eastern District of Louisiana seeking redress for discriminatory practices of many major insurance companies with respect to the sale of life insurance products to minorities. Settlements of approximately $500 million dollars have been obtained in these cases and approved by the court.

## Environmental Litigation

Whatley Drake & Kallas is proud to represent thousands of individuals against the manufacturers of toxic substances released into the environment and has played a significant role in several nationally prominent environmental litigations including the following:

**In re Allen v. ALDOT.** WD&K represented residential property owners in three neighborhoods in Montgomery, Alabama harmed by the Alabama Department of Transportation's release of the chemical TCE into the groundwater of a 600-acre area affecting the property of some 1200 homeowners. A settlement of $5.5 million was obtained.

## Antitrust Litigation

Whatley Drake & Kallas is a leader in antitrust litigation and has held numerous leadership positions in such cases including, but not limited to, the following:

**In re Insurance Brokerage Antitrust Litigation, MDL No. 1663.** Edith Kallas and WD&K serve as Co-Lead Counsel and represent a putative class of purchasers of commercial and employer benefit insurance against many of the largest insurance companies and brokers in the country relating to these companies' alleged participation in a conspiracy to manipulate the markets for insurance. To date, settlements with two of the defendants, Zurich Insurance Company and Arthur J. Gallagher, have been reached for approximately $130 million.

**In re Lorazepam and Clorazepate Antitrust Litigation.** WD&K served as Third Party Payor Lead Class Counsel in this antitrust action which was transferred by order of the Judicial Panel for Multi-District Litigation to the United States District Court for the District of Columbia. Settlements of over $100 million were obtained.

4

**Pickett, et al. v. Tyson Fresh Meats, Inc.** Whatley Drake served as Co-Lead Counsel in representing a class of cattle ranchers against the major beef packers and producers in the country for conspiring to depress the price of beef on the cash market. In addition to serving in a leadership position in this action, Joe. R. Whatley of Whatley Drake served as trial counsel in the Middle District of Alabama for the plaintiff class and the jury returned a verdict of $1.28 billion for the class of ranchers and cattle producers.

**In re Pharmacy Benefit Managers Antitrust Litigation.** WD&K currently serves as Co-Lead Counsel in a nationwide class action that seeks to ensure patients' access to their selected pharmacists and that independent pharmacists will be able to provide quality care to the people who seek over 1.3 billion prescriptions from them each year. The suit alleges that these Pharmacy Benefit Managers conspired to and engaged in horizontal price fixing of the reimbursement rates paid to independent pharmacies.

**Waterbury Hospital v. U.S. Foodservice.** The Firm is Co-Lead Counsel and represents customers in a case involving a scheme whereby USF, the second largest food distributor in the U.S., fraudulently inflated the prices it charged to their cost-plus customers. USF's customers were charged, pursuant to cost-plus agreements, inflated prices that represented the cost of products plus a kickback to their suppliers.

## Oil and Gas Royalty

Whatley Drake & Kallas has represented oil and gas owners in litigation against oil companies. Settlements have been reached with Exxon, Torch Energy and LL&E, Inc. The Firm received more than $7.5 million for royalty owners.

## Consumer Class Litigation

Whatley, Drake & Kallas is actively involved in representing consumers in class action cases. Some of those cases include the following:

**Spencer v. Shell Oil.** The firm represented homeowners with polybutylene plumbing throughout the United States in this action in the Circuit Court of Greene County, Alabama. The firm obtained a settlement of approximately $1 billion to repair and replace leaking pipes and fittings for homeowners.

**In re Mattel, Inc. Toy Lead Paint Products Liability Litigation, MDL No. 1897.** WD&K is Co-Lead Counsel for a class of consumers of recalled toys due to their lead content or that were defectively designed with magnets which could come loose potentially injure children manufactured and sold by Mattel and Fisher Price. The suit seeks recovery for the purchase prices as well as reimbursement for medical testing.

**Hoffman v. American Express Travel Related Services Co., Inc.** WD&K represents

American Express cardholders who enrolled in a flight and baggage insurance program under which subscribing cardholders are automatically charged an insurance premium each time a flight is booked. The complaint alleges that AMEX engaged in a scheme to defraud cardholders by assessing premiums for cancelled flights and trips not taken. The case is pending in Alameda County Superior Court, California.

**Pineda v. Vitamin Shoppe.** WD&K represents a class of purchasers of Vitamin Shoppe's "Especially for Women" vitamins. The complaint alleged that testing revealed that some of these vitamins were contaminated by lead and/or contained less calcium than the label indicated. Vitamin Shoppe denied all wrongdoing. WD&K obtained a settlement on behalf of the class, who received refunds of 100% of the value of the purchase price of the products or 125% of the purchase price if they choose store credit, which is pending final approval in Superior Court for Bergen County, New Jersey.

**White v. Bed Bath and Beyond.** WD&K represents a class of purchasers of bedding and linen products from Bed Bath and Beyond. Bed Bath and Beyond inflated the thread count of certain two-ply and multi-ply linens and other bedding products by counting threads in a manner which the Federal Trade Commission has ruled is deceptive to consumers. WD&K, along with other counsel, reached a settlement with Bed Bath and Beyond, which provided refunds or gift cards to purchasers of these bedding products, that is pending Final Approval in the United States District Court for the District of New Jersey.

**Subprime Lending Litigation/Countrywide Financial Corp..** WD&K represents a class of borrowers against Countrywide Financial Corp, et al., pursuing claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and California law involving a fraudulent scheme to systematically steer unwary borrowers into "subprime" mortgages and loans with excess charges and inadequately disclosed risks, including drastic and unexpected increases in required monthly payments. As a result, a significant percentage of borrowers from Countrywide have defaulted or are in default on their loans causing the current flood of foreclosures. Countrywide's scheme resulted in higher profits in interest rates, in origination fees and other fees, and in packaging the mortgage-backed securities.

## Other Complex Class Action Litigation

Whatley Drake & Kallas has recently been appointed to leadership positions in the following complex class action cases:

**In Re TJX Companies Retail Security Breach Litigation, MDL No. 1838.** WD&K serves as Co-Lead Counsel in this multidistrict litigation pending in the United States District Court for the District of Massachusetts on behalf of a putative class of all financial institutions who suffered losses related to the monitoring and reissuance of their

6

customers' debit and credit cards after information relating to millions of these accounts was stolen from retailer TJX. The Plaintiffs allege that TJX, whose stores include TJ Maxx, Marshalls and Home Goods, and its acquiring bank, Fifth Third Bank, failed to comply with payment card industry data security standards and assert claims including breach of contract and violation of Massachusetts General Laws Chapter 93A, the state's unfair and deceptive trade practices statute.

**In re Genetically Modified Rice Litigation.** Joe R. Whatley, Jr. was appointed to Plaintiffs' Executive Committee in this multidistrict litigation, pending in the United States District Court in the Eastern District of Missouri, which seeks redress for farmers who were damaged when it was disclosed that unapproved genetically modified rice traits developed by Bayer had contaminated the U.S. supply of long grain rice causing U.S. trading partners, including the European Union, Russia and Japan, to ban U.S. rice imports. A motion for class certification has been filed.

**Tax Shelter Litigation.** The firm was actively involved in the representation of hundreds individuals who were sold defective tax avoidance strategies by some of the nation's largest law firms, accounting groups and investment banks. The litigation resulted in a class settlement of $81 million with Jenkens & Gilchrist and numerous individual and aggregate settlements valued at several hundred million dollars.

## Labor & Employment Litigation

WD&K has a long history of providing representation for participants in employer-sponsored benefit plans including defined benefit pension plans and 401(k) plans fighting to recover individual benefits and damages to the plans themselves. The Firm is actively involved in the representation of Unions across the United States, advising them on a variety of matters that arise with a particular focus on their health and welfare plans.

WD&K has helped to make the workplace free of discrimination in numerous multi-party and class action lawsuits , holding leadership positions on behalf of workers who have suffered mistreatment because of their age, race, gender, national origin, religious affiliation, disability or simply because they sought to exercise rights protected by federal law such as wage and hour provisions:. Several of our members have held roles in significant, high-profile civil, human and worker rights litigation.
**Jackson v. City of Birmingham Schools (Title IX).** WD&K represented an Alabama high school basketball coach fired after he complained that the girls on his team were not treated as well as boys. The coach won a landmark Supreme Court ruling under Title IX, the law that guarantees equal access and equal facilities for men in women in sports. WD&K litigated the case on remand and obtained a settlement that includes a city school board promise of equal facilities and the hiring of a Title IX coordinator to assure compliance.

**Tyson Foods.** WD&K led the effort that produced the multi-million dollar settlement of sexual harassment claims at a Tyson Foods plant in Alabama; in addition to the money, the Court ordered detailed injunctive relieve and appointed a court monitor to cure the widespread sexual harassment problem.

**Ward v. Albertson's, Save-on, and Lucky Stores.** WD&K served as co-lead counsel representing a class of defendants' former employees who alleged that defendants failed to pay them their wages in accordance with California's waiting time statutes. Under California's Labor Code, employers must pay involuntarily terminated employees immediately upon termination, and voluntarily severed employees within 72 hours of their giving notice of termination. Although defendants vigorously disputed these allegations, WD&K obtained a settlement of $18.5 million, pending approval by the California Superior Court.

## Biographies

### Members

#### Joe R. Whatley, Jr.

Mr. Whatley was born in Selma, Alabama. He is a graduate of Harvard University (A.B., cum laude, 1975), and University of Alabama Law School (J.D., 1978). Mr. Whatley is a member of the Bar in the States of Alabama, Texas, Colorado and New York, and is admitted to practice before the United States District Court for the Middle, Southern and Northern Districts of Alabama, the Southern District of Texas, the District of Colorado, and the Southern, Eastern and Northern Districts of New York, as well as the United States Court of Appeals for the First, Second, Fourth, Fifth, Ninth and Eleventh Circuits. After graduating from the University of Alabama Law School, Mr. Whatley served as a law clerk to the Honorable Frank H. McFadden, who was then Chief United States District Judge for the Northern District of Alabama (1978-1979). Mr. Whatley is a member of the American Bar Association (Member, Sections on: Labor and Employment Law; Litigation), a member and past President (1990-1991) of the Birmingham Federal Bar Association, and a member and past President (1990-1991) of the Labor and Employment Law Section of the Alabama State Bar. He is also a member of the Alabama Trial Lawyers Association; the American Association for Justice (formerly the Association of Trial Lawyers of America), and the National Association of Criminal Defense Lawyers.

Mr. Whatley has a wide-ranging, national practice. Among others, he represents numerous labor unions in the southeast of the United States, financial institutions in deceptive trade practice litigation arising out of the failure of a large retailer to secure confidential cardholder data as required by industry standards, medical societies and physicians in complex class action litigation against the managed care industry, employees in discrimination cases, rice farmers damaged by the contamination of the U.S. long grain

8

rice supply by genetically modified rice traits, and individuals in personal injury and mass torts litigation.

Mr. Whatley is an experienced trial lawyer, having tried numerous cases, including class actions, to verdict. For example, Mr. Whatley won a $1.28 billion jury verdict on behalf of a class of cattle ranchers against Tyson Fresh Meats, Inc. in Pickett v. Tyson Fresh Meats, Inc., No. 96-A-1103-N (M.D. Ala.), and won what was at the time the largest wrongful death verdict in Louisiana history in Dunn v. Consolidated Rail Corp., 890 F. Supp. 1262 (M.D. La. 1995). Mr. Whatley has recovered billions of dollars in monetary relief and business practice changes in litigations against the managed care industry. He also achieved an $81.6 million settlement for former clients of Jenkens & Gilchrist in Denney v. Jenkens & Gilchrist, 230 F.R.D. 317 (S.D.N.Y. 2005), litigation relating to that firm's role in structuring and marketing illegal tax shelters.
**E-MAIL: jwhatley@wdklaw.com**

### Russell Jackson Drake

Mr. Drake has been a member of the Bar for almost 40 years. He obtained his J.D. from the University of Alabama Law School in 1969 and is a member of the Bar in the States of Alabama, Texas and New York. Mr. Drake concentrates his practice in the areas of personal injury litigation; products liability litigation; wrongful death litigation; appellate practice in state and federal courts; constitutional litigation; and complex class action litigation.

He is admitted to practice before the U.S. Supreme Court, U.S. Court of Appeals for the Eleventh Circuit and U.S. District Court for the Northern, Middle and Southern Districts of Alabama. Mr. Drake is the author of "Enforcing the Right to Treatment," 10 American Criminal Law Review, 587, 1972, and "Judicial Implementation and Wyatt v. Stickney," 32 Al. L. Rev. 299, 1981, and has lectured at the University of Alabama Law School, 1983-1987.

Mr. Drake has served as a member of the Alabama Ethics Commission, 1998-2003 (Chairman, 2003); the 11th Circuit Judicial Conference (1986-1988); and the Lawyer's Advisory Committee of the U.S. District Court for the Northern District of Alabama (1989-present). Mr. Drake has been a member of and held various executive positions with the Tuscaloosa County Bar Association (Member, Executive Committee, 1979; President, 1980-1981). He has also held various positions with the American Bar Association including: Member, 1973 – present; Chairman, 1979, Member, Committee on Prepaid Legal Services; Chairman, Task Force on Illiteracy, 1989; Member, IOLTA Task Force; Member, Local Bar Activities; Member, Supreme Court Task Force on Judicial Building; Member, Supreme Court Advisory Committee on Criminal Procedure; Member, Labor Law Section; Executive Committee, Young Lawyers Section, 1977; Task Force on Minority Participation, 1995-1996, Chairman, 1996-1997.

Mr. Drake is a member of the Alabama Association for Justice (Member: Board of Governors, 1976; Executive Committee, 1984) and the American Association for Justice. He was named a Fellow of the International Academy of Trial Lawyers in 1995. Mr. Drake was born in Jefferson County, Alabama.
E-MAIL: jdrake@wdklaw.com

### Edith M. Kallas

Ms. Kallas was born in New York, New York. Ms. Kallas graduated from the Juilliard School in 1984 with a B.M. in Music Performance and from the Fashion Institute of Technology with an A.A.S., summa cum laude. She is a 1987 graduate of the Benjamin N. Cardozo School of Law, where she was a member of the Moot Court Board. Ms. Kallas is admitted to the New York State Bar, the United States District Court for the Southern and Eastern Districts of New York and the United States Courts of Appeal for the Second, Third and Sixth Circuits. She is also a member of the Association of the Bar of the City of New York, the New York State Bar Association, the New York County Lawyers' Association, the American Society of Medical Association Counsel, and the American Association for Justice (formerly the Association of Trial Lawyers of America).

In April of 2004, Ms. Kallas was honored by thirteen State and County Medical Societies, "For the Success Attained in her Relentless Pursuit of Justice for the Physicians of America and their Patients." Also in 2004, Ms. Kallas was named by the New York County Lawyers' Association as one of the "Outstanding Women of the Bar." In 2005, the National Law Journal featured Ms. Kallas in their UP CLOSE section in an article entitled, "HMO Settlement: A Fairer Deal for Doctors." Ms. Kallas is also co-chair of the Public Justice's Class Action Preservation Project.

Ms. Kallas concentrates her practice in the areas of healthcare, insurance and consumer litigation. Her clients include numerous state and county medical societies including: the Medical Society of the State of New York, the Connecticut State Medical Society, the Medical Society of New Jersey, South Carolina Medical Association, Tennessee Medical Association, Northern Virginia Medical Societies, North Carolina Medical Society, Nebraska Medical Association, Washington State Medical Association, Hawaii Medical Association, Alaska Medical Association, Rhode Island Medical Society, Vermont Medical Society, New Hampshire Medical Society, El Paso County Medical Society of Colorado, and the California Chiropractic Association.

Ms. Kallas has represented physicians and medical associations in numerous class actions pending in federal and state courts (including representation of a certified class of approximately 900,000 physicians throughout the United States). Ms. Kallas serves on the Steering Committee in the In re Managed Care action and as Co-Lead Counsel in the Thomas et al. v. Blue Cross Blue Shield Association et al. pending in the United States District Court for the Southern District of Florida and serves as lead counsel in numerous state court healthcare actions. She was one of the principal negotiators of the recent settlements with Aetna, Cigna, Healthnet, Prudential, Humana, Wellpoint and nationwide

10

classes of physicians and medical societies that have resulted in billions of dollars of practice reforms and monetary relief to physicians throughout the country. The settlements have resulted in significant business practice changes that are viewed as setting a new standard in the healthcare industry that is in the best interests of physicians and their patients. Ms. Kallas has also given legislative testimony regarding issues affecting physicians and successfully handled, on a pro bono basis, an appeal for a patient requiring lifesaving treatment.

Ms. Kallas is also Co-Lead Counsel in the In re Insurance Brokerage Antitrust Litigation pending in the District of New Jersey against major brokerage and insurance companies on behalf of classes of businesses and employees who purchased insurance, including healthcare insurance.

Ms. Kallas has also pursued numerous cases on behalf of consumers, including recent class settlements in cases involving products sold by Vitamin Shoppe and Bed Bath and Beyond.

Ms. Kallas is the co-author of "Gender Bias and the Treatment of Women As Advocates," Women in Law 1998. Ms. Kallas has also participated as a Faculty Member and/or Speaker in the following conferences: "Class Action Health Care Litigation," ALI-ABA Health Care Law and Litigation Conference, 1999; "Class Actions: HMOs and Health Care Providers Under Attack, "ALI-ABA Life and Health Insurance Litigation Conference, 2000; "Providers (Suits by Doctors and Hospital Class Actions), "ALI-ABA Health Care Law and Litigation Conference, 2000; "The Application of ERISA and RICO Theories in the Age of Managed Care," The Judges and Lawyers Breast Cancer Alert, 2000; "Health Care Litigation: What You Need to Know After Pegram," Practicing Law Institute, 2000; "Provider Suits by Doctors and Hospitals v. HMOs," ALI-ABA Health Care Law and Litigation Conference, 2001; The Joint Seminar Session of the School of Allied Health and Health Law Section at Quinnipiac University School of Law, 2001; The CLE Conference presented by the American Society of Medical Association Counsel, 2002;"The Unique Role of The Medical Society Effectively Litigating for Change in the Healthcare Arena", American Academy of Otolaryngology Presidential - Board of Governors Special Seminar 2002; "The Future of Class Action Litigation in America" The CLE Conference presented by the American Bar Association, 2005; "Gender Bias in Litigation and the Trend Toward Diversity in Multi-District Litigation Proceedings, Whatley Drake LLC Continuing Legal Education Conference 2006."
E-MAIL: ekallas@wdklaw.com

### Deborah Clark-Weintraub
Ms. Weintraub was born in Patchogue, New York and is a 1981 graduate of St. John's University, Jamaica, New York (B.A. summa cum laude; President's Award in recognition of achieving highest GPA among graduates of St. John's College of Liberal Arts and Science). She attended Hofstra Law School in Hempstead, New York, where she was a member of the Hofstra Law Review and Research Editor (1985-1986), and obtained her J.D. degree with distinction in 1986. Following her graduation from Hofstra Law School,

11

Ms. Weintraub served as a law clerk to the Honorable Jacob Mishler, United States District Judge, United States District Court for the Eastern District of New York (1986-1987).

Ms. Weintraub has extensive securities class action experience and has acted as one of Plaintiffs' Co-Lead Counsel in numerous securities class action cases that have obtained substantial recoveries for defrauded investors. Among other cases, Ms. Weintraub was one of the Lead Counsel in In re Oxford Health Plans, Inc. Securities Litigation, MDL Dkt. No 1222 (CLB) (S.D.N.Y.), in which a cash settlement of $300 million was obtained on the eve of trial after more than five years of litigation. At the time, the $300 million cash recovery obtained for shareholders in the Oxford case was one of the largest recoveries ever achieved in a securities class action. Significantly, the Honorable Charles L. Brieant, who presided over the Oxford case described it as "perhaps the most heavily defended, ardently pursued defense of a similar case that I can recall." Ms. Weintraub also served as one of Plaintiffs' Co-Lead Counsel in In re CVS Corporation Securities Litigation, No. 01-11464 (JLT) (D. Mass.), in which a cash settlement of $110 million was obtained for investors. Following the settlement, in March 2006, CVS disclosed that the SEC had opened an inquiry into the manner in which CVS had accounted for a barter transaction, which was a subject of the class action suit, and that independent counsel to the firm's audit committee had concluded in December 2005 that various aspects of the company's accounting for the transaction were incorrect, leading to the resignations of the company's controller and the treasurer.

Prior to joining Whatley Drake & Kallas, Ms. Weintraub also acted as one of Plaintiffs' Co-Lead Counsel in In re Mutual Funds Investment Litigation, MDL No. 1586 (D. Md.), which consists of actions brought against mutual fund managers and others arising out of the recent scandals involving "late trading" and "market timing" in the mutual fund industry. In this capacity, among other investors, Ms. Weintraub represented the Ohio Tuition Trust Authority ("OTTA"), a state agency that offers and administers Ohio's CollegeAdvantage 529 Savings Plan. Since leaving her prior firm, at OTTA's request, Ms. Weintraub has continued to consult with OTTA's counsel concerning this matter.

Ms. Weintraub is the co-author of "Gender Bias and the Treatment of Women as Advocates, "Women in Law (1998), and the "Dissenting Introduction" defending the merits of securities class action litigation contained in the 1994 monograph "Securities Class Actions: Abuses and Remedies," which was published by the National Legal Center for the Public Interest. She is a member of the American Bar Association, the New York State Bar Association, the Association of the Bar of the City of New York, and the American Association for Justice (formerly the Association of Trial Lawyers of America). **E-MAIL: dweintraub@wdklaw.com**

### Glen M. Connor
For the past two decades, Mr. Connor has represented employee benefit plans, unions, and employees. He has developed a well-recognized expertise in ERISA and has represented employee benefits plans in numerous lawsuits across the United States. He has assumed

primary responsibility in some of the largest 401(k) ERISA actions in the country. Mr. Connor leads administrative matters related to the pension funds and health and welfare funds that the firm represents. He also regularly represents labor unions in arbitration proceedings involving disputes over the application and interpretation of a collective bargaining agreement. His practice is concentrated in the areas of ERISA, employee benefits, bankruptcy and pension plans.

He is a member of the Alabama Bar and is admitted to practice before the U.S. Court of Appeals for the Third, Sixth, and Eleventh Circuits and U.S. District Courts for the Northern, Middle and Southern Districts of Alabama. Mr. Connor attended Birmingham-Southern College (B.A., cum laude, 1981) and the University of Alabama (J.D., 1984) where he was a member of the John A. Campbell Moot Court Board (1983-1984). He is a member of the Alabama State Bar and American Bar Association. Mr. Connor was born in Ft. Walton Beach, Florida.

Reported Cases: Rankin v. Rots, 220 F.R.D. 511 (E.D. Mich. 2004); Rankin v. Rots, F.Supp. 853 (E.D. Mich. 2003); McCoy v. Hess Oil of Virgin Islands, 206 F.Supp.2d 276 (D.V.I. 2002); United Steelworkers of America v. Cherokee Electric Co-op, 127 LRRM (BNA) 2375; 108 Lab.Cas. p. 10, 441; aff'd 829 F.2d 1131; cert. den. 458 U.S. 1038; 108 S.Ct. 1601 (1988); Operating Engineers Local 312 Health and Welfare Fund v. Rivers & Rhodes, Inc., 813 F.Supp. 791 (N.D. Ala. 1993); United Steelworkers of America v. Simcala, 111 F.Supp.2d 1287 (M.D. Ala. 2000); Kirwan v. Reynolds, 536 So. 2d 936 (Ala. 1988).
**E-MAIL: gconnor@wdklaw.com**

### Charlene P. Ford
Ms. Ford concentrates her practice in the areas of class actions, complex litigation, small business law and business litigation as well as appellate practice. She is a member of the Alabama Bar and is admitted to practice before the U.S. Supreme Court and the U.S. Court of Appeals for the 11th Circuit. She is a member of the Birmingham and American Bar Associations, Alabama State Bar, Alabama Association for Justice, and American Association for Justice.

Ms. Ford is a graduate of the University of Montevallo (B.S., summa cum laude, 1982) and Cumberland School of Law of Samford University (J.D., summa cum laude, 1993) where she was a Member (1991-1993) and Comment Editor (1992-1993) of the Cumberland Law Review. Following law school, she served as law clerk to the Honorable Judge William M. Acker, Jr., U.S. District Court, Northern District of Alabama. Ms. Ford is the author of "Rule 11: Due Process Reconsidered," 22 Cumberland Law Review 729, 1991-1992. She was born in Limestone County, Alabama.

Reported Cases: PacifiCare Health Systems, Inc. v. Book, 538 U.S. 401, 123 S.Ct. 1531 (2003); Klay v. Humana, Inc., 382 F.3d 1241 (11th Cir. 2004); McFarlin v. Conseco Services, L.L.C., 381 F.3d 1251 (11th Cir. 2004); In re Humana Inc. Managed Care

Litigation, 333 F.3d 1247 (11th Cir. 2003); In re Humana Inc. Managed Care Litigation, 285 F.3d 971 (11th Cir. 2002); In re Managed Care Litigation, 246 F.Supp.2d 1363 (Jud. Pan. Mult. Lit. 2003); In re Managed Care Litigation, 236 F.Supp.2d 1336 (S.D. Fla. 2002); In re Managed Care Litigation, 209 F.R.D. 678 (S.D. Fla. 2002); In re Managed Care Litigation, 135 F. Supp.2d 1235 (S.D. Fla. 2001); Moore v. Liberty Nat. Ins.Co., 108 F.Supp.2d 1266 (N.D. Ala. 2000); Avis Rent A Car Systems, Inc. v. Heilman, 876 So.2d 1111 (Ala. 2003); Yeager v. General Motors Acceptance Corp., 719 So.2d 210 (Ala. 1998); Johnson v. Garlock, 682 So.2d 25 (Ala. 1996).

**E-MAIL: cford@wdklaw.com**

### Richard P. Rouco

Mr. Rouco is one of our members with primary responsibility over representation of the Firm's Union clients. His practice is focused in the areas of class actions, antitrust, ERISA, union labor law, and securities fraud. He has expertise negotiating and enforcing collective bargaining agreements. Mr. Rouco also has extensive experience representing Unions and/or their members in suits brought under the Labor Management Relations Act, Labor Management Reporting and Disclosure Act, the Fair Labor Standards Act, the WARN Act, ERISA and matters falling under the jurisdiction of the National Labor Relations Board. He has handled a considerable number of cases before the NLRB, including a multi-region plant closing case against Crown Cork & Seal.

In addition to his experience as a labor union lawyer, Mr. Rouco has also developed an active practice in the area of antitrust litigation. His interest in antitrust litigation grew out of his experience representing working families and their Unions in disputes with multi-national corporations. He currently represents consumers in several anti-trust cases alleging price fixing and other unlawful restraints of trade. He also has experience litigation securities fraud cases on behalf of institutional investors. He is currently litigating cases brought under the 1934 Securities Exchange Act and the Securities Act of 1933. He is one of three WD&K lawyers fluent in Spanish.

Mr. Rouco is a member of the Alabama Bar and is admitted to practice before the U.S. Court of Appeals for the Eleventh Circuit and the U.S. District Courts for the Northern, Middle and Southern Districts of Alabama. He is a member of the Alabama State Bar and American Bar Association. Mr. Rouco is a Board Member for the Greater Birmingham Ministries. He is the author of "Available Remedies Under ERISA," Section 502 45 Alabama Law Rev., 1994. In 2006, he addressed the Whatley Drake LLC Continuing Legal Education Conference on "The Basics of Antitrust Class Action Litigation," Complex Litigation, Mass Torts & Class Actions Continuing Legal Education Summit.

Mr. Rouco has also held several teaching positions including Adjunct Professor at the University of Alabama School of Law (2003-2004) and (2004-2005) and at Occidental College, Los Angeles, California (1989-1991); Graduate Teaching Fellow, Department of Philosophy at University of California, Irvine (1989-1990). He was a Research Assistant at the Alabama Law Institute (1992-1994).

14

He is a graduate of Florida State University (B.A., cum laude, 1987), University of California, Irvine (M.A., Candidate, 1991) and the University of Alabama School of Law (J.D., magna cum laude, 1994). In law school, he served as Senior Articles Editor, Alabama Law Review (1993-1994) and member, Order of the Coif. He was Most Outstanding Undergraduate, Florida State University College of Arts & Sciences (1987); Most Outstanding Student, Florida State University Department of Philosophy (1986-1987) and Recipient, University of California Regents Fellowship, (1987-1990). He was born in Miami, Florida, July 17, 1964.

Reported Cases: Adams v. United Steelworkers of America, 189 F.3d 1321 (11th Cir. 1999); Ryan et. al v. Flowserve Corp., 2007 WL 946052 (ED Tx); Boin v. Verizon South, 283 F.Supp. 2d 1254 (M.D. Ala. 2003); Estate of Rodriquez v. Drummond Company, 256 F.Supp. 2d 1250 (N.D. Ala. 2003); Williams v. United Steelworkers, 234 F.Supp. 2d 552 (M.D.N.C. 2002); United Steelworkers of America v. Ivaco, 216 F.R.D. 693 (N.D. Ga. 2002).

E-MAIL: rrouco@wdklaw.com

### Patrick J. Sheehan

Mr. Sheehan heads the firm's Boston, Massachusetts office. Mr. Sheehan's practice focuses on consumer protection, health care law, insurance law, issues relating to information security and identity theft and other complex litigation. As part of his practice, Mr. Sheehan represents businesses, professional associations, professionals, consumers and other individuals in class actions and other litigation pending throughout the country.

Mr. Sheehan has represented physicians and medical associations in class actions brought in numerous federal and state courts. Mr. Sheehan currently represents plaintiff physicians and medical societies in the *In Re Managed Care Litigation* and *Love v. Blue Cross Blue Shield et al.*, pending in the United States District Court for the Southern District of Florida, which have already led to landmark settlements resulting in billions of dollars worth of managed care reforms and monetary relief for physicians across the country. Mr. Sheehan has also represented physicians and state medical societies in state court actions and arbitrations in jurisdictions across the nation.

Mr. Sheehan's current consumer class actions include *In re Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation*, pending in the Eastern District of Missouri, which alleges that Aurora Dairy and various retailers marketed and sold Aurora Dairy milk as "organic" even though it failed to comply with federal organic standards in numerous respects. Mr. Sheehan also represents consumers in the *In re Bisphenol-A Tainted Polycarbonate Plastic Litigation*, brought against a number of the leading manufacturers of plastic bottles for misrepresenting and failing to disclose the safety risks linked to the chemical compound Bisphenol-A used to make their products.

In *In Re TJX Companies Retail Security Breach Litigation*, brought in the United States District Court for the District of Massachusetts, Mr. Sheehan represents a proposed class of banks and credit unions who were injured when their customers' payment card accounts were compromised in the largest data breach in retail history. Mr. Sheehan also represents consumers affected by recent data breaches at Hannaford Supermarkets and Countrywide Financial Corporation in *In re Hannaford Bros. Co. Customer Data Security Breach Litigation* and *Lemuz v. Countrywide Financial Corporation*, currently pending in the United States District Courts for the District of Maine and Central District of California, respectively.

Mr. Sheehan is also involved in *In re Insurance Brokerage Antitrust Litigation*, filed in the District of New Jersey against certain of the largest insurance companies and insurance brokers in the country in connection with their use of undisclosed contingent commissions. To date, this litigation has led to settlements totaling tens of millions of dollars.

Mr. Sheehan regularly contributes to legal publications and continuing legal education programs. He also frequently volunteers his time on a pro bono basis. Mr. Sheehan is an active participant in the Health Law Advocates Pro Bono Legal Network, through which he provides legal assistance to individuals seeking access to health care. Mr. Sheehan also served as a volunteer attorney for Trial Lawyers Care, the largest pro bono legal program in history, through which he provided legal services to individuals and families who sought compensation under the September 11th Compensation Fund. Recently, Mr. Sheehan served as a scoring judge for the American Bar Association's National Appellate Advocacy Competition.

Mr. Sheehan is a graduate of the College of the Holy Cross (B.A., 1993) and Northeastern University School of Law (J.D., 1997), where he was an editor of the NU Forum. He is a member of the American Bar Association, the American Association for Justice, the Massachusetts Bar Association, the Massachusetts Academy of Trial Attorneys and the Boston Bar Association and serves on the Board of Directors of the Holy Cross Lawyers Association. He is a member of the Massachusetts and New York Bars and is admitted to practice before the United States District Courts for the District of Massachusetts, the Southern and Eastern Districts of New York, and the First Circuit Court of Appeals.
E-MAIL: psheehan@wdklaw.com

## Senior Counsel

### Thomas J. Butler

Mr. Butler has participated as lead or co-lead counsel in defending numerous individual and multi-plaintiff annuity sales practices, industrial life and claims-related cases and class actions in state and federal courts in Alabama, California, Georgia, Florida, Kentucky, Illinois, Montana, Mississippi, South Carolina, Tennessee, Texas, and West Virginia. He also served as co-lead counsel in defense of competing nationwide consumer class actions arising from late fees charged on video rentals.

16

Prior to joining WDK, he gained significant experience in handling the defense of cases in the areas of mass torts, bad faith, ERISA, securities and products liability litigation. Furthermore, Mr. Butler has overseen a number of appeals pending before the Fifth and Eleventh Circuit Courts of Appeal.

Mr. Butler was admitted to the Alabama State Bar in 1999 and Mississippi State Bar in 2001. He is also admitted to practice before the U.S. Court of Appeals for the Eleventh and Fifth Circuits and the U.S. District Courts for the Northern, Middle and Southern Districts of Alabama and Northern and Southern Districts of Mississippi. He received a B.A. from Birmingham-Southern College in 1995 and obtained a J.D., magna cum laude, from the University of Alabama School of Law in 1999 where he was Special Works Editor for the Alabama Law Review and a member of Order of the Coif. After law school Mr. Butler served as law clerk to Hon. Edwin L. Nelson, United States District Judge, U.S. District Court, Northern District of Alabama.
E-MAIL: tbutler@wdklaw.com

### Ilze C. Thielmann

Ms. Thielmann practices health care litigation, complex and multi-district litigation. She is a member of the New York State Bar (1995) and is also admitted to practice before the U.S. District Courts for the Eastern and Southern Districts of New York. Ms. Thielmann attended Princeton University (A.B., 1988) and obtained her J.D. in 1994 from Columbia University Law School where she was a member of Law Review and Harlan Fiske Stone Scholar. She was born in West Islip, New York.
E-MAIL: ithielmann@wdklaw.com

## Of Counsel

### Roberto Ramirez

Mr. Ramirez formerly served in the New York State Assembly for the 78th Assembly District, Bronx, New York, 1990-2000. While a member of the Assembly, Mr. Ramirez served as Chair, Urban Health Care Subcommittee and also served on the Administrative Regulations Review Commission (ARRC), Social Services Committee and Real Property Tax Committee. In New York State, Mr. Ramirez has earned a reputation as one of the hardest working public officials in government and as a "voice of conscience" on some of the most pressing issues of our time. He is also a formidable activist in the crusade against social injustice and racism. He is a member of the New York State Bar (1997) and the New York State Bar Association (Member, Promote Public Trust and Confidence Committee). He graduated from Bronx Community College (A.D.), New York University (B.S.) and New York University School of Law (J.D., 1993). Mr. Ramirez was born in Puerto Rico.

## Associates

### Shujan A. Awan

Mr. Awan is an associate with the firm. He concentrates his practice in the areas of complex and multi-district litigation. Mr. Awan graduated from New Jersey Institute of Technology, *magna cum laude* (B.S. Computer Science, 2002) and from Brooklyn Law School (J.D., 2008). During law school, Mr. Awan served as a student prosecutor for the United States Attorney's Office for the Eastern District of New York where he represented the federal government in the investigation and prosecution of misdemeanors and petty offenses. Mr. Awan was a summer associate and law clerk at the firm prior to joining on a full-time basis. His admission to the New York bar is pending.

E-MAIL: sawan@wdklaw.com

### W. Tucker Brown

Mr. Brown practices in the area of class action and antitrust litigation. He is a member of Alabama Bar since 2004 and is admitted to practice before the United States Court of Appeals for the Eleventh Circuit, as well as the U.S. District Courts for the Northern, Middle and Southern Districts of Alabama, and the U.S. District Court for the District of Colorado. He obtained a B.A., *cum laude*, in 2001 from Vanderbilt University and received his J.D., *magna cum laude*, in 2004 from the Georgetown University Law Center where he was Order of the Coif. Following law school he served as law clerk to Hon. William M. Acker, Jr., U.S. District Court for the Northern District of Alabama from 2004 to 2005. He is a member of the Alabama State Bar, the American Bar Association (Antitrust Division), Birmingham Bar Association and American Association for Justice. He was born in Birmingham, Alabama.

E-MAIL: tbrown@wdklaw.com

### E. Ashley Cranford

Ms. Cranford's practice is focused in the areas of complex class action and mass tort litigations involving products liability, drug and medical devices and personal injury. She has been extensively involved in the mediation and settlement of many of the firm's multi-district pharmaceutical and products liability mass actions. She has also been asked to speak on both national and local levels regarding her experience in mediation of multi-district pharmaceutical actions. She is slated to serve as the Co-Chair of the Discovery Committee for *In Re Trasylol Products Liability Litigation*, MDL 1928.

She is a member of the Alabama Bar since 2003 and is admitted to practice before the U.S. District Court for the Northern and Middle Districts of Alabama. She is a member of the Birmingham and American Bar Associations, Alabama Association for Justice and American Association for Justice.

She earned her B.S. in Secondary Education in English and Political Science, *magna cum laude*, in 1999 from Auburn University where she was a member of Mortar Board Honorary, Gamma Sigma Alpha Honorary, Kappa Delta Pi Honorary, and Golden Key

18

Honorary.

Before attending law school, Ms. Cranford taught Eighth Grade English in the Jefferson County School System in Birmingham, Alabama.

She obtained her J.D. from the University of Alabama School of Law in 2003 where she was a member of the Bench and Bar Honor Society, a Senator for the Student Bar Association, and a participant on the Jessup International Moot Court Team. Ms. Cranford was born in Birmingham, Alabama.
E-MAIL: acranford@wdklaw.com

### Sara C. Hacker

Ms. Hacker is a member of the Alabama Bar (2005). She is a member of the Alabama State Bar, Birmingham Bar Association and Farrah Law Society. She graduated from Auburn University (B.A. magna cum laude, 2002) and the University of Alabama School of Law (J.D., 2005) where she was Senior Editor of the *Alabama Law Review*. Following law school she served as law clerk for Judge Patricia Smith, Alabama Supreme Court (2005-2006) and for Judge Inge Johnson, U. S. District Judge, Northern District of Alabama (2006-2007).
E-MAIL : shacker@wdklaw.com

### Laurence J. Hasson

Laurence J. Hasson is an associate of the firm. He graduated from Brandeis University magna cum laude (B.A. History and American Studies, 2003), with Phi Beta Kappa and Phi Alpha Theta honors, and from the Benjamin N. Cardozo School of Law (J.D. 2006), where he was an Heyman Scholar at the Samuel and Ronnie Heyman Center on Corporate Governance, a Memorandum of Law Editor, and an executive board member of the Moot Court Honor Society. Mr. Hasson also attended an intensive seminar on comparative corporate governance at Oxford University, England.

During law school, Mr. Hasson interned at Cardozo's Bet Tzedek Legal Services Clinic, representing elderly and disabled individuals seeking health, disability, and housing benefits that they could not receive without clinical assistance.

Prior to joining Whatley Drake & Kallas LLC, Mr. Hasson worked in the litigation department of Wolf Haldenstein Adler Freeman & Herz LLP. His primary areas of practice include Class Action, Class Arbitrations, Securities, and Complex Commercial Litigation.

Mr. Hasson is admitted to practice law in New York State and the Southern and Eastern Districts of New York.
E-MAIL: lhasson@wdklaw.com

19

## Adam P. Plant

Mr. Plant is a member of the class action, securities fraud, and complex litigation practice groups of the firm. During his time at Whatley Drake & Kallas, Mr. Plant has worked to hold large corporations and their directors accountable for violations of Federal securities laws on behalf of defrauded shareholders; he has represented current and former members of the United States Armed Forces who were sold fraudulent financial plans; and he has represented cattle ranchers and row crop farmers against multinational ag and biotech companies. He also has defeated dispositive motions in Federal trial courts and crafted winning arguments before both State and Federal courts of appeals.

Mr. Plant graduated from Samford University (B.A., 1999) and The University of Alabama School of Law (J.D., cum laude, 2003). During law school, he served as Editor in Chief of the Alabama Law Review and received the Dean's Award, Community Service Award and Law Review Outstanding Scholar Award. He is a member of the Bars of the State of Alabama (2003) and the District of Columbia (2007), and is admitted to practice before the U.S. Court of Appeals for the Eleventh Circuit, the Northern and Middle Districts of Alabama, and the Middle Districts of Alabama Bankruptcy Court.

After law school, Mr. Plant served as Deputy Solicitor General (Solicitor's Fellow) in the Office of the Attorney General of Alabama (2003-2004). As a Deputy Solicitor General, he was responsible for representing the State before State and Federal appellate courts, including the Supreme Courts of Alabama and the United States, and crafting legislative responses to decisions of the Alabama Supreme Court. He was a member of the litigation teams for several notable criminal and constitutional law decisions including *Nelson v. Campbell*, 541 U.S. 637 (2004); *Altherr v. State*, 911 So. 2d 1105 (Ala. Crim. App. 2004); *Ex parte Medical Licensure Comm'n*, 897 So. 2d 1093 (Ala. 2004); and *McGinley v. Houston*, 361 F.3d 1328 (11th Cir. 2004). Mr. Plant then clerked for Hon. William H. Pryor Jr. on the United States Court of Appeals for the Eleventh Circuit (2004-2005).

Mr. Plant is the author of "With a Little Help from my Friends: The Intersection of the Gestational Carrier Surrogacy Agreement, Legislative Inaction, and Medical Advancement," 54 Ala. L. Rev. 639 (2003), which has been cited as authoritative in both State and Federal courts; and "Selective Service Act of 1917" and "Smoot Hawley Tariff Act (1930)," 3 Major Acts of Congress 178 and 194 (Thomson Publishing 2003). He also is a member of the Birmingham Bar Association, American Association for Justice, American Bar Association, and Alabama Association for Justice.
**E-MAIL: aplant@wdklaw.com**

## Elizabeth Rosenberg

Ms. Rosenberg concentrates her practice in the areas of class actions complex and multi-district litigation. She is a member of the New York State Bar (2003) and New York State Bar Association. She attended the University of Michigan (B.A., 1998) and Brooklyn Law School (J.D., 2001). Ms. Rosenberg was born in Roslyn, New York.
**E-MAIL: erosenberg@wdklaw.com**

**Max Schwartz,** born 1979, admitted to bar, New York 2007; *Education:* Columbia University (B.A. 2002); New York University School of Law (J.D. 2005). Email: mschwartz@wdklaw.com

### Amy Alexander Weaver

Ms. Weaver practices in the areas of mass torts and products liability. She is a member of the Alabama State Bar since 2005 and is admitted to practice in the Northern, Middle, and Southern Districts of Alabama. She is a member of the Birmingham and American Bar Associations, the Alabama Association for Justice and the American Association for Justice. She received her B.A. from Duke University in 2001 and obtained her J.D. from the University of Alabama School of Law in 2005. Ms. Weaver was born in Birmingham, Alabama.
**E-MAIL: aweaver@wdklaw.com**

### Other Attorneys with the Firm

**Virginia Applebaum,** born Biloxi, Mississippi; admitted to bar, Alabama 2006; *Education:* Jacksonville State University, Jacksonville, Alabama (B.S., M.S. 1995), Cumberland School of Law, Samford University, Birmingham, Alabama (J.D. 2004); *Member:* Alabama State Bar Association.
E-MAIL: vapplebaum@wdklaw.com

**William Brett Brown,** born Mobile, Alabama, 1980; admitted to bar, **Alabama,** 2006; Education: Cumberland School of Law, J.D., 2006, Auburn University, B.A., 2002; Member: Alabama State Bar; American Bar Association; Practice Areas: Products Liability; Class Actions; Personal Injury; Wrongful Death.
E-MAIL: bbrown@wdklaw.com

**D. Jamie Carruth,** born 1979; admitted to bar, Alabama, 2004. *Education:* University of Alabama, Tuscaloosa, Alabama, (B.A. May 2001); University of Alabama School of Law, Tuscaloosa, Alabama (J.D. 2004); *Member:* American Bar Association.
E-MAIL: jcarruth@wdklaw.com

**Daniel Gleason,** born Memphis, Tennessee, 1981; admitted to bar, Alabama 2006, U.S. District Court for the Northern District of Alabama, 2006; *Education:* Birmingham-Southern College, Birmingham, Alabama (B.A. 2003), Washington and Lee University School of Law, Lexington, Virginia (J.D. 2006).
E-MAIL: dgleason@wdklaw.com

**Anna L. Hart,** born 1977; admitted to bar, 2006, Alabama and U.S. District Court, Northern District of Alabama. *Education:* Georgia State University (B.A., 1999); Cumberland School of Law at Samford University (J.D., 2005). *Member:* Birmingham Bar Association.

E-MAIL: ahart@wdklaw.com

**Laurie Hubbard**, born 1971; admitted to bar, Alabama 2009. *Education:* Middle Tennessee State University (B.B.A. Accounting 1993) and Birmingham School of Law (J.D. 2007).
E-MAIL: lhubbard@wdklaw.com

**Andrew H. McElroy, III**, admitted to bar, 1986, Alabama, 1989, Florida, U.S. Court of Appeals for the Eleventh Circuit, U.S. District Court, Northern and Southern Districts of Alabama. *Education:* The University of Alabama (B.S., 1983), Cumberland School of Law at Samford University (J.D., 1986). *Member:* Alabama State Bar, Florida State Bar, American Bar Association (Member, Real Property Trust and Estate Law Section; Member, Advisory Panel); Charter Member, National Academy of Elder Law Attorneys.
*Representative Cases:* Rogers v. Nall, 583 So.2d 271.
E-MAIL: tmcelroy@wdklaw.com

**Howard M. Miles (Executive Director)**, born Ketchikan, Alaska, 1958; admitted to bar, Alabama 1983; *Education:* University of Mississippi, J.D., 1983, University of Mississippi, B.B.A., 1979; *Past Positions:* Certified Public Accountant, Mississippi, 1980; *Practice Areas:* Law Firm Management; Business Law; Contracts; Commercial Transactions
E-MAIL: hmiles@wdklaw.com

**Lindsey W. Nicholson**, born Birmingham, Alabama, 1981; admitted to bar, Alabama 2006, *Education:* Auburn University (B.S., 2003); University of Alabama (J.D., 2006); *Member:* Alabama State Bar; *Languages:* Spanish.
E-MAIL: lnicholson@wdklaw.com

**Jeremy Paul Sherer**, born 1979, admitted to bar, Alabama 2004. *Education:* University of Alabama, Tuscaloosa, Alabama (B.A. 2001); University of Alabama School of Law, Tuscaloosa, Alabama (J.D. 2004). *Member:* District Policy Advisor, Congressman Artur Davis.
E-MAIL: jsherer@wdklaw.com

**New York • Birmingham • Boston**

| | | |
|---|---|---|
| 1540 Broadway, 37th Floor | 2001 Park Place North | 60 State Street, 7th Floor |
| New York, New York 10036 | Suite 1000 | Boston, MA 02109 |
| Telephone: (212) 447-7070 | Birmingham, AL 35203 | Telephone: (617) 573-5118 |
| Fax: (212) 447-7077 | Telephone: (205) 328-9576 | Fax: (617) 573-5090 |
| | Fax: (205) 328-9669 | |

**www.wdklaw.com**