1  **MILSTEIN, ADELMAN & KREGER, LLP**
Wayne S. Kreger, State Bar No. 154759
2  Sara D. Avila, State Bar No. 263213
2800 Donald Douglas Loop North
3  Santa Monica, California 90405
Telephone: (310) 396-9600
4  Fax: (310) 396-9635

5  **WHATLEY DRAKE AND KALLAS, LLC**
Joe Whatley, Jr. (*Pro Hac Vice*) NY Bar No. 4406088)
6  1540 BROADWAY, 37TH FLOOR
NEW YORK , NY 10036
7  Telephone: (212) 447-7070

8  **LAW OFFICES OF HOWARD WEIL RUBINSTEIN**
Howard W. Rubinstein (*Pro Hac Vice*) FL Bar No. 104108)
9  Post Office Box 4839
Aspen, Colorado 81611
10  Telephone: (832) 715-2788

11
Attorneys for Plaintiff Michelle Weeks
12

13              UNITED STATES DISTRICT COURT

14        FOR THE CENTRAL DISTRICT OF CALIFORNIA

15

16  SABENA LAKSHMI KAMMULA          No. CV09-08102 (MMM) (RZx)
and MICHELLE WEEKS,               Hon. Margaret M. Morrow
17  individually and on behalf of all others
similarly situated,               **PLAINTIFF'S MEMORANDUM OF**
18                                **POINTS AND AUTHORITIES IN**
              Plaintiff,          **SUPPORT OF MOTION FOR CLASS**
19        vs.                     **CERTIFICATION**

20  KELLOGG COMPANY, a Delaware    [Filed concurrently with Notice of Motion
corporation; KELLOGG USA, INC., a  and Motion for Class Certification,
21  Michigan corporation; KELLOGG   Declaration of Wayne S. Kreger, Esq. and
SALES COMPANY, a Delaware          Declaration of Michelle Weeks; [Proposed]
22  corporation, and DOES 1 through 100,  Order] lodged concurrently herewith]
inclusive,
23                                Date:     October 18, 2010
              Defendants.        Time:     10:00 A.M.
24                                Crtrm:    780
                                 Judge:    Hon. Margaret M. Morrow
25

26

27

28                          REDACTED
                              0
─────────────────────────────────────────

*(left margin, vertical text)* Milstein, Adelman & Kreger, LLP  2800 Donald Douglas Loop North  Santa Monica, California 90405

Plaintiff Michelle Weeks ("Plaintiff") submits the following supplemental memorandum of points and authorities in support of her Motion for Class Certification to: (a) certify a class of Californians who purchased Cocoa Krispies between June 1, 2009 and February 28, 2010 (the "Cocoa Krispies Class"); (b) certify a class of Californians who purchased Rice Krispies between June 1, 2009 and February 28, 2010 (the "Rice Krispies Class"); (c) appoint Plaintiff Michelle Weeks as the Class Representative; and (d) appoint Milstein Adelman & Kreger, LLC and Whatley Drake  and Kallas, LLC as Class Counsel.

## I.  **INTRODUCTION**

This is a putative class action about two breakfast cereals, Kelloggs® Cocoa Krispies® and Rice Krispies® ("Products" or "Immunity Cereal"). Through a massive, national advertising campaign, the Products were hawked to thousands of consumers by Defendants Kellogg Co., Kellogg USA, Inc. and Kellogg Sales Co. (collectively "Defendants" or "Kellogg") as *new and improved* cereal that "now helps support your child's immunity" and is "helping to support your family's immunity." Kellogg underscored these promises through an illustration of the Snap, Crackle and Pop™ cartoon characters dressed as superheroes, protecting consumers from illness.

Unfortunately for the consuming public, though, these claims were patently false. Appearing on every box of Cocoa Krispies and Rice Krispies, the Immunity Claims were nothing more than a scam aimed at taking advantage of the most vulnerable consumers with false promises of health. In fact, Kellogg unveiled these new claims in June 2009, taking advantage of the media hype surrounding the H1N1 swine flu outbreak. Despite their shameless claims that the Products will keep a family healthy and support consumers' immune systems, Kellogg was unable to produce a single document substantiating these claims.  Kellogg never tested or studied Rice Krispies or Cocoa Krispies to determine whether their own claims are in fact true. For

example, Defendants did not determine whether eating either cereal with milk affects the purported health benefits.  Nor do Defendants address whether the inclusion of unhealthy ingredients in the Immunity Cereal (e.g., sugar, high fructose corn syrup and partially hydrogenated oil) negates the purported ability of the Products to boost immunity.

The common evidence here will show that Kellogg's deceptive and fraudulent advertising tactics caused thousands of California consumers to purchase Rice Krispies and Cocoa Krispies and, in accord with scientific fact, have experienced *none* of the promised health and immunity benefits. The aforementioned claims were nothing more than a shameless ploy to monetize consumers' fears and take advantage of the media hype surrounding the H1N1 outbreak. Ultimately, the common evidence, applicable to each and every class member, will demonstrate that eating Rice Krispies and Cocoa Krispies will not support a person's immune system.  As such, this case demands a collective remedy for several reasons.

*First*, common factual issues predominate. Kellogg made the identical false promise and written misrepresentations to every single class member.  Indeed, they appear on each and every box of the Immunity Cereals in a large, bold font that is nearly the size of the name of the cereal.  As such, this case can be resolved by considering four simple factual issues on a class-wide basis:

> **Issue 1:** Did Kellogg claim, on the label of each box, that the Rice Krispies and Cocoa Krispies would "SUPPORT YOUR CHILD'S IMMUNITY" and help "support your family's IMMUNITY" along with other statements about the health benefits of these cereals?

> **Issue 2:** At the time Kellogg made the Immunity Claims and related representations on its labels (and in its other advertising), did Kellogg have the requisite competent and reliable scientific evidence to substantiate those claims?

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

**Issue 3**:  Does Kellogg's conduct constitute unfair competition and/or deceptive advertising under applicable law?

**Issue 4:**  Should Kellogg provide restitution to California consumers?

*Second*, once those factual issues are resolved, the application of the relevant law poses no obstacle to certification. The Court need look no further than its recent decision in *Weiner, et al. v. Dannon Company, Inc.*, 255 F.R.D. 658 (C.D.Cal. January 30, 2009), which found the Rule 23(b)(3) predominance of common questions requirement was satisfied in a putative class action alleging violations of the CLRA and the UCL. *Dannon,* 255 F.R.D. at 668-671.  There, the defendant's "alleged misrepresentations regarding the clinically proven health benefits of the Products are prominently displayed on all of the Products' packaging" and thus "the alleged misrepresentations were made to all class members." *Id.*, 255 F.R.D. at 669; s*ee also Williams v. Gerber Prods. Co*., 552 F.3d 934 (9th Cir. 2008) (reversing dismissal of action, finding that the reasonable consumer should not "be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."). Here, Kellogg made the Immunity Claims on every package, thus making the misrepresentations to every Class member.

*Third*, and more fundamentally, Kellogg sold thousands of boxes of the Immunity Cereals to California consumers based on patently false representations as to the cereals' health and immune system benefits.  Indeed, these representations were material, as "the characteristic that distinguishes the Products from others on the market is their respective alleged health benefit." *Dannon*, 255 F.R.D. at 669. Here, there can be no question that the promise of supporting a consumer's immune system distinguished the Immunity Cereals from competing, less pricey, chocolatey and krispy rice cereals.

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

*Fourth*, Defendants' use of the word "NOW" and the phrase "has been improved" on every package signaled to consumers a purported change to the former versions of Cocoa Krispies and Rice Krispies. Kellogg intended for the word "NOW" to ███████████████████████████████████████████████████████████

███████. Kreger Decl., ¶ 21, **Ex. 5** (June 2, 2010 Rule 30(b)(6) deposition of Kellogg Co. representative Anne Marie Suarez-Davis ("Suarez-Davis Depo.") at 53:10-12). "Any variation among proposed class members in their interaction with [the product] and their choices as consumers is likely *de minimus*: consumers fear air borne germs, see a product claiming to protect them, and purchase the product."). *Harvey v. CVS Pharmacy, Inc.*, Case No. 3:08-cv-05058-JHN-RZ (C.D.Cal. April 27, 2010) (granting certification where the product AirShield itself out to consumers as providing a defense and cure for the common and other airborne illnesses). Here there can be no question that the promise of supporting a consumer's immune system distinguished the Immunity Cereals from competing, less expensive cereals.

Finally, a June 3, 2010 News Release by the Federal Trade Commission ("FTC") supports Plaintiffs' claims and is further evidence that class certification is inevitable. There, the FTC Chairman referred to the Products' immunity claims as "troubling" and "problematic," reprimanding Kellogg: "We expect more from a great American company than making dubious claims – not once, but twice – that its cereals improve children's health."[1] Equally revealing, when called to the carpet by the Oregon Attorney General on their bold Immunity Claims, Kellogg chose to discontinue making those Immunity Claims rather than provide reliable and competent scientific evidence.[2]   These agreements between Kellogg and other governmental

---

[1] Ex. 13 (FTC's June 3, 2010 Concurring Statement of Commissioner Julie Brill and Chairman Jon Leibowitz in the case *In the Matter of Kellogg Co.*, FTC Docket No. C-4262). *See also* Ex. 11, 13 (FTC Order to Show Cause and Order Modifying Order and FTC News Release regarding same).
[2] The Press Release by the Oregon Attorney General and ███████████████████████████████ ███████ are attached to the Kreger Decl., ¶¶ 23-24, **Exhibits 7-8**.

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

agencies support Plaintiff's allegations and confirm the materiality of Kellogg's false and misleading statements.

Thousands of consumers lost money and were defrauded.  The Supreme Court has long recognized that class actions "serve an important function in our system of civil justice." *Gulf Oil v. Bernard,* 452 U.S. 89, 99 (1981).  "Class actions are designed to adjudicate the claims of many individuals at the same time, thereby eliminating the possibility of repetitious litigation and providing small claimants with a method of obtaining redress for claims that would otherwise be too small to warrant individual litigation." *Wilens v. TD Waterhouse Gp., Inc.*, 120 Cal.App.4th 746, 752 (2003) (citing *Richmond v. Dar Indus., Inc.,* 29 Cal. 3d 462, 469 (1981)).  In addition, "allowing these individual claims to move forward separately would create a risk of inconsistent judgments involving identical [misrepresentations by Kellogg] exactly the problem which class actions are designed to prevent." *In re Syncor ERISA Litigation*, 227 F.R.D. 338, 343 (C.D. Cal. 2005).

Despite these compelling and disturbing facts, in making its class determination, the Court should not conduct a preliminary inquiry into the merits of Plaintiffs' action. As the United States Supreme Court held in *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 178 (1974), there is "nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *See also Mazza v. American Honda Motor Co.*, 254 F.R.D. 610, 616 (C.D. Cal. 2008) (certifying a class and holding "Plaintiff needs not, however, show that it is likely to prevail on the merits of their claims at the stage of class certification.").

Accordingly, Plaintiff Michelle Weeks, on behalf of herself and the proposed class, respectfully requests that the Court issue an order granting this motion for class certification and (i) certify a California Rice Krispies Class under Rule 23(b)(3); (ii) certify a California Cocoa Krispies Class under Rule 23(b)(3); and (iii) appoint

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Milstein, Adelman & Kreger, LLP and Whatley, Drake & Kallas, LLC,   as class counsel pursuant to Fed. R. Civ. P. 23(g).

## II. <u>STATEMENT OF FACTS</u>

**A.      PROCEDURAL HISTORY**

On November 4, 2009, original class representative Sabena Kammula, individually and on behalf of all other similarly-situated California consumers, notified Defendants their immunities claims were in violation of the California Civil Code §§1750, et seq. ("CLRA").   Kreger Decl., ¶ 3.   Plaintiff Kammula filed her original Complaint with this Court on November 5, 2009. Dkt. 1.   The original Complaint only alleged a Cocoa Krispies Class.   Personal service of the Complaint was deemed effective on November 20, 2009.  Dkt. 10, 23, 24.  Plaintiff filed a First Amended Complaint ("FAC").   The FAC added the Rice Krispies Sub-Class.  FAC ¶ 36.   Plaintiff agreed to extend the time for Defendants to respond to the operative Complaint. Dkt. 10.   Defendants therefore filed an Answer to the First Amended Complaint ("Def. Answer") on  January 22, 2010. Dkt. 21.

Pursuant to Local Rule 23-3, Plaintiff's motion for class certification was due within 90 days of service of the Complaint, on February 20, 2010.  Plaintiffs therefore filed a motion for class certification on February 18, 2010.  Dkt. 27.  The Court graciously permitted Plaintiff to supplement the motion for class certification. Dkt. 35.  The Court granted parties' joint request to modify the class certification briefing schedule extending the deadline for Plaintiff to file the Supplemental Motion for Class Certification to August 9, 2010.   Dkt. 60. Plaintiff filed the Second Amended Complaint ("Complaint" or "SAC") on May 6, 2010 and dismissed Plaintiff Sabena Kammula on May 21, 2010. Dkts. 44 and 47.

//

//

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

**B.      FACTUAL BACKGROUND**

    **1.      Kellogg and Their Immunity Cereals**

Kellogg[3] is the world's leading cereal maker, offering a variety of adult and kid cereals.  Kellogg manufactures and markets Cocoa Krispies and Rice Krispies. SAC ¶ 3; Answer at 3:10-11.  Cocoa Krispies is a "chocolatey, sweetened rice cereal" and Rice Krispies is a "toasted rice cereal."  SAC ¶ 3; Answer at 3:10-11. Rice Krispies and Cocoa Krispies shall be collectively referred to herein as the "Immunity Cereals" or the "Products."[4]  Kellogg's marketing of the Immunity Cereals was targeted toward ██████████████████████████████████████ Kreger Decl., ¶ 21, **Ex. 5** (Suarez-Davis Depo. at 53:13-16).

    **2.      Kellogg's Marketing Scheme**

Defendants introduced the Immunity Cereals into the marketplace to profit from a growing trend in the manufacturing, advertising and sales of so-called "functional foods."  Kreger Decl., ¶ 9.  Through a variety of advertising, including but not limited to word-of-mouth, direct mailing, television, print, internet, and the packaging and labeling of the Immunity Cereals, Defendants engaged in a massive and ████████████ █████████████████████████████████████████████████████████████████. Kreger Decl., ¶ 21, **Ex. 5** (Suarez-Davis Depo. at 53:10-12).  Indeed, Defendants made the following representations regarding the benefits of Immunity Cereals directly on the packaging:

    a.   FRONT LABEL OF COCOA KRISPIES AND RICE KRISPIES:

- "NOW HELPS SUPPORT YOUR CHILD'S IMMUNITY"
- "25% DAILY VALUE OF ANTIOXIDANTS & NUTRIENTS"

---

[3] Kellogg USA Inc. and Kellogg Sales Co. both operate as wholly-owned subsidiaries of Kellogg Co. SAC ¶ 14; Answer at 8:13-14. All three defendants will be collectively referred to as "Kellogg" or "Defendants."

[4] Although Kellogg also marketed the other Krispies Brand cereals (e.g. Frosted Krispies and Jumbo Krispies), at this time Plaintiff seeks class certification only on behalf of those who purchased Rice Krispies and Cocoa Krispies during the Class Period.  Kreger Decl., ¶ 10.

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

b. <u>BACK LABEL OF COCOA KRISPIES AND RICE KRISPIES:</u>

- "Helping to support your family's IMMUNITY"

- "[H]as been improved to include antioxidants and nutrients that your family needs to help them stay healthy."

- "Enjoy this wholesome breakfast and help keep your family healthy."

SAC ¶¶ 4, 23; Answer at 4:14-17, 13:14-17.  *See* Kreger Decl., ¶¶ 17-20, **Exhibits 1-4**. Also on the backs of the labels, Defendants used cartoon characters dressed as superheroes to underscore the power of the Rice Krispies and Cocoa Krispies to support and protect a person's health. Kreger Decl., ¶¶ 17-20, **Exhibits 1-4**.  The Immunity Claims were made on every label throughout the United States. Kreger Decl., ¶ 21, **Ex. 5** (Suarez-Davis Depo. at 99:5-19).

The above claims are false, deceptive and misleading.  SAC ¶ 24.  Defendants do not have competent and reliable scientific evidence to support their claims about the Immunity Cereals.  For example, Defendants ████████████████████████████ ██████████████████████. Kreger Decl., ¶ 22, **Ex. 6** (June 2, 2010 Rule 30(b)(6) deposition of Kellogg Co. representative Laura Zervic ("Zervic Depo.") at 42:13-23, 44:19-25). Contrary to their consistent and uniform claims, Defendants make numerous material omissions. For example, nowhere on Defendants' labels or advertising do Defendants disclose whether consumption of milk with the Immunity Cereals dilutes the antioxidants and vitamins purportedly added to the cereals. Kreger Decl., ¶ 22, **Ex. 6** (Zervic Depo. at 35:5-22, ████████████████████████████████████ ████).

Defendants' uniform false representations to thousands of California consumers, including Ms. Weeks, led Class members to collectively spend millions of their hard-earned dollars in reliance upon claims such as "NOW HELPS SUPPORT YOUR CHILD'S IMMUNITY[,]" among other claims.  Defendants' Immunity

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Claims lead parents and those seeking good health to believe the Immunity Cereals would have the tangible effect of supporting their body's immune system. *See* SAC ¶ 28. Indeed, Plaintiff believed, as plainly stated on the Cocoa Krispies and Rice Krispies labels, that the cereal would support her and her child's immunity and would keep them healthy. Weeks Decl., ¶ 5. Ms. Weeks would not have purchased the Immunity Cereals, but for Defendants' representations that consuming the Immunity Cereals would boost her and her child's immune system and keep them healthy. Weeks Decl., ¶ 5.

### 3.   Plaintiff Michelle Weeks

Plaintiff Michelle Weeks is an individual residing in Ventura County, California. SAC ¶ 13. Plaintiff is the mother of a young child. SAC ¶ 13. During the summer of 2009, Plaintiff became particularly concerned with improving the immune system of her child and herself. Declaration of Michelle Weeks ("Weeks Decl.") ¶ 3. During that time, Plaintiff purchased Cocoa Krispies and Rice Immunity Cereals, relying on Kellogg's misrepresentations on the cereals' labels. Weeks Decl., ¶¶ 4, 5.

### 4.   Defendants' Agreements with Governmental Entities Regarding the Immunity Claims

On December 17, 2009, the Oregon Attorney General announced an agreement with Kellogg to "stop shipping cereal boxes with the immunity language by January 15, destroy more than 2 million units of packaging with the immunity claim, and cease making such health claim unless it provides the Oregon Department of Justice with advance notice and competent reliable scientific evidence." Defendants also agreed to donate cereal to the Oregon Food Bank and Feeding America. Kreger Decl., ¶¶ 23-24, **Exhibits 7-8** (News Release and letter agreement).

Kreger Decl., ¶ 25, **Ex. 9** (June 2, 2010 Rule

1  30(b)(6) deposition of Kellogg representative Tom Monroe ("Monroe Depo.") at
2  51:22-52:5).

3          This June, for the second time in one year, Kellogg "agreed to new advertising
4  restrictions to resolve a [FTC] Commission investigation into questionable immunity-
5  related claims for Rice Krispies cereal."   Kreger Decl., ¶¶ 26-28, **Exhibits 10-12**.
6  Under a previous order by the FTC, Kellogg was barred from making certain claims
7  about benefits of cognitive health, process or function provided by Kellogg's food
8  products unless the claims were true. *Id.* The FTC expanded its order, prohibiting
9  Kellogg from making claims about any health benefit of any food unless the claims
10  are backed by scientific evidence and not misleading. *Id.*[5]

11          Neither of these agreements provided for restitution to California consumers.
12  The agreements demonstrate common factual issues predominate, and that a remedy
13  for California consumers can be fashioned on a classwide basis.

14          **C.    Meet and Confer**

15          Before bringing this motion and consistent with Local Rule 7-3, on February
16  12, 2010, counsel for Plaintiff met and conferred with counsel for Kellogg regarding
17  the substance of this motion.   Kreger Decl., at ¶ 11.   On or about April 26, 2010,
18  Defendants agreed to stipulate that the numerosity requirement of Rule 23(a)(1) is
19  satisfied under the facts of this case.   Kreger Decl., at ¶ 11.

20

21          **III.    PROPOSED CLASS DEFINITIONS**

22          Plaintiff seeks to certify two California classes pursuant to Rule 23(a) and
23  23(b)(3), as follows:   (i) The proposed "Cocoa Krispies Class" consists of: "All
24  persons residing in the State of California who purchased Cocoa Krispies for personal
25  use and not for resale during the time period June 1, 2009 through February 28, 2010,
26  inclusive"; (ii) the proposed "Rice Krispies Class" consists of: "All persons residing

27
28  [5] Plaintiff was unaware of this FTC investigation related to the Immunity Claims until the FTC issued its June 3, 2010 News Release.

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

in the State of California who purchased Rice Krispies for personal use and not for resale during the time period June 1, 2009 through February 28, 2010, inclusive." Excluded from both classes are any employees of Kellogg, and any individuals receiving remuneration from Kellogg. The Cocoa Krispies Class and the Rice Krispies Class shall be collectively referred to herein as the "Class."

## IV.   ARGUMENT

The dual purposes of Rule 23 are:  "(1) to promote judicial economy through the efficient resolution of multiple claims in a single action; and (2) to provide persons with smaller claims, who would otherwise be economically precluded from doing so, the opportunity to assert their rights." *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 318 (C.D.Ca. 1998) (granting class certification) (citing Wright, Miller & Kane § 1754 at 49; Schwarzer, Tashima & Wagstaffe, *Cal.Prac. Guide: Fed.Civ.Pro.Before Trial* § 10:250 (The Rutter Group 1998)); *see also Eisen v. Carlise & Jacquelin*, 417 U.S. 156, 175 (1974); *Sollenbarger v. Mountain Sttes Tel. & Tel. Co.*, 121 F.R.D. 417, 436 (D.N.M. 1988).  "[F]raud perpetrated on numerous persons by the use of similar misrepresentations" is particularly suited for a class action. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 624 (1997) ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of antitrust laws") *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975) (quoting Advisory Committee on Rule 23, Proposed Amendments to the Rules of Civil Procedure, 39 F.R.D. 69, 103 (1966)), *cert denied*, 429 U.S. 816 (1976).

Given the purposes of the class action device, district courts have "broad discretion" to determine whether the Rule 23 requirements are met. *Zinser,* 253 F.3d at 1186; *In re Mego.Fin.Corp.Sec.Litig.*, 213 F.3d 454, 461 (9th Cir. 2000); *Yamamoto v. Omiya*, 564 F.2d 1319, 1325 (9th Cir. 1977). Further, the Rule 23(a) requirements are permissive.  *See e.g. Reynoso v. South County Concepts*, 2007 WL

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

4592119, *3 (C.D.Cal. Oct. 15, 2007); *Medrano v. WCG Holdings, Inc.*, 2007 WL 4592113, *3 (C.D.Cal. Oct. 15, 2007). Thus, a trial court is only required to form a reasonable judgment. *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir. 1975). In this regard, "[t]he court is bound to take the substantive allegations of the complaint as true." *Id.* This proposed class action squarely meets the criteria of Rule 23(a)of the Federal Rules of Civil Procedure and is maintainable under Rule 23(b)(3).

### A.   THIS ACTION SATISFIES ALL FOUR REQUIREMENTS OF RULE 23(a)

Commonly referred to as the numerosity, commonality, typicality and adequacy requirements, *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), under Fed. R. Civ. P. 23(a), a district court may certify a class if: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). Plaintiff bears the burden of demonstrating "each of the four requirements of Rule 23(a) *and* at least one of the requirements of Rule 23(b)" are met. *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (italics added).

### 1.   <u>Defendants Agree the Class is Sufficiently Numerous</u>

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed.R.Civ.P. 23(a)(1)). The exact size of the class need not be known as long as general knowledge and common sense indicate that the class is sufficiently numerous. *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated* on other grounds, 459 U.S. 810 (1982). Nonetheless, on or about

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

April 26, 2010, Defendants agreed to stipulate that the numerosity requirement of Rule 23(a)(1) is satisfied under the facts of this case. Kreger Decl., at ¶ 11.

### 2. <u>**Commonality Is Established Because This Case Is Comprised Of Uniform Misrepresentations And Omissions Giving Rise To Common Questions Subject To Common Proof**</u>

Under Rule 23(a)(2), there must be questions of law or fact common to the proposed class. Courts have described the showing needed to meet the commonality requirement as "minimal" and "not high." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

In assessing commonality, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon,* 150 F.3d at 1019. Additionally, "[t]he commonality test is qualitative rather than quantitative – one significant issue common to the class may be sufficient to warrant certification." *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214, 1225 (9th Cir. 2007).

This case is based on uniform misrepresentations made prominently on every box of Immunity Cereals sold to every class member. Accordingly, it is indisputable that the claims of all class members "stem from the same source." *See Hanlon*, 150 F.3d at 1019-20. The same misrepresentations appeared on the label of every Rice Krispies and Cocoa Krispies label during the Class Period.[6] As such, the case can be boiled down to a few common issues that can easily be resolved according to class-wide proof:

**<u>Issue 1:</u>** Did Kellogg claim, on each package sold during the Class Period, that Rice Krispies and Cocoa Krispies would "SUPPORT YOUR CHILD'S IMMUNITY" and "support your family's IMMUNITY" along with other statements about the health benefits of these cereals?

---

[6] The Class Period is June 1, 2009 through February 28, 2010. *See* Kreger Decl., ¶ 21, **Ex. 5** (Suarez-Davis Depo. at 67:2-13) (███████████████████████████████████████████████).

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

**Issue 2:** At the time Kellogg made the Immunity Cereals and related representations on its labels (and in its other advertising), did Kellogg have the requisite competent and reliable scientific evidence to substantiate those claims?

**Issue 3**:  Does Kellogg's conduct constitute unfair competition and/or deceptive advertising under applicable law?

**Issue 4:**  Should Kellogg provide restitution to California consumers?

Accordingly, there is a common core of salient facts and legal issues. *See Hanlon,* 150 F.3d at 1019; *see also Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Phillips v. Accredited Home Lenders Holding Co.*, 2007 U.S. Dist. LEXIS 59880 (C.D.Cal. may 16, 2007) (commonality satisfied where claims arose from "the same solicitations"). Thus, the Rule 23(a)(2) commonality requirement is easily satisfied.

### 3.  Typicality Is Established Because Plaintiff's Claims Are Based On The Same Conduct And The Same Injury As The Class

Third, "[t]he typicality prerequisite of Rule 23(a) is fulfilled if 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Hanlon,* 150 F.3d at 1020 (quoting Fed.R.Civ.P. 23(a)(3)).   "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *accord Dukes,* 474 F.3d at 1232. Under Rule 23(a)'s "permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 140 F.3d at 1020; *see also Gen. Tel. Co. of Southwest of Falcon*, 457 U.S. 147, 157 (1982).

Here, Plaintiff's claims are identical to the claims of the proposed Class. Plaintiff purchased the Immunity Cereals because she believed that the Products "help

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

support" her and her child's "immunity."  *See* Weeks Decl., ¶ 5.  Plaintiff's claims pose the same questions of law and fact as the class members and arise from the same label claims that give rise to the claims of the other class members. Plaintiff suffered the same injury – the loss of purchase – and seeks restitution on behalf of all Class members.  Accordingly, Plaintiff is well-suited to represent the Class.

### 4. <u>The Proposed Class Representative Will Fairly and Adequately Protect Class Interests</u>

"The final hurdle interposed by Rule 23(a) is that 'the representative parties will fairly and adequately protect the interests of the class.'" *Hanlon*, 150 F.3d at 1020 (quoting Fed.R.Civ.P. 23(a)(4)).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id. See also Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Hanlon,* 150 F.3d at 1021; *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994).

### a) Neither the Class Representative Nor Her Counsel Have Any Conflict Of Interest With The Proposed Class

The class representative may not have interests antagonistic to the remainder of the class. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Because adequacy is closely related to typicality, where, as here, the claims of the class members and the class representative are reasonably co-extensive, there is no conflict.  *General Tel. Co. v. Falcon*, 457 U.S. 147, 157-58, fn. 13 (1982). Moreover, if there are any doubts as to the adequacy of representation or potential conflicts, they should be resolved in favor of upholding the class, subject to later possible reconsideration. *Newberg on Class Actions* §7.24 at 7-90 to 7-81 (3d ed. 1992). Here, both Ms. Weeks' claims and the Class' claims arise from the same uniform misrepresentations and standardized conduct of Kellogg.   There are no real or

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

anticipated conflicts between Plaintiff and the proposed members of the Class. Further, Ms. Weeks seeks to recover the same remedy as all other members of the proposed Class.

### b) The Class Representative Will Prosecute This Action Vigorously

The general rule is that an adequate class representative needs only to have personal experience with the claims of the lawsuit and a general familiarity with the facts, but not necessarily a clear recollection of all facts relevant to their claims. *See e.g., Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 249 (C.D.Cal. 2006).

Here, Plaintiff has personal experience with the claims of the lawsuit and is quite familiar with the underlying facts.  Weeks Decl., ¶¶ 11, 12.  Plaintiff purchased Rice Krispies and Cocoa Krispies based on the promises and representations of supporting immunity.  *Id.* at ¶¶ 3-5.  Plaintiff has demonstrated her ability to monitor class counsel and assure vigorous prosecution of the case. Ms. Weeks has reviewed the complaint, provided information and has communicated with counsel throughout her involvement in this litigation. Weeks Decl., ¶ 12.  Accordingly, the proposed class representative is more than adequate.  *See, e.g. Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004) ("It is not necessary that a class representative be intimately familiar with every factual and legal issue in the case; rather it is enough that the representative understand the gravamen of the claim").

### c) Counsel Are Qualified, Experienced And Have The Resources To Vigorously Prosecute This Action

When the court certifies a class, the court must also appoint class counsel unless a specific statute provides otherwise. Fed. R. Civ. P. 23(g)(1)(A). The basic requirement for appointment as class counsel is that such counsel must fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(1)(B). In considering the requirement that "Plaintiffs are represented by qualified and

competent counsel[,]" *Dukes*, 474 F.3d at 1233, "the Court will look to the professional qualifications, skills, experience and resources of the lawyers." *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 650 (C.D. Cal. 1996).

The proposed class representative has retained experienced, competent legal counsel to represent her and the Class. *See* Kreger Decl., *¶¶* 12-16; *see also* Kreger Decl., ¶ 30, **Ex. 13** (firm resume of Whatley, Drake & Kallas, LLC). To date Whatley, Drake and Kallas, LLP ("WDK"), and Milstein, Adelman & Kreger "MAK" have vigorously litigated this matter, including, but not limited to, propounding discovery requests, reviewing documents and taking depositions. Based on their performance to date and their commitment to this litigation, WDK and MAK will continue to fairly and adequately represent the proposed Class.

**B.     The Court Should Certify A Rule 23(b)(3) Class**

In addition to meeting the prerequisites of Rule 23(a), this action also satisfies Rule 23(b)(3) for all of Plaintiff's claims. Class certification pursuant to Rule 23(b)(3) requires "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members of the class, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. Rule 23(b)(3). "Certification under Rule 23(b)(3) is proper 'whenever the actual interests of the parties can be served best by settling their differences in a single action." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 489 (C.D.Cal.2006) (quoting *Hanlon*, 150 F.3d. at 1022).

**1.     Common Issues Predominate Over Individual Issues**

"The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

representative rather than individual basis." *Hanlon*, 150 F.3d at 1022.  The Court rests its examination on the legal or factual questions of the individual class members. *Id.* Central to this inquiry is "the notion that the adjudication of common issues will help achieve judicial economy." *Zinser*, 253 F.3d at 1189 (*quoting Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc.*, 521 U.S. at 617.

Here, common questions of fact and law predominate over any alleged idiosyncratic differences between proposed class members. Common factual issues predominate because all of Plaintiff's UCL and CLRA claims are based on the identical false promise and representation that Kellogg makes uniformly on every single Krispies Cereal box it sold to the proposed class members – that the Product will "support the body's immune system" and help consumers "stay healthy" and the like. *See e.g. Hanlon v. Chrysler Corp.,* 140 F.3d 1011, 1022 (9th Cir. 1998).  Further, Defendants' misrepresentations regarding the Immunity Cereals' abilities to help support a child's immunity "are prominently displayed on all of the products' packaging" and thus "the alleged misrepresentations were made to all class members." *Weiner, et al., v. Dannon Company, Inc.*, 255 F.R.D. 658 (C.D.Cal. January 30, 2009) (finding Rule 23(b)(3) predominance was satisfied).

As discussed above regarding "commonality," the factual questions posed by this case are simple: (1) were theses misrepresentations on every package of the Immunity Cereals during the Class Period; (2) does Kellogg have competent and reliable scientific evidence to support the labels' bold representations; and, (3) what are the damages. These are all common issues that can easily be proven on a classwide basis.

Moreover, unlike most putative consumer fraud class actions that are based on an array of oral and written representations, this case is much simpler because it deals with a uniform, written misrepresentation made to every single class member. Not only was this misrepresentation present on each and every package, it was underscored by Kellogg's aggressive, ███████████ advertising and marketing campaign. Kreger Decl., ¶ 21, **Ex. 5** (Suarez-Davis Depo. 87:9-15). Nonetheless, the primary issue for trial is simply whether the uniform representation is true or false. There are few, if any, significant individualized factual issues posed here.

### a) Individual Reliance Is Irrelevant To The Inquiry On Plaintiff's UCL And CLRA Claims

The purpose of the UCL is to deter unfair business practices and "protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." McAdams v. Monier, Inc., 182 Cal.App.4th 174, 187 (Cal. App. 2010). It is well-settled that "claims brought under the California Unfair Competition Law are commonly certified for class treatment." In re Abbott Laboratories Norvir Antitrust Litig., 2007 WL 168999, *8 (N.D.Cal. June 11, 2007)(finding that alleged conduct subject to common proof presented common questions of fact and law that class action was superior method of adjudication of UCL claim).

Only the named plaintiff in a UCL class action need demonstrate injury, causation and reliance. *In re Tobacco II Cases*, 46 Cal.4th 298 (2009). The California Supreme Court has noted that the class representative must show the misrepresentation was "an immediate cause of the injury-producing conduct, the plaintiff need not demonstrate it was the only cause. It is not necessary that the plaintiff's reliance upon the truth of the fraudulent misrepresentations be the sole or even the predominant or decisive factor influencing his conduct." *Id.* Instead, "[i]t is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision. *Id.*

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

1    Moreover, a presumption, or at least an inference, of reliance arises wherever

2    there is a showing that a misrepresentation was material." *Id*. A misrepresentation is

3    "material" where "a reasonable man would attach importance to its existence or

4    nonexistence in determining his choice of action in the transaction in question, and as

5    such materiality is generally a question of fact unless the jury could not reasonably

6    find that a reasonable man would have been influenced by it." *Id.* at 326.  *Plascencia*,

7    2009 WL 2560732 (N.D. Cal., August 21, 2009) (holding putative class members

8    need not establish reliance).   "Common issues will thus predominate on UCL

9    claims…as *Tobacco II* sets out a liberal approach to the reliance inquiry." *Id.*

10    Recently, the Honorable Jacqueline H. Nguyen granted certification where the

11    product AirShield itself out to consumers as providing a defense and cure for the

12    common and other airborne illnesses. *Harvey v. CVS Pharmacy, Inc.*, Case No. 3:08-

13    cv-05058-JHN-RZ (C.D.Cal. April 27, 2010) ("Any variation among proposed class

14    members in their interaction with [the product] and their choices as consumers is

15    likely *de minimus*: consumers fear air borne germs, see a product claiming to protect

16    them, and purchase the product.).  Here there can be no question that the promise of

17    supporting a consumer's immune system distinguished the Immunity Cereals from

18    competing, less expensive cereals. Indeed, Kellogg received numerous consumer

19    complaints regarding the Immunity Claims, thus supporting a finding that a

20    reasonable consumer would place importance on those claims.

21    Thus, the Immunity Claims were a substantial cause in Plaintiff's decision to

22    purchase Cocoa Krispies and Rice Krispies. Indeed, Kellogg included the Immunity

23    Claims for the purpose of influencing reasonable consumers; otherwise, there would

24    be no reason to include the Immunity Claims on each package and launch ██████████

25    ████████████████!  Moreover, the FTC's June 13 Order is further evidence that "a

26    reasonable man" would attach importance to and be influenced by the Immunity

27

28

---

Claims.   *See* Kreger Decl. ¶ 27, **Ex. 11** (calling the Immunity Claims "dubious", "questionable" and "problematic").

Where such claims are "predicated on identical allegations," and "common, standardized sales materials," courts in the Central District of California have held that "[c]ommon issues regarding [defendants] fraudulent scheme predominate over questions affecting only individual members of the subclass." *Negrete*, 238 F.R.D. at 495-96 (certifying California UCL class action). Although a class representative must allege an injury in fact and reliance, there is no requirement that all absent class members must do the same. *See In re Tobacco Cases*, 46 Cal.4th 298.

The inference of reliance also applies to CLRA claims. *Mass. Mutual Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282 (Cal. App. 4th Dist. 2002). The CLRA's "causation" requirement requires a showing of reliance by the Class, but "plaintiffs may satisfy their burden of 'showing causation as to each [class member] by showing materiality as to all.'" *McAdams*, 182 Cal.App.4th at 183 (reversing trial court's order dying plaintiff's motion for class certification). An inference of reliance is made on an objective "reasonable person" standard, and is appropriate when a defendant omits facts that would have been material to any reasonable person contemplating the purchase of the defendant's product. *Id.* at 184.

There is an inference of reliance in the present case because Plaintiff alleges Kellogg made a single, material misrepresentation to each class member. These Immunity Claims are the very reason Ms. Weeks and others purchased the purportedly *new and improved* cereals.  Weeks Decl., ¶ 5. Further, as demonstrated by the FTC's investigation and June 3, 2010 statement regarding the Immunity Claims, the "reasonable person" standard is surely satisfied. Plaintiff may thus prove with generalized evidence that Kellogg's conduct was "material" and "likely to deceive" members of the public.  *Plascencia*, 2009 WL 2560732 at *10. Consumers were actually deceived by Kellogg's material performance claims on their Immunity

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

---

PLAINTIFF'S  POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [CV09-08102 (MMM) (RZx)]

Cereals boxes.  It is clear Plaintiff suffered the same material deception as experienced by the proposed Class and appropriately seeks an injunction on behalf of all Class members.  Thus, Plaintiff is typical and well-suited to represent the Class.

### b)  Individual Reliance Is Irrelevant To The Inquiry On Plaintiff's Fraud Claims

Any alleged differences in reliance of potential class members on the uniform misrepresentations do not outweigh the common course of Kellogg's conduct. *See e.g. In re First Alliance Mortgage Co.*, 471 F.3d 977, 989-991 (9th Cir. 2006). In *First Reliance*, the Ninth Circuit upheld the district court's certification of a class of borrowers alleging consumer fraud, noting that "[c]lass treatment has been permitted in fraud cases where, as in this case, a standardized sales pitch is employed." Rejecting the defendants' argument that individualized reliance issues predominated, the Ninth Circuit found that it "is the underlying scheme which demands attention. Each plaintiff is similarly situated with respect to it, and it would be folly to force each bond purchaser to prove the nucleus of the alleged fraud again and again." *Id.* at 990-91. According to *First Reliance*, the relevant test is whether the consumer fraud claims stem from a "common course of conduct." *Id.* at 990 (quoting *Blackie*, 524 F.2d at 902.

Reliance may be inferred on a class-wide basis where the alleged consumer fraud arises from uniform and standardized misrepresentations. *Vasquez v. Superior Court*, 4 Cal.3d 800 (1971). Indeed, if a plaintiff "can establish without individual testimony that the representations were made to each plaintiff and that that they were false, it should not be unduly complicated to sustain the burden of proving reliance thereon as a common element." *Id.*, 4 Cal.3d at 814.  Further, "[t]he fact of reliance upon alleged false representations may be inferred from the circumstances attending the transaction which often times afford much stronger and more satisfactory evidence of the inducement which prompted the party defrauded to enter into the contract than

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

his direct testimony to the same effect." *Id.* Therefore, based on the "common course of conduct" at issue in this case, namely, the packaging, advertising and marketing of the Immunity Claims, class certification is appropriate. *See Blackie*, 524 F.2d at 903-04.

## 2.  A Class Action Is The Superior Method Of Adjudication

Finally, a class action must be "superior to other available methods for the fair and efficient adjudication of a controversy." Fed.R.Civ.P. 23(b)(3). "A class action is the superior method for managing litigation if no realistic alternative exists." *Reynoso v. South County Concepts*, 2007 WL 452119, *4 (C.D.Cal. Oct. 14, 2007) (quotations omitted). In addition, a class action is superior where, as here, "class-wide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino*, 97 F.3d at 1234. Regarding the question of superiority, Rule 23(b)(3) enumerates four nonexclusive factors. Each of the factors supports class certification here.

The first factor to be considered is "the interest of members of the class in individually controlling the prosecution…of separate actions". Fed. R. Civ. P. 23(b)(3)(A). The interest of each class member is minimal. The primary policy of the class action mechanism is to enable the collective vindication of the rights of numerous persons whose small claims may not be worth pursuing in individual actions. *See Amchem Prods., Inc.*, 521 U.S. at 617. Indeed, they would clog the "courts with innumerable individual suits litigating the same issues repeatedly." *Dukes*, 474 F.3d 1244. Here, while the aggregate damages of the class members may be large, each class member paid a few dollars for their purchase of Immunity Cereals. Weeks Decl., ¶ 4.  *See Hanlon,* 150 F.3d at 1023. Moreover, given that this action involves a threat to public health and an attempt to eliminate that threat through consumption of the Immunity Cereals, the interests of the Class as a whole certainly outweigh any interest in individual damages.

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

The second factor, "the extent and nature of any litigation concerning the controversy already commenced by…members of the class" also supports proceeding with certification in this action. Fed.R.Civ.P.23(b)(3)(B). To date, no other civil actions regarding the Immunity Claims have been filed on behalf of California consumers.[7] Because the Class consists solely of California purchasers of the Immunity Cereals, the third factor, "the desirability…of concentrating the litigation of the claims in a particular forum" is also satisfied.

Finally, courts consider "the difficulties likely to be encountered in the management of the litigation." Fed.R.Civ.P. 23(b)(3)(D). There are no manageability issues in the instant action. Prosecution of the claims of the putative members of each Class in a single class action will not create more management problems than the alternative (i.e. the prosecution of thousands of separate lawsuits by each member of the Class).  Given the number and importance of the common questions of law and fact described above, resolving these issues in one class action is manageable and would further the twin goals of judicial efficiency and procedural fairness.

## V. <u>CONCLUSION</u>

For the reasons stated herein, Plaintiff, on behalf of herself and the proposed class, respectfully requests that the Court issue an order granting this motion for class certification and: (1) certifying a Rule 23(b)(3) Cocoa Krispies Class; (2) certifying a Rule 23(b)(3) Rice Krispies Class and (3) appointing Milstein, Adelman & Kreger, LLP and Whatley, Drake & Kallas, LLC as class counsel pursuant to Fed.R. Civ.P. 23(g).

//

//

---

[7] Additionally, the FTC's investigation of Defendants' Immunity Claims, and their subsequent agreement does not present any bar to certification here. The agreement between Kellogg and Defendants did not require Kellogg to provide restitution to California consumers. Further, the Chairman's Separate Statement supports Plaintiff's claims.

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

1

2

DATED: August 10, 2010                    Respectfully submitted,

3

Attorneys for Plaintiff Michelle Weeks

4

/s/ Wayne S. Kreger

5

MILSTEIN, ADELMAN & KREGER LLP
Wayne S. Kreger

6

Sara D. Avila

7

2800 Donald Douglas Loop North
Santa Monica, CA 90405

8

9

WHATLEY DRAKE AND KALLAS, LLC
Joe R. Whatley, Jr. (*Pro Hac Vice*)

10

1540 Broadway, 37th Floor
New York , NY 10036

11

12

Howard Weil Rubinstein (*Pro Hac Vice*)

13

P.O. Box 4839
Aspen , CO 81611

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28