JENNER & BLOCK LLP
Brent Caslin (Cal. Bar No. 198682)
bcaslin@jenner.com
Kenneth K. Lee (Cal. Bar No. 264296)
klee@jenner.com
633 West 5th Street, Suite 3500
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile:  (213) 239-5199

JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60635
Dean N. Panos (Admitted *pro hac vice*)
dpanos@jenner.com
Richard P. Steinken (Admitted *pro hac vice*)
rsteinken@jenner.com
Telephone: (312) 222-9350
Facsimile:  (312) 527-0484

Attorneys for Defendants
Kellogg Co., Kellogg USA, Inc., Kellogg Sales Co.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABENA LAKSHMI KAMMULA and MICHELLE WEEKS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KELLOGG COMPANY, a Delaware corporation; KELLOGG USA, INC., a Michigan corporation; KELLOGG SALES COMPANY, a Delaware corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | No. CV 09-08102 (MMM) (RZx)<br><br>**RESPONSE BRIEF IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date: October 18, 2010<br>Hearing Time: 10:00 a.m.<br>Ctrm: 780<br>Judge: Hon. Margaret M. Morrow<br><br>**FILED UNDER SEAL UNDER PROTECTIVE ORDER** |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................. 1

BACKGROUND ................................................................................. 3

1.  The Immunity Campaign .............................................................. 3

<span style="background:black"> </span>

ARGUMENT ...................................................................................... 6

I.  Plaintiffs Have Failed To Satisfy Rule 23(a). ............................... 6

    A.  Plaintiffs Have Failed To Identify An Ascertainable Class Because It Includes All Purchasers Without Regard to Whether They Purchased Immunity-Labeled Cereal Or Relied On Such Labels . ...... 6

    B.  Plaintiffs Have Not Established Typicality Because Their Claims Are Not Typical of Most Rice Krispies and Cocoa Krispies Consumers. ................................................................................... 9

II.  Plaintiffs Cannot Satisfy Rule 23(b)(3). ....................................... 11

    A.  Individual Questions Regarding Class Members' Purchases Will Predominate Because the Court Will Have to Determine Which Labeled Version of the Cereal Each Member Purchased. ................. 11

    B.  Individual Questions Of Reliance Will Predominate. ...................... 12

        1.  Plaintiffs are not entitled to an inference of reliance because the immunity claims were not made to every class member.... 13

        2.  Plaintiffs are not entitled to an inference of reliance because the immunity claims were not material or likely to deceive. ... 13

        3.  Issues of Individual Reliance Will Predominate. ..................... 17

II.  The Proposed Class Is Not Manageable. ....................................... 18

    A.  There Is Likely No Reliable Proof Of Damages Because Proposed Class Members Probably Did Not Retain Receipts for the Cereals. .. 18

    B.  The Difficulties In Ascertaining And Managing An Enormous Class Without Reliable Proof Outweigh The Benefits Of A Class Action. ........................................................................................ 22

CONCLUSION ................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

FEDERAL CASES

*Burdick v. Union Sec. Ins. Co.*, No. CV 07-4028 ABC (JCx),
  2009 LEXIS 121768, at *4 (C.D. Cal. Dec. 9, 2009)............................7

*Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978) ..............................6

*Dumas v. Albers Med., Inc.*, No. 03-0640-CV-W-GAF,
  2005 U.S. Dist. LEXIS 33482 (W.D. Mo. Sept. 7, 2005)..................21

*Fine v. ConAgra Foods, Inc.*, No. CV 10-01848 SJO
  (C.D. Cal. Aug. 26, 2010)........................................................9, 10

*Gartin v. S&M NuTec LLC*, 245 F.R.D. 429 (C.D. Cal. 2007) ..............22

*Gonzalez v. P&G Co.*, 247 F.R.D. 616 (S.D. Cal. 2007) ..................13, 18

*Grimes v. Rave Motion Pictures Birmingham, LLC*,
  264 F.R.D. 659 (N.D. Ala. 2010) ..........................................21

*Harvey v. CVS Pharmacy, Inc.*, No. 2:08-cv-05058-JHN-RZx
  (C.D. Cal. Apr. 27, 2010) ........................................................14

*Heffelfinger v. Elec. Data Sys. Corp.*, No. CV-00101,
  2008 U.S. Dist. LEXIS 5296 (C.D. Cal. Jan. 7, 2008)............passim

*Hodes v. Van's International Foods*, No. CV 09-01530 RGK (FFMx),
  2009 U.S. Dist. LEXIS 72193 (C.D. Cal. July 23, 2009) ..........2, 11, 12, 19

*In re ConAgra Peanut Butter Prods. Liab. Litig.*,
  251 F.R.D. 689 (N.D. Ga. 2008) ..........................................21

*In re Hotel Tel. Charges,* 500 F.2d 86 (9th Cir. 1974)................21, 23, 24

*In re PPA Products Liability Litigation*, 214 F.R.D. 614
  (W.D. Wash. 2003)..........................................................20, 22, 23

*In re Teflon Products Liability Litigation*, 254 F.R.D. 354 (S.D. Iowa 2008)........20

*Kelley v. Microsoft Corp.*, 251 F.R.D. 544 (W.D. Wash. 2008) ..............18

*Leysoto v. Mama Mia I., Inc.*, 255 F.R.D. 693 (S.D. Fla. 2009) ..............23

*O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404 (C.D. Cal. 2000) ...................... 19

*Oshana v. Coca-Cola*, 472 F.3d 506 (7th Cir. 2006) ................................................ 8

*Philadelphia v. American Oil Co.*, 53 F.R.D. 45 (D.N.J. 1971) .............................. 20

*Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651 (D. Nev. 2009) ...................... 15, 16

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.*,
   No. SACV 07-1306 JVS (RNBx), 2008 U.S. Dist. LEXIS 95083,
   at *28 (C.D. Cal. Nov. 13, 2008) ........................................................................ 16

*Sanchez v. Wal Mart Stores, Inc.*, No. 2:06-CV-02573-JAM-KJM,
   2009 U.S. Dist. LEXIS 48428 (E.D. Cal. May 28, 2009) ...................... 10, 13, 17

*Sanchez v. Wal Mart Stores, Inc.*, No. Civ. 2:06-CV-02573,
   2009 U.S. Dist. LEXIS 48428 (E.D. Cal. May 28, 2009) ........................... 17, 24

*Sanders v. Apple, Inc.*, No. C 08-1713 JF (PVT), 672 F. Supp. 2d 978 (N.D.
   Cal. 2009) .......................................................................................................... 8

*Sikes v. Teleline, Inc.*, 281 F.3d 1350 (11th Cir. 2002) ........................................ 19

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) . 19

*True v. Am. Honda Motor Co.*, 520 F. Supp. 2d 1175 (C.D. Cal. 2007) ................ 14

*Weiner v. Dannon*, 255 F.R.D. 658 (C.D. Cal. 2009) ........................................ 13, 14

STATE CASES

*Blue Chip Stamps v. Superior Court*, 18 Cal. 3d 381 (1976) .................................. 24

*Caro v. Proctor & Gamble Co.*, 18 Cal. App. 4th 644
   (Cal. App. 4th Dist. 1993) ............................................................................ 13, 24

*Colgan v. Leatherman Tool Group, Inc.*,
   135 Cal. App. 4th 663 (Cal. App. 2d Dist. 2006) ............................................. 25

*Massachusetts Mutual Life Ins. Co. v. Superior Court*,
   97 Cal. App. 4th 1282 (Cal. App. 4th Dist. 2002) ............................................. 13

*Reyes v. San Diego County Board of Supervisors*,
   196 Cal. App. 3d 1263 (Cal. App. Ct. 1987) ..................................................... 24

1

**FEDERAL**

2   Fed. R. Civ. P. Rule 23(a) ........................................................................6

3   Fed. R. Civ. P. 23(a)(3) ...........................................................................9

4   Fed. R. Civ. P. Rule 23(b)(3) .................................................................11

5
    **STATE**
6
7   Cal. Civ. Code § 3343 .............................................................................25

8   **OTHER AUTHORITIES**

9   Conte Newberg, NEWBERG ON CLASS ACTIONS 4th .................................23

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **INTRODUCTION**

For more than 50 years, Rice Krispies has been an iconic brand of cereal for the Kellogg Company, enjoyed by millions of consumers for its familiar taste, quality and unique branding.  In 2008, Kellogg began investigating the possibility of fortifying Rice Krispies and its sister brand, Cocoa Krispies, with nutrients known to benefit the body's immune system, and in summer 2009, Kellogg began distributing the cereals in packaging that announced the fortification of the products and the resulting positive impact on the immune system. ███████████████████████████ and in response to criticism of the campaign, Kellogg announced on November 4, 2009 that it would discontinue the immunity statements on the packaging, that new packaging would be incorporated into production, and that any remaining old packaging would be shipped by January 15 and off-shelf by mid-February 2010.

███████████████████████████████████████████

Plaintiffs contend that this short-lived immunity campaign was false and deceptive, and that they and thousands of California consumers[1] would not have

_____

[1] Kellogg respectfully requests leave to file a supplemental and amended brief opposing class certification.  On September 7, after Plaintiffs' counsel informed Kellogg that the named plaintiff will not available for deposition until September 27, the parties filed a stipulation and proposed order requesting that the briefing schedule be modified to allow proper class discovery.  Because the court has not yet acted on that request, Kellogg files this brief out of an excess of caution.  Furthermore, this Court on August 13 directed the parties to file a report on whether a consolidated class complaint will be filed and whether a new briefing schedule on class certification was needed.  Despite numerous inquiries, Plaintiffs have not indicated whether or not they will file a consolidated class complaint.  If Kellogg is not permitted to obtain basic class discovery and to file a supplemental brief opposing class certification using the results of that discovery, it will be severely prejudiced.

1   purchased the Krispies cereals but for the immunity claims.  However, in asking this
2   Court to certify a class action, Plaintiffs sole criteria for membership in the class is
3   that a consumer have purchased Cocoa Krispies and Rice Krispies in California
4   between June 1, 2009 and February 28, 2010.  Class membership based solely on the
5   purchase of a mass marketed product is plainly inadequate under established case law.
6   Plaintiffs' motion should be denied for several reasons.

7       First, Plaintiffs have failed to identify an ascertainable class.  Because Kellogg
8   began shipping the Krispies cereal boxes that contained the immunity claims in late
9   May 2009 and stopped shipping those boxes in late November 2009, numerous boxes
10  that did *not* include the immunity statements were still on store shelves between June
11  1, 2009 and February 28, 2010.  Therefore, the cereal box of any particular consumer
12  who purchased the cereals during that time period may or may not have included those
13  immunity statements.  Moreover, Plaintiffs' proposed class is also not ascertainable
14  because the class as defined will include many long-time consumers of the cereals
15  who did not rely on the immunity claims when making their purchasing decisions.

16      Second, the Named Plaintiff's claims are not typical of other class members'
17  claims.  Named Plaintiff alleges that the packaging of the cereals she purchased
18  contained the immunity claims, but numerous putative class members purchased
19  cereal with packaging that did not contain the immunity claims.  Additionally, even
20  for consumers who purchased packaging that included the statements, many have
21  eaten the cereals for years motivated by numerous reasons wholly unrelated to the
22  immunity campaign.  Thus, Named Plaintiff's claim is not representative of other
23  consumers' purchase decisions.

24      Third, individual questions about class members' purchases will predominate
25  in this litigation.  As this Court recently held in denying class certification in a case
26  involving nutritional claims on the labels of waffles, *Hodes v. Van's International*
27  *Foods*, No. CV 09-01530 RGK (FFMx), 2009 U.S. Dist. LEXIS 72193 (C.D. Cal.

28

Response Brief in Opposition to Motion for Class Certification

July 23, 2009), questions about who purchased the products during the class period, which version of the products they purchased, and how many boxes they purchased containing the alleged misrepresentations will overwhelm any common issues.

<u>Fourth</u>, individual questions of reliance will also consume the litigation. Contrary to Plaintiffs' contention, a presumption of reliance is only available where (a) every class member receives the same representation and (b) the representation was "material." The first requirement is not met here because the availability of the cereals in packaging that did not include the immunity claims during the class period means that not every class member received the representations at issue. Additionally, the representations were not "material" because numerous reasons besides health benefits motivate a consumer's decision to purchase long-time popular brands like the Krispies cereals. ███████████████████████████████████████████ ████████████████████████████████ Because an inference of reliance is not appropriate, class members will need to individually prove that relied on the immunity claims.

<u>Fifth</u>, the proposed class action is unmanageable because it will require countless mini-trials in order to determine who is actually in the class. Because it is unlikely that class members have retained any proof that they purchased a box of cereal containing the immunity claims, the Court would have to evaluate the memories of thousands of class members in order to determine who is in the class, a burdensome and impractical judicial exercise. Thus, a class action here would be unmanageable and the burden of proceeding on that basis will outweigh the normal benefits of proceeding through a class action, particularly given that only *de minimis* damages are recoverable by any class member.

## BACKGROUND

### 1.   The Immunity Campaign.

Plaintiffs' proposed class action includes "[a]ll persons residing in the State of

---

California who purchased [Cocoa Krispies or Rice Krispies] for personal use and not for resale during the time period June 1, 2009 through February 28, 2010." (Pls. Memo at 10-11.) Kellogg began distributing Rice Krispies and Cocoa Krispies with labels describing their immunity benefits in May of 2009. (Kellogg Ex. 1, Kellogg Resp. to Interrog. Nos 4-5 (April 6, 2010). Thereafter, as Rice Krispies and Cocoa Krispies with the old packaging were sold, the packaging containing the immunity claims gradually replaced them on supermarket shelves throughout the first months of the class period. (Kellogg Ex. 2, Declaration of Thomas P. Monroe ¶ 3.)

On November 4, 2009, Kellogg announced that it would discontinue the immunity statements on the packaging, that certain of the old packaging would be destroyed and new packaging incorporated into production, and that any remaining old packaging would be shipped by January 15 and would likely be off-shelf by mid-February 2010. (Ex. 8 to Pls. Memo, G. Pilnick December 15, 2009 Letter to Oregon Dept. of Justice). Thus, after November 4, 2009, there was a decreasing percentage of the Krispies cereals which contained the immunity claims being sold, and the last shipments of packaging with the immunity claims were made at the end of November 2009, replaced by packaging that did not include the immunity claims. (Kellogg Ex. 2, Monroe Dec. ¶ 4.)

As a result, during the entire Class Period, there was a varying percentage of products with labels containing the immunity claims, and any particular class member could have purchased the product with or without those claims on the package.

---

Response Brief in Opposition to Motion for Class Certification

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Response Brief in Opposition to Motion for Class Certification

1

## ARGUMENT

2    In considering whether to certify a class action, district courts can "look beyond

3 the pleadings and examine Plaintiffs' substantive claims to determine whether the

4 elements of Rule 23 have been met." *Heffelfinger v. Elec. Data Sys. Corp.*, No. CV-

5 00101, 2008 U.S. Dist. LEXIS 5296, at *33 (C.D. Cal. Jan. 7, 2008).   Determining

6 whether to certify a class "generally involves considerations that are enmeshed in the

7 factual and legal issues comprising the plaintiff's cause of action." *Coopers &*

8 *Lybrand v. Livesay*, 437 U.S. 463, 469 (1978).   A class can be certified only if

9 plaintiff can satisfy Rule 23(a) and one of the bases for class certification under Rule

10 23(b).  Plaintiffs here have failed to do so.

11  **I.    Plaintiffs Have Failed To Satisfy Rule 23(a).**

12    Under Rule 23 of the Federal Rules of Civil Procedure, a class "may be

13 certified [only] if the trial court is satisfied after a rigorous analysis, that the

14 prerequisites of Rule 23(a) have been satisfied." *Heffelfinger*, 2008 U.S. Dist. LEXIS

15 5296 at *25 (quoting *General Tel. Co. of the Southwest v. Falcon,* 457 U.S., 147, 161,

16 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)).  "The burden is on the plaintiffs, as the

17 parties seeking certification, to make a prima facie showing that each of the

18 prerequisites of Rule 23(a) has been satisfied, i.e., (1) numerosity; (2) commonality;

19 (3) typicality; and (4) adequacy of representation." *Id.*; Fed. R. Civ. P. 23(a).

20
21
22
   **A.    Plaintiffs Have Failed To Identify An Ascertainable Class Because It Includes All Purchasers Without Regard to Whether They Purchased Immunity-Labeled Cereal Or Relied On Such Labels .**

23    A threshold inquiry to determine whether a plaintiff can maintain a class action

24 is whether the plaintiff has identified an "ascertainable" class. *See, e.g., Heffelfinger*,

25 2008 U.S. Dist. LEXIS 5296 at *24("[a]lthough not specifically mentioned in Rule

26 23(a), there is an additional prerequisite to certification -- that the class be

27 ascertainable.")  In order for a class to be ascertainable, the class must be defined to

28

---

Response Brief in Opposition to Motion for Class Certification

1   exclude persons without standing.   Thus, a class definition "should be tailored to
2   exclude putative class members who lack standing . . . each class member need not
3   submit evidence of personal standing but, nonetheless, a class must be defined in such
4   a way that anyone within it would have standing." *Burdick v. Union Sec. Ins. Co.*, No.
5   CV 07-4028 ABC (JCx), 2009 LEXIS 121768, at *4 (C.D. Cal. Dec. 9, 2009).   This
6   Court has noted that the purpose of the ascertainable class requirement is to weed out
7   persons that have not actually been harmed by defendant's conduct and to alert the
8   court of potential burdens on its own docket:

9
10  > As recently explained by Judge Conlon of the Northern District of
11  > Illinois: "The class description must be sufficiently definite to permit
12  > ascertainment of class members, and 'the description must ***not be so
     > broad as to include individuals who are without standing to maintain
     > the action on their own behalf.*'  Proper identification of the proposed
13  > class serves two purposes. First, it alerts the court and parties to the
     > potential burdens class certification may entail. 'In this way the court can
14  > decide whether the class device simply would be an inefficient way of
     > trying the lawsuit for the parties as well as for its own congested docket.'
15  > Second, proper class identification insures that those individuals actually
16  > harmed by defendant's wrongful conduct will be the recipients of the
     > awarded relief."
17
18  *Heffelfinger*, 2008 U.S. Dist. LEXIS 5296, at *38-39 (quoting *Oshana v. Coca-Cola*
19  *Bottling Co.*, 225 F.R.D. 575, 580 (N.D. Ill. 2005)) (emphasis added).   If a proposed
20  class definition includes persons without standing, the class is not ascertainable.

21      Here, Plaintiffs' class definition fails the ascertainable requirement because
22  membership in the class depends solely on the purchase of a mass marketed product.
23  First, because the Krispies cereals were sold during the class period both with and
24  without the immunity statements, the proposed class includes persons that did not
25  receive the representations at issue, and thus lack any connection to this case.   For this
26  reason, the proposed class is not ascertainable because it "include[s] individuals who
27  are without standing to maintain the action on their own behalf." *Heffelfinger*, 2008

28

---

1   U.S. Dist. LEXIS 5296, at *38-39 (quoting *Oshana*, 225 F.R.D. at 580.

2       <u>Second</u>, Plaintiffs' class definition necessarily includes persons that did not rely

3 on the statements at issue. As the court recently explained in *Fine,* a class comprised

4 generically of all purchasers of a product fails the ascertainability requirement because

5 it necessarily includes persons that did not rely on the representations at issue.

6 Likewise, in the present case, a class of purchasers of Rice Krispies or Cocoa Krispies

7 will include many consumers who did not rely on the representations at issue .

8       Federal courts in California and elsewhere have repeatedly refused to certify a

9 class where proposed class membership extends to all purchasers without regard to

10 whether they purchased the products because of the alleged misrepresentation. In

11 *Oshana*, plaintiff alleged that Coca-Cola misrepresented the contents of Diet Coke and

12 sought to certify a class of all purchasers of Diet Coke in Illinois during a five year

13 period. 225 F.R.D at 580. The district court held that this class definition failed the

14 ascertainability requirement because the class was "overly inclusive and

15 encompasse[d] millions of potential members without any identifiable basis for

16 standing." *Id.* The Seventh Circuit affirmed because the class necessarily included

17 "millions who were not deceived and thus have no grievance under" the state

18 consumer protection statute. *Oshana v. Coca-Cola*, 472 F.3d 506, 514 (7th Cir.

19 2006). As the court explained, "[s]ome people may have bought fountain Diet Coke

20 *because* it contained saccharin, and some people may have bought found Diet Coke

21 *even though* it had saccharin." *Id.*

22       Similarly, in *Sanders v. Apple, Inc.*, No. C 08-1713 JF (PVT), 672 F. Supp. 2d

23 978, 983 (N.D. Cal. 2009), plaintiffs filed a consumer fraud class action against Apple

24 for representations relating to the display capabilities of the iMac. Plaintiffs' class

25 definition included "all persons or entities located within the United States who own a

26 20-inch Aluminum iMac." *Id.* at 990. The court held that the class was not

27 ascertainable and struck the class action allegations because "[t]his definition

28

1    necessarily includes . . . individuals who either did not see or were not deceived by

2    advertisements, and individuals who suffered no damages.  Such individuals would

3    lack standing to bring these claims." *Id.*

4        And recently in *Fine v. ConAgra Foods, Inc.*, No. CV 10-01848 SJO (CFOx)

5    (C.D. Cal. Aug. 26, 2010), plaintiffs, who were represented by the same counsel that

6    appear for plaintiffs here, alleged that ConAgra's use of the statement "No Added

7    Diacetyl" on the labels of its popcorn products was misleading and filed a class

8    certification motion, nearly identical to the pending motion here, seeking to certify a

9    class including "all persons residing in the State of California who purchased

10   [Defendant's] popcorn for personal use and not for resale since September 1, 2007."

11   *Id.* at 3.  The court found this class definition overbroad because it inevitably included

12   persons that did not rely on the representations at issue.  "Plaintiff makes no mention

13   of the proposed class being comprised of members who made the purchase *as a result*

14   *of* Defendant's allegedly false statements, which is necessary to establish standing."

15   *Id.* at 4.   The court held that "class certification is improper, given that Plaintiff's

16   proposed class includes many people who may not have relied on Defendant's alleged

17   misrepresentations when making their purchasing decisions." *Id.* at 5.

18
         **B.    Plaintiffs Have Not Established Typicality Because Their Claims Are**
19              **Not Typical of Most Rice Krispies and Cocoa Krispies Consumers.**

20       Under Fed. R. Civ. P. 23(a)(3),  "representative claims are 'typical' if they are

21   reasonably co-extensive with those of absent class members; they need not be

22   substantially identical."  *Heffelfinger*, 2008 U.S. Dist. LEXIS 5296, at *59 (quoting

23   *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998)).   Here, however,

24   Plaintiffs — who claim that they purchased Rice Krispies and Cocoa Krispies solely

25   because of the immunity labels — cannot satisfy the typicality requirement.

26       First, Named Plaintiff's claims are not typical because a large portion of the

27   proposed class did not receive the immunity statements.   While Named Plaintiff

28

Response Brief in Opposition to Motion for Class Certification

1   alleges she bought a version of the products that contained a description of the

2   immunity benefits on the label of the product, the availability of packaging without

3   the immunity statements means that not every member of the proposed class did.

4   Accordingly, Named Plaintiff's claims are not "typical" of a large portion of the class.

5        Second, during the class period, consumers purchased the Krispies cereals for

6   reasons that were many and varied, and that had nothing with the immunity campaign;

7   thus Named Plaintiff's claims are not typical of the rest of the class.   In *Sanchez v.*

8   *Wal Mart Stores, Inc.*, No. 2:06-CV-02573-JAM-KJM, 2009 U.S. Dist. LEXIS 48428,

9   at *7-8 (E.D. Cal. May 28, 2009), the court refused to certify a class of purchasers of

10  strollers because, although the named plaintiff may have relied on the representations

11  at issue, her claims were not typical:

> Plaintiff's claims are not typical of those of the class she seeks to represent. There are innumerable variations in the experiences and information possessed by consumers, in the factors that influence consumers' purchasing decisions, and in the manner by which consumers react to product warnings and the disclosure of safety information. The putative class will include persons who knew about the alleged hazard, yet purchased the product anyway; people, like Plaintiff, who bought the Stroller because of its price, size, and other characteristics; and many others for whom the "warning" would have made no difference in their purchase decision. As a result, there is no "typical" claim or experience, certainly not Plaintiff's experience, that can be extrapolated classwide.

20  *Id.* at *7-8. Similarly, in *Fine*, the court rejected a class of purchasers of ConAgra's

21  popcorn products because the proposed class included "people with varying rationales

22  behind their purchases - many who would, as Defendant points out, purchase popcorn

23  based on factors like flavor or brand." No. CV 10-01848 SJO (CFOx), at 6-7.

24       The same concerns that prevented class certification in *Sanchez* and *Fine* are

25  present here. ███████████████████████████████████████

26  ████████████████   Plaintiff's claim that she was impacted by the immunity campaign is

27  not representative of the class members she seeks to represent.

28

---

## II.     Plaintiffs Cannot Satisfy Rule 23(b)(3).

The proposed class also cannot be certified under Rule 23(b)(3).  A class is only maintainable under Rule 23(b)(3) where both (i) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and (ii) where "a class action is superior to other available methods for fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3); *Heffelfinger*, 2008 U.S. Dist. LEXIS 5296, at *31.  In determining superiority, the court must consider the four factors set forth in Rule 23(b)(3) the interest class members have in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy that has already been commenced by or against class members; (3) the desirability or undesirability of concentrating litigation of the claims in the particular forum; and (4) the difficulties that will likely be encountered in managing the suit as a class action.  Fed. R. Civ. P. 23(b)(3); *Heffelfinger*, 2008 U.S. Dist. LEXIS 5296, at *32.

### A.     Individual Questions Regarding Class Members' Purchases Will Predominate Because the Court Will Have to Determine Which Labeled Version of the Cereal Each Member Purchased.

The issue of whether any particular class member actually purchased a cereal product containing the immunity benefit claims will predominate and require an individualized inquiry.  As noted previously, Krispies cereals were available during the class period both with and without immunity claims on the packaging.  The Court will thus need to determine whether any particular class member actually purchased a cereal that contained the alleged misrepresentations on the label.  Furthermore, it is highly unlikely that a class member will have saved the box or receipt that proves the purchase and the version of the cereal bought.  The Court will be left to rely on the vagaries of memory in order to determine whether any putative class member purchased the products during the class period, which version of the products was

---

Response Brief in Opposition to Motion for Class Certification

1    purchased, and how many boxes containing the immunity claims were purchased.

2    This Court considered a similar fact situation in *Hodes v. Van's International*

3    *Foods*, No. CV 09-01530 RGK (FFMx), 2009 U.S. Dist. LEXIS 72193 (C.D. Cal.

4    July 23, 2009), where plaintiffs claimed that the nutritional values listed on the labels

5    of the waffle products were misleading and sought to certify a class of all purchasers

6    of defendant's waffles. *Id.* at *3-4. The court declined to certify a class after finding

7    that individual inquiries would overwhelm the litigation. *Id.* at *11-13. The court

8    explained that plaintiffs (like Plaintiffs here) had placed undue emphasis on [*In re*]

9    *Tobacco II* [*Cases,* 46 Cal. 4th 298 (2009)], which only addressed the issue of

10   reliance. *See id.* According to the court, "while Plaintiffs point out that they do not

11   need to prove individual reliance by class members [by citing *Tobacco II*] . . .

12   Plaintiffs lose sight of the other individualized purchasing inquiries that remain in this

13   case." *Id.* at *12-13. Those individual inquiries included "*who* purchased Van's

14   frozen waffles during the relevant class period, *which kind* of frozen waffles they

15   purchased, *how many* they purchased, and whether the kinds they purchased contained

16   false nutritional information. *Id.* at *13. The court also noted that there were severe

17   proof problems because the "likelihood that tens of thousands of class members saved

18   their receipts as proof of their purchase of Van's waffles is very low." *Id.* at *11.[2]

19   **B.    Individual Questions Of Reliance Will Predominate.**

20   Contrary to Plaintiffs' contention (Pls. Memo at 21) that they can demonstrate

21   reliance through generalized evidence, this case will in fact require individual

22

23

24   [2]    Even a more narrow class of only persons that purchased the Products with the
immunity claims on the label would require the Court to inquire into whether each

25   class member received a product displaying the immunity claims. The *Hodes* decision

26   pointed out the difficult individualized inquiries that are required, even though the
class there was already defined as those who purchased "deceptively-labeled waffles."

27

28

1    determinations of whether any individual class member actually relied on the

2    representations at issue.

### 1.    Plaintiffs are not entitled to an inference of reliance because the immunity claims were not made to every class member.

Plaintiffs are not entitled to a class-wide inference of reliance here simply because numerous purchasers of the cereals did not receive the alleged misrepresentations. An inference of reliance for a class action is only appropriate where every single class member received the same material misrepresentation. *Weiner v. Dannon*, 255 F.R.D. 658, 669 (C.D. Cal. 2009); *see also Gonzalez v. P&G Co.*, 247 F.R.D. 616, 624-26 (S.D. Cal. 2007) (explaining that under CLRA, UCL, and FAL an inference of common reliance is only permitted where every class member receives the same material misrepresentation). Not every member of the proposed class received the representations here because many boxes sold during the Class Period did not contain the immunity claims, so no inference of reliance applies.

### 2.    Plaintiffs are not entitled to an inference of reliance because the immunity claims were not material or likely to deceive.

An inference of reliance is also inappropriate here because the representations at issue were not material. A plaintiff is only allowed to prove reliance through generalized evidence if the alleged misrepresentation at issue was "material." *See, e.g., Sanchez v. Wal Mart Stores, Inc.*, No. Civ. 2:06-CV-02573-JAM-KJM, 2009 U.S. Dist. LEXIS 89057, at *6-8 (E.D. Cal. Sept. 11, 2009) ("*Sanchez II*") (refusing to apply inference of reliance where there was no evidence that representations at issue were "material"); *Caro v. Proctor & Gamble Co.*, 18 Cal. App. 4th 644, 668 (Cal. App. 4th Dist. 1993) (refusing to apply inference of reliance where misrepresentations at issue were not "material").

If the record demonstrates that an alleged misrepresentation was immaterial, the inference of reliance is not permitted. *Massachusetts Mutual Life Ins. Co. v. Superior*

*Court*, 97 Cal. App. 4th 1282, 1294-95 (Cal. App. 4th Dist. 2002). A misrepresentation is "material" where "it induced the plaintiff to alter his position to his detriment. Stated in terms of reliance, materiality means that without the misrepresentation, the plaintiff would not have acted as he did." *True v. Am. Honda Motor Co.*, 520 F. Supp. 2d 1175, 1182 (C.D. Cal. 2007).

In *Wiener v. Dannon Co.*, 255 F.R.D. 658 (C.D. Cal. 2009), a case heavily relied upon by Plaintiffs, the representations at issue were considered material only because the advertised health benefits were the sole characteristic that distinguished the two completely new products, Activia and DanActive, from others on the market. *Id.* at 663, 669. The court's materiality holding turned on the fact that Dannon could not point to any other reasons why consumers would have purchased the products apart from their purported health benefits:

> ***Dannon has not pointed to any meaningful difference in flavor, serving size, or the like that might influence consumers' purchases.*** Rather, Dannon's advertisements, promotions, and labels for the Products explicitly and continually emphasize only the health benefits of Bifidus Regularis in Activia and L. Casei Immunitas in DanActive. The Court is aware that many factors influence all consumers' purchasing decisions, a point which Dannon emphasizes, yet given that the alleged misrepresentations are the distinguishing characteristic of the Products, the court finds that these representations induced consumer purchases because without the alleged misrepresentations, there is no reason, even with sales, coupons, or other promotions, to suggest that purchasers would have selected the Products over other Dannon products or similar, generally less expensive, products by other brands.

*Id.* at 270 (internal citations omitted) (emphasis added).

Similarly, in the other case upon which Plaintiffs rely, *Harvey v. CVS Pharmacy, Inc.*, No. 2:08-cv-05058-JHN-RZx (C.D. Cal. Apr. 27, 2010), the court found that CVS marketed a product called "Airshield" as a cure for the common cold and there simply was no reason for a consumer to purchase the product other than to

---

Response Brief in Opposition to Motion for Class Certification

1  receive the purported health benefits associated with it.

2       In *Dannon* and *Harvey*, the products at issue were created solely to provide

3  their purported health benefits and consumers only purchased the products to receive

4  those benefits.  By contrast, the Krispies cereals are iconic brands that consumers have

5  purchased for more than 50 years for many and varied reasons, including the taste,

6  quality, nutrition and pleasurable eating experience.

7

8

9

10

11

12

13        (i)    The representations at issue were not material because the

14           immunity benefit of the cereal is not the only factor that

         distinguishes the cereals from other products.

15       Unlike Dannon's Activia and DanActive or CVS Pharmacy's Airshield,

16  Kellogg's Krispies cereals were not created solely to provide a health benefit, but

17  rather were already market leaders whose fortification with nutrients was promoted as

18  an improvement.  The immunity statement was yet another reason to enjoy the

19  products in addition to the numerous long-standing selling points that already

20  separated the cereals from their competitors.

21       Thus, this case is similar to *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 659

22  (D. Nev. 2009), where plaintiff sought to have a class certified to pursue the claim that

23  the labels on Ol' Roy dog food were misleading because they said "Made in the USA"

24  in capital and bold lettering.  Plaintiff argued that she was entitled to an inference of

25  reliance by class members under California law but the court disagreed, finding that

26  there were many reasons why a consumer might buy the product aside from the

27  "Made in the USA" claim.  *Id.*  The court explained that while the only difference

28

Response Brief in Opposition to Motion for Class Certification

1  between the Dannon yogurt products and their competitors was the misrepresentation
2  of health benefits, "any number of differences exist between Ol' Roy products and
3  other brands that could have caused class members to purchase Ol' Roy products." *Id.*
4  The court said that it could not "conclude that without the geographic representation,
5  the class members would not have purchased the product. . . . Because the reasons
6  consumers purchased Ol' Roy over other brands likely vary greatly, the Court will not
7  presume reliance." *Id.*

8      Just like the Ol' Roy products at issue in *Picus*, numerous reasons have long
9  motivated consumers to purchase the Krispies cereals apart from the advertised
10  immunity benefits.  As explained in Dr. Simonson's report (Kellogg Ex. 3), both
11  cereals are well-established brands with strong customer loyalty arising from their
12  reputations for quality and good taste.  Sales of such iconic brands are the product of a
13  well-established brand equity built up over a long period of time which results in
14  favorable brand image, consumer loyalty and a habitual purchasing decision. (*Id.*) A
15  short-term marketing campaign promoting the fortification of Rice Krispies and
16  Cocoa Krispies with nutrients and antioxidants would not have the effect of changing
17  consumers' long-held perception of the products. Accordingly, Plaintiffs are not
18  entitled to an inference of reliance excusing each class member from individual proof
19  that the representations affected the decision to purchase the Products.



20
21
22
23
24
25
26
27
28

Response Brief in Opposition to Motion for Class Certification

1

2

3

4

5

6                                       Plaintiffs' sole attempt to establish that a

7 reasonable consumer would consider the representations at issue "material" is to

8 contend that the representations must be material because a few customers criticized

9 them. (Pls. Memo at 20-21.)  Under this approach, a certifiable class action would

10 result from any consumer's grievances about any product.

11         Such an approach was rejected by the court in *Sanchez II*, 2009 U.S. Dist.

12 LEXIS 89057.   In *Sanchez*, the court originally refused to certify a class of all

13 purchasers of a stroller which lacked safety warnings because individual questions of

14 consumer preferences and knowledge would predominate the litigation.  *Sanchez v.*

15 *Wal Mart Stores, Inc.*, No. Civ. 2:06-CV-02573-JAM-KJM, 2009 U.S. Dist. LEXIS

16 48428, at *5-8 (E.D. Cal. May 28, 2009) ("*Sanchez I*").   Plaintiffs sought

17 reconsideration on the ground that the court failed to consider the inference of reliance

18 available to California plaintiffs under *Tobacco II*, but the court refused because

19 plaintiffs failed to offer any evidence that the representations at issue were "material."

20 "Plaintiff failed to proffer any record evidence that the 'objective, reasonable

21 consumer' would have considered the alleged misrepresentations or omission to be

22 material.   Plaintiff simply submitted her own, uncorroborated and ***unscientific***

23 declaration that no 'reasonable person' would have purchased the Stroller . . . ."

24 *Sanchez II*, 2009 U.S. Dist. LEXIS 89057, at *6 (emphasis added).  Like the plaintiff

25 in *Sanchez*, Plaintiffs have not come forward with any actual evidence that a

26 reasonable person would be affected by the immunity campaign.

27        **3.**     **Issues of Individual Reliance Will Predominate.**

28

Response Brief in Opposition to Motion for Class Certification

Because Plaintiffs are not entitled to an inference of reliance, individual issues of reliance will predominate in this litigation. *See, e.g., Sanchez I*, 2009 U.S. Dist. LEXIS 48428 at *5-8; *Gonzalez v. P&G Co.*, 247 F.R.D. 616, 624 (S.D. Cal. 2007) (collecting authorities demonstrating that individual issues of reliance preclude class certification); *see also Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 558 (W.D. Wash. 2008) (refusing to certify a class including all purchasers of computers certified as "Windows Vista Capable," because it was necessary to determine whether individual class members were actually deceived by Microsoft's advertising).

Because consumers possess a variety of experience and information, without a class-wide inference of reliance, an individualized inquiry into whether a particular member relied on the representations will be necessary. As the court explained in *Sanchez II*, "[t]here are innumerable variations in the experiences and information possessed by consumers [and] in the factors that influence consumers' purchasing decisions . . . ." 2009 U.S. Dist. LEXIS 48428 at *8. The same is true here where the evidence demonstrates that class members were largely unaffected by the immunity claims. Whether any particular consumer actually relied on the representations at issue is an individual question that will predominate this litigation.

## III.   **The Proposed Class Is Not Manageable.**

Another factor courts consider in determining whether certification under Rule 23(b)(3) is proper is "the likely difficulties in managing a class action." Here the proposed class action is not manageable because thousands of mini-trials will be necessary to determine which members are actually entitled to damages and the cost of these mini-trials will clearly outweigh the *de minimis* benefit to the class members.

### A.   **There Is Likely No Reliable Proof Of Damages Because Proposed Class Members Probably Did Not Retain Receipts for the Cereals.**

Plaintiffs' proposed class would include thousands of consumers, each of whom will be able to establish class membership only by proving that they actually

---

Response Brief in Opposition to Motion for Class Certification

18

1   purchased the Products and how many Products were purchased.  *See Six Mexican*
2   *Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1305 (9th Cir. 1990) (Rule 23
3   does not permit "dispensing with individual proof of damages.") (citing *In re Hotel*
4   *Tel. Charges,* 500 F.2d 86, 89-92 (9th Cir. 1974) ("Each member of the class seeking
5   recovery would then be required to prove that he patronized the hotel while the
6   surcharge was in effect and that he absorbed the cost of the surcharge.")); *Sikes v.*
7   *Teleline, Inc.,* 281 F.3d 1350, 1365 (11th Cir. 2002) ("Class treatment may not serve
8   to lesson the plaintiffs' burden of proof.")   Because individual Plaintiffs must still
9   establish their individual right to recover even after liability is established, class
10  certification is not appropriate. *Rodriguez,* 2002 U.S. Dist. LEXIS 10654 at *31-32
11  (denying class certification where individual proof of damages would require a full
12  blown trial for every class member); *O'Connor v. Boeing N. Am., Inc.,* 197 F.R.D.
13  404, 415 (C.D. Cal. 2000) ("[A] class action is improper where an individual class
14  member would be compelled to try numerous and substantial issues to establish his or
15  her right to recover individually, after liability to the class is established.").

16       Courts have denied class certification in large putative class actions where there
17  is no reliable and readily ascertainable proof of damages.   Most recently, in *Hodes,*
18  2009 U.S. Dist. LEXIS 72193 at *4, plaintiffs sought to certify a class of purchasers
19  of frozen waffles for claims under the UCL and FAL but the court denied certification
20  under the manageability prong of Rule 23(b)(3) because the proposed class was
21  extremely large and it would be difficult to determine who was actually in the class.

> The Court's decision is based on the fact that Plaintiffs have not alleviated
> the Court's concerns regarding the fourth factor of Rule 23(b)(3), the
> manageability of this class action. First, the sheer number of class members,
> which is in the "tens of thousands," causes the Court concern over managing
> the class.   Specifically, the Court has concerns about how Plaintiffs will
> identify each class member and prove which brand of Van's frozen waffles
> each member purchased, in what quantity, and for what purpose. ***The***
> ***likelihood that tens of thousands of class members saved their receipts as***

---

Response Brief in Opposition to Motion for Class Certification

**proof of their purchase of Van's waffles is very low.**

*Id.* at *11 (internal citations omitted) (emphasis added).

Similarly, in *In re PPA Products Liability Litigation*, 214 F.R.D. 614, 615 (W.D. Wash. 2003), the court rejected as not ascertainable a proposed class to include all purchases or products containing PPA before those products were withdrawn from the market. The court said that it was doubtful that class members had retained purchase records or would be able to recall when they purchased the product and noted that "[u]nlike cases involving substantial purchases for which proof of purchase would be readily available or prescription medication verifiable by medical and pharmacy records, the process of simply identifying who rightfully belongs within the proposed class would entail a host of mini-trials." *Id.* at 619. The court rejected the notion of relying on the memories of consumers because "the court finds itself equally, if not more, concerned with the vagaries of memory." *Id.* at 617.

Similarly, in *Philadelphia v. American Oil Co.*, 53 F.R.D. 45, 74 (D.N.J. 1971), the court rejected as unmanageable a proposed class of all individuals who purchased gasoline over a ten-year period from retail outlets in a three state area because class members likely would not have records of each purchase of gas. *Id.* The court found that "[i]t is hardly to be expected that such individual members of the motoring public would have records or other supporting indicia of their many purchases." *Id.*

In *In re Teflon Products Liability Litigation*, 254 F.R.D. 354, 357 (S.D. Iowa 2008), the court rejected a proposed class of all purchasers of DuPont Teflon products after the class could not produce evidence demonstrating proof of purchase, noting that "[t]he proposed representative's own testimony, coupled with the cookware itself, were the only evidence available to establish membership" in the class and "neither have been shown to be particularly reliable." *Id.* at 361. The court said (*id.* at 363):

> In other words, certifying a class with a weak definition creates more problems later in the proceeding. If the parties are unable to establish

---

membership in a particular sub-class in an objective fashion at the commencement of the litigation, it is highly unlikely that liability and/or damages can later be established without relying on lengthy, individualized inquiry.

The court in *Dumas v. Albers Med., Inc.*, No. 03-0640-CV-W-GAF, 2005 U.S. Dist. LEXIS 33482, at *1 (W.D. Mo. Sept. 7, 2005), also refused to certify a proposed class of all purchasers of counterfeit Lipitor because the only proof of purchase was the plaintiffs' own memories:

> [A]n individual must demonstrate that he or she purchased or paid part of the cost for counterfeit Lipitor that was distributed or sold by Albers. . . . At the very least, it would require individual class members to rely on their memories as to where and when the pills were purchased and perhaps what the bottle looked like . . . It is doubtful that potential class members would possess any type of physical proof of purchase.

*Id.* at *17-18. Without more reliable proof, the court held that "there simply is no way to accurately or readily identify the potential members of Dumas' proposed class." *Id.* at *20.

Recently, in *Grimes v. Rave Motion Pictures Birmingham, LLC*, 264 F.R.D. 659, 665 (N.D. Ala. 2010), the court refused to certify a class where it was doubtful that the plaintiffs had receipts of the transactions at issue, noting that "[w]ithout a receipt, no plaintiff would have proof of a claim . . . [s]uch a plaintiff by plaintiff examination would not only be a task beyond the court's logistical capacity, but would constitute a prohibited merits based analysis." *Id.*; *see also In re Hotel Tel. Charges*, 500 F.2d 86, 89-92 (9th Cir. 1974) ("Each member of the class seeking recovery would then be required to prove that he patronized the hotel while the surcharge was in effect and that he absorbed the cost of the surcharge."); *In re ConAgra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689, 700 (N.D. Ga. 2008) (plaintiffs must provide proof that they purchased peanut butter in litigation).

Unlike major purchases, where a consumer may be expected to keep records of

---

Response Brief in Opposition to Motion for Class Certification

1  the purchase, it is highly unlikely that members of the proposed class have retained

2  records of any purchases of Rice Krispies or Cocoa Krispies with the immunity claims

3  between June 1, 2009 and February 28, 2010.   The manageability problems are

4  particularly burdensome here because Plaintiffs' proposed class includes many

5  thousand potential members and each class member will have to prove not only that

6  she bought one of the products during the class period, but also that the version of the

7  packaging of the product purchased contained the immunity claims.   Thus, class

8  determination would require the Court to rely on the memories of class members to

9  determine whether and how much Product they purchased during the class period.  As

10 the courts recognized in *PPA*, *Teflon*, and *Dumas*, the memories of class members are

11 not a reliable source of proving damages and the lack of a more reliable source of

12 evidence makes the class unmanageable.

### B.    The Difficulties In Ascertaining And Managing An Enormous Class Without Reliable Proof Outweigh The Benefits Of A Class Action.

15       Further, the burden of thousands of mini-trials will outweigh the *de minimis*

16 benefit to the class.   Although Plaintiffs argue that their small individual damages

17 claim favors a class action, the opposite is true.   In fact, the "likelihood of small

18 individual awards cuts both ways: procedural requirements inherent in class litigation

19 may outweigh the efficiency of a class suit."   *Gartin v. S&M NuTec LLC*, 245 F.R.D.

20 429, 442 (C.D. Cal. 2007).   The leading class action commentator, cited by Plaintiffs

21 (at 15), has noted:

> Many courts and commentators have concluded that a class action is not manageable or superior when class members will receive no real benefit from a favorable judgment.   Illustrations where courts have found no class benefit included cases where any expected class recovery will be dissipated by the costs of administering the suit, including notice and attorneys' fees, or where evidentiary problems would probably preclude recovery by members from any common fund recovered.

---

1  Conte Newberg, NEWBERG ON CLASS ACTIONS 4th ed. § 4:36.  Both of the concerns

2  described by Newberg are present in this case: the Plaintiffs can only recover *de*

3  *minimis* damages through this litigation and there are enormous evidentiary problems

4  associated with establishing each class member's right to recover in the first place.[3]

5  For example, plaintiffs in *PPA* sought approximately $3.00 per product.  214

6  F.R.D. at 621.  The court found that this potential relief was insignificant in light of

7  the tremendous amount of resources the court would expend in conducting the

8  thousands of "mini-trials" that would be required since there was no readily available

9  indicia of proof of damages.  The court stated that it found "this minimal recovery -

10 when considered in relation to the enormous costs in time, effort, and burdens on the

11 court - argues against the superiority of class certification."  *Id.* (citing *In re Hotel*

12 *Tel. Charges.* 500 F.2d 86, 92 (9th Cir. 1974)).  *See also Leysoto v. Mama Mia I., Inc.*,

13 255 F.R.D. 693, 699 (S.D. Fla. 2009)(individual class recovery of less than $1.00

14 weighed against certification).

15 In *In re Hotel Telephone Charges*, class members stood to gain an average of

16 $2.20.  In light of the fact that each of the million class members would need to prove

17 that he patronized the hotels at issue, the Ninth Circuit found that the burden of

18 litigating proof of damages outweighed the benefit to plaintiff class, explaining that:

19
20     It cannot be lightly overlooked that as a class gets larger it may transform
       a litigation into a gigantic burden on the Court's resources beyond its
21     capacity to manage or effectively control. In light of the fact that the
       proposed class action is likely to consume decades of judicial time, the
22

23 [3] Although some courts have been able to get around this problem through "fluid
24 recovery" or "cy pres" distributions, these approaches have been soundly rejected in
   the Ninth Circuit.  *In re Hotel Telephone Charges*, 500 F.2d 86, 90 (9th Cir. 1974)
25 (holding that fluid recovery significantly alters substantive rights and is clearly
26 prohibited by the Rules Enabling Act).

27
28
─────────────────────────────────────────────
Response Brief in Opposition to Motion for Class Certification

1
2
3
4

potential benefit to the class should be carefully weighed against the burden the actions would place upon the federal courts. The average individual recovery in this case is estimated *to be only two dollars*. Even trebled, the amount of recovery would be entirely consumed by the costs of notice alone.

500 F.2d at 91 (internal citations omitted) (emphasis added).[4]

5
6
7
8
9
10
11
12

California courts have held similarly. *See, e.g., Caro*, 18 Cal App. 4th, at 657 ("[W]hen potential recovery to the individual is small and when substantial time and expense would be consumed in distribution, the purported class member is unlikely to receive any appreciable benefit."); *see also Blue Chip Stamps v. Superior Court*, 18 Cal. 3d 381, 386 (1976) (same); *Reyes v. San Diego County Board of Supervisors*, 196 Cal. App. 3d 1263, 1275 (Cal. App. Ct. 1987) (noting where administrative costs to identify of class members "is so substantial to render the likely appreciable benefits to the class *de minimis* in comparison, the class action should not be certified").

13
14
15
16
17
18
19

Plaintiffs here will have particular difficulty proving any damages whatsoever. Kellogg has already discontinued marketing the immunity benefits of its product. And every consumer who purchased Rice Krispies or Cocoa Krispies during the period between June 1, 2009 and February 28, 2010 received exactly what they paid for, a high quality, good-tasting cereal, and thus suffered no damage. In any event, any monetary relief available to Plaintiffs would be limited. Actual damages are not

20
21
22
23
24
25
26

---

[4] In *In re Hotel Telephone Charges,* the Ninth Circuit also found it significant that the only persons actually deriving any concrete benefit from the litigation were the plaintiffs' attorneys: "Whenever the principal, if not the only, beneficiaries to the class action are to be the attorneys for the plaintiffs and not the individual class members, a costly and time-consuming class action is hardly the superior method for resolving the dispute." *Id.*; *See Sanchez v. Wal Mart Stores, Inc.*, No. Civ. 2:06-CV-02573, 2009 U.S. Dist. LEXIS 48428, at *11 (E.D. Cal. May 28, 2009) (class action not superior method where only persons likely to benefit from a time-consuming class action are class counsel).

27
28

1  recoverable under the UCL or FAL.  *Colgan v. Leatherman Tool Group, Inc.*, 135

2  Cal. App. 4th 663, 675 (Cal. App. 2d Dist. 2006).  Under the CLRA, actual damages

3  are limited to the difference between the purchase price of a product and the market

4  value of a product.  Cal. Civ. Code § 3343; *Colgan*, 135 Cal. App. at 675.  Although

5  Plaintiffs could also be entitled to restitution under the UCL or FAL, the award must

6  be supported by "objective" evidence.  *Colgan*, 135 Cal. App. at 697.  Because the

7  purpose of restitution under the UCL and FAL is to make Plaintiffs whole, and

8  because the Plaintiffs did receive full or nearly full value from the products, restitution

9  would not result in a full refund of the purchase price.  *Colgan*, 135 Cal. App. at 675

10  (The "object of restitution is to restore the status quo . . . .").[5]  Instead, in this case,

11  each Plaintiff will only be able to recover a small fraction of the $3.08 that Plaintiffs

12  allege each product was sold for.

13      The tiny potential recovery is dwarfed by the massive time and resources that

14  will have to be expended conducting hundreds of thousands of "mini-trials" to

15  determine whether any Plaintiffs have proof of damages.  The costs of notice alone

16  will exceed any potential recovery.  In light of this cost-benefit analysis and the fact

17  that Kellogg agreed to stop marketing the immunity benefits several months ago, that

18  the only persons that will truly benefit from this litigation are Plaintiffs' attorneys.

19                              **CONCLUSION**

20      For all the foregoing reasons, Plaintiffs' motion should be denied.

21

22

23

24

_____

25  [5] The court also cannot order disgorgement of profits.  *Colgan*, 135 Cal. App. at 696-

26  97.

27

28

1   DATED: September 13, 2010        Respectfully Submitted,

2

3                                           /s/ Kenneth K. Lee

4                                    Kenneth K. Lee

5                                    JENNER & BLOCK LLP

6
                                     Brent Caslin (Cal. Bar No. 198682)
7                                    bcaslin@jenner.com
                                     Kenneth K. Lee (Cal. Bar No. 264296)
8                                    klee@jenner.com
                                     633 West 5th Street, Suite 3500
9                                    Los Angeles, California 90071
                                     Telephone: (213) 239-5100
10                                   Facsimile:  (213) 239-5199

11                                   Dean N. Panos (Admitted *pro hac vice*)
                                     dpanos@jenner.com
12                                   Richard P. Steinken (Admitted *pro hac vice*)
                                     rsteinken@jenner.com
13                                   353 N. Clark Street
                                     Chicago, IL 60635
14                                   Telephone: (312) 222-9350
                                     Facsimile:  (312) 527-0484

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Response Brief in Opposition to Motion for Class Certification