JENNER & BLOCK LLP
Brent Caslin (Cal. Bar No. 198682)
bcaslin@jenner.com
Kenneth K. Lee (Cal. Bar No. 264296)
klee@jenner.com
633 West 5th Street, Suite 3500
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile:  (213) 239-5199

JENNER & BLOCK LLP
Dean N. Panos (admitted *pro hac vice*)
dpanos@jenner.com
Richard P. Steinken (admitted *pro hac vice*)
rsteinken@jenner.com
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 222-9350
Facsimile:  (312) 527-0484

Attorneys for Defendants
Kellogg Company, Kellogg USA, Inc., Kellogg Sales Co.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE WEEKS and MARIA SANDOVAL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>KELLOGG COMPANY, a Delaware corporation; KELLOGG USA, INC., a Michigan corporation; KELLOGG SALES COMPANY, a Delaware corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | No. CV 09-08102 (MMM) (RZx)<br><br>**KELLOGG'S REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date: August 29, 2011<br>Hearing Time: 10:00 a.m.<br>Courtroom: 780<br>Judge: Hon. Margaret M. Morrow |

Defendants Kellogg Company, Kellogg USA, Inc. and Kellogg Sales Company (collectively "Kellogg"), by and through their attorneys, Jenner & Block LLP, hereby submit their Reply in Support of the Motion for Final Approval of Class Action Settlement.

## INTRODUCTION

After months of intense negotiations, the exchange of substantial discovery, the depositions of two named plaintiffs and three Kellogg representatives, and mediation involving former California Supreme Court Justice Edward A. Panelli, now of JAMS San Francisco, Kellogg and Class Counsel entered into the settlement set forth in the Stipulation of Settlement (Dkt. 121) which this Court preliminarily approved by Order dated May 9, 2011. Dkt. 126. Under the terms of that settlement, a non-revertible settlement fund of $2.5 million was established and funded ten days after the Court preliminarily approved the settlement, from which Class Members may recover $5 per box for up to three boxes of Rice Krispies and Cocoa Krispies cereals, up to a total of $15. To obtain the cash payment, Class Members need only submit a simple claim form with their name, address and number of boxes purchased, without the need to submit proof of purchase. After payment of the Class distributions, any Court-ordered Fee and Expense Award to Class Counsel, and the class representative incentive awards to named Plaintiffs, money remaining in the settlement fund will be paid, upon approval by the Court, in equal shares to the Food Safety, Health, and Nutrition Project of Public Justice, the Westside Food Bank, and the food safety program at the University of Georgia.

In addition, subject to Court approval pursuant to the *cy pres* doctrine, over the next year, Kellogg will also distribute Kellogg-branded cereals and other food products having a value of $2.5 million to charities that feed the indigent: the Westside Food Bank and Feeding America. Kellogg agreed to assume costs of transportation and other charges otherwise incurred by these charities for the receipt of this food, as well as all costs of Class Notice and claims administration. Kellogg also

agreed to institute changes to its advertising and marketing of Rice Krispies and Cocoa Krispies cereals.

Between this Court's preliminary approval of this settlement on May 9, 2011 and the objection/opt out deadline of July 30, 2011, Class Members had the opportunity to review the terms of the Stipulation of Settlement and joint motion for preliminary approval filed on January 10, 2011, and Plaintiffs' motion for final approval and application for attorneys' fees and expenses filed on July 18, 2011. The result has been more than 78,000 submitted claim forms, three opt outs from the Class, and two lone objections raising misguided and factually-incorrect arguments that attempt to minimize the substantial benefits Kellogg will bestow on the Class through this settlement. Given the real benefits provided to the Class by the settlement and the apparently overwhelming support for the settlement among Class Members, this Court should overrule the objections of both Nicholas John Stehle and Shaun J. Mathers, and grant final approval to the Settlement reached by the parties.

## ARGUMENT

The ultimate question to be determined in considering a request to approve a proposed class action settlement is whether the settlement is "fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.,* 327 F.3d 938, 959 (9th Cir. 2003); *see also* Fed. R. Civ. P. 23(e)(2). Here, the positive response of the Class Members reflects their collective assessment that the compromise settlement reached in this case is fair and reasonable to all parties, and that the nature of the relief is more than adequate given the nature of the claims. The Court's preliminary assessment of the settlement terms reached a similar conclusion. The Court noted that the proposed settlement "terms appear sufficient and fair, reasonable and adequate to warrant dissemination of notice" with "no obvious deficiencies" and were reached "in good faith, following arms-length negotiations" between counsel. Dkt. 126 at 3-4. Nothing raised in the two objections filed in this case justifies any different conclusion.

      The Objections filed by both Shaun Mathers and Nicholas John Stehle raise concerns about Kellogg's food donations and the two charitable organizations that will be the recipients of those donations: Westside Food Bank and Feeding America. Mathers complains that Westside Food Bank is a localized charitable organization that cannot distribute food to the entire settlement class, complains that the donation to Feeding America may simply supplant other Kellogg donations, and criticizes the fact that both Westside Food Bank and Feeding America have existing relationships with parties or their counsel.  Stehle contends that the designation of the local Westside Food Bank will result in overcompensation of class members in Los Angeles County, argues that the parties have failed to demonstrate a lack of conflict of interest with the *cy pres* recipients, suggests that the settlement permits the donation of junk food and poorly-selling brands, and criticizes the amount and valuation of the food donation. However, the criticisms provide no basis for withholding final approval of the class action settlement that this Court has already preliminarily approved.

      The complaint that Westside Food Bank is a localized charitable organization so that class members in Los Angeles County will be overcompensated is premised on the baseless assumption that the food donation will be equally apportioned between Westside Food Bank and Feeding America.  In fact, the Stipulation of Settlement (Dkt. 121 at 22-23) makes no attempt to allocate the food donation between the two recipients but instead expressly states that the distribution of food to the charities will be done subject to Court approval. Logic dictates that the parties, with Court guidance and approval, will allocate the bulk of the donated food to the national food bank making donations on a national level.

      The complaint that a conflict of interest may exist because Kellogg is listed as a "Leadership Partner" on the Feeding America website is entirely specious.  The website defines Leadership Partners as those entities who since July 1, 2005 "have made significant philanthropic investments, including aggregate contributions or

1  commitments of $10 million or more, donations of 100 million pounds or more of
2  food and grocery product to Feeding America, or combined gifts of funds, food and
3  grocery product at this level" and identifies among the Leadership Partners some of
4  the leading American food companies, including ConAgra Foods, General Mills,
5  Kellogg Company, Kraft Foods, Kroger and PepsiCo.  Kellogg's commitment to
6  philanthropic donations to Feeding America and its status as a Leadership Partner are
7  matters of long-standing, and will continue wholly apart from the settlement here.
8  While the designation of Feeding America as a *cy pres* beneficiary here does mean
9  that the food bank will receive well over another million dollars in food donations
10 from Kellogg, the notion that the designation is somehow detrimental to the class or
11 improperly beneficial to Kellogg is baseless.

12     Equally baseless is the concern expressed by Mathers that the donation here
13 might simply supplant donations that were already going to be made by Kellogg to
14 Feeding America.  This food donation was an intensely negotiated term of the
15 settlement relief and was recognized by the parties as an important vehicle by which
16 to provide value to the Class and the public at large in a case where individual Class
17 Members cannot realistically be identified.  The donation will be in addition to other
18 charitable donations that Kellogg has made and will make in 2011 and 2012.  Any
19 suggestion that Kellogg's charitable donation through the settlement here would have
20 been made anyway is simply wrong.

21     Both Mathers and Stehle complain that the value of the *cy pres* food donation is
22 inflated because the donated food is listed at retail value.  In fact, although the
23 Stipulation of Settlement states that the donated food products will have a total retail
24 value of $2.5 million, the donation here will be valued in the same manner as the food
25 donation in the Frosted Mini-Wheats case, *Dennis v Kellogg Company*, No. 09-01786-
26 IEG (WMC) (S.D. Cal.), where the donation was valued at Kellogg's sales prices to
27 its customers, not the retail price at which Kellogg's customers sell these products to
28

consumers. Using this valuation rather than retail value, the amount of food that will be donated to the Westside Food Bank and Feeding America will be considerably more than the 500,000 boxes of cereal that Mathers speculates about without support.

Mathers also criticizes as too low the reported value of the *cy pres* donation based on his comparison to other settlements, but his analysis is flawed. Mathers states that Kellogg settled claims with the Oregon Attorney General by donating 480,000 boxes of cereal which had a wholesale value of $1.15 million, or $2.40 per box, and that if the Oregon settlement as he described it was provided on a nationwide basis its value would exceed $40 million. In fact, Exhibit E to Mathers' Objections explains that in the Oregon settlement, Kellogg donated 108,000 boxes of cereal with a wholesale value of $332,000 to the Oregon Food Bank and another 372,000 boxes with a wholesale value of $1.15 million to Feeding America. Thus, Mathers' valuation of a nationwide settlement based on the Oregon settlement is overstated by at least two-thirds. Moreover, Mathers ignores the fact that the actual Oregon settlement also provided food donations on a nationwide basis, undermining his attempt to extrapolate using the numbers from that settlement.

Mathers also claims that the settlement here pales in comparison to what he describes as Kellogg's $12 million settlement of claims arising from the marketing of Frosted Mini-Wheats. However, the Mini-Wheats settlement in fact included a settlement fund of $2.75 million and a food donation of $5.5 million. Moreover, Mathers' attempt to compare the relative settlements of the two pieces of litigation based purely on the final settlement figures ignores the very different issues and litigation history of the two cases and is overly simplistic.

Finally, Stehle complains that the value of the settlement is inflated because Kellogg will be able to donate what he describes as junk food like Keebler Rainbow Chips Deluxe Cookies or Kellogg's Pop-Tarts Ice Cream Shoppe Hot Fudge Sundae toaster pastries. Kellogg's millions of dollars in food donations over the years

1 routinely include food items from all of its numerous product lines and the same
2 guidelines and procedures that facilitated those past donations will be employed in
3 making the donations under this settlement. Stehle offers no support for his
4 characterization of certain Kellogg products as junk food nor does he offer proof that
5 the Kellogg products he identifies would be any less valued or enjoyed by consumer
6 recipients than other products. In his attempt to defeat the parties' negotiated
7 settlement, his baseless attack on Kellogg food products is unavailing.

## CONCLUSION

For all the foregoing reasons, this Court should reject the Objections filed by Shaun Mathers and Nicholas John Stehle and grant Final Approval of the Class Action Settlement reached by the parties to this litigation.

DATED: August 15, 2011            Respectfully Submitted,


                                  /s/ Kenneth K. Lee

                                  Kenneth K. Lee

                                  JENNER & BLOCK LLP

                                  Brent Caslin (Cal. Bar No. 198682)
                                  bcaslin@jenner.com
                                  Kenneth K. Lee (Cal. Bar No. 264296)
                                  klee@jenner.com
                                  633 West 5th Street, Suite 3500
                                  Los Angeles, California 90071
                                  Telephone: (213) 239-5100
                                  Facsimile: (213) 239-5199

                                  Dean N. Panos (admitted *pro hac vice*)
                                  dpanos@jenner.com
                                  Richard P. Steinken (admitted *pro hac vice*)
                                  rsteinken@jenner.com
                                  353 N. Clark Street
                                  Chicago, IL 60654-3456
                                  Telephone: (312) 222-9350
                                  Facsimile: (312) 527-0484

# CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2011, I served Kellogg's Reply in Support of Motion for Final Approval of Class Action Settlement to the following via U.S. Mail:

Howard Weil Rubinstein
howardr@pdq.net
Howard W. Rubinstein Law Office
914 Waters Avenue Suite 20
PO Box 4839
Aspen, CO 81611

Joe R. Whatley, Jr
jwhatley@wdklaw.com
Whatley Drake Kallas
1540 Broadway 37th Floor
New York, NY 10036

Sara D. Avila
savila@maklawyers.com
Milstein Adelman LLP
2800 Donald Douglas Loop North
Santa Monica, CA 90405

Counsel for Michelle Weeks

Behram V. Parekh
bvp@kirtlandpackard.com
Heather Marie Peterson
hmp@kirtlandpackard.com
Kirtland and Packard
2361 Rosecrans Avenue 4th Floor
El Segundo, CA 90245

Counsel for Maria Sandoval

George Azadian
george@cttmesq.com
THE MATHEWS LAW GROUP
2596 Mission Street, Suite 204
San Marino, CA 91108

Daniel Greenberg
DnGrnbrg@gmail.com
GREENBERG LEGAL SERVICES
55 Fontenay Circle
Little Rock, AR 72223
501-588-4245

Counsel for Objector Nicholas Stehle

Shaun J. Mathers
shaunjm@hotmail.com
10 Mountain Oaks Park
La Crescenta, CA 91214

Objector *Pro se*

/s/ Kenneth K. Lee
Kenneth K. Lee

7

KELLOGG REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
(09-CV-08102)(MMM)(RZx)