GEORGE AZADIAN (SBN 253342)
Email: george@ctmesq.com
**THE MATHEWS LAW GROUP**
2596 Mission Street, Suite 204
San Marino, CA  91108
Voice: (626) 683-8291

DANIEL GREENBERG (*pro hac vice*)
Email: dngrnbrg@gmail.com
**CENTER FOR CLASS ACTION FAIRNESS LLC**
**GREENBERG LEGAL SERVICES**
55 Fontenay Circle
Little Rock, AR  72223
Voice: (501) 588-4245

(additional counsel on signature page)

*Attorneys for Class Member Nicholas John Stehle*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| MICHELLE WEEKS, *et al.*,<br>       *Plaintiffs,*<br><br>v.<br><br>KELLOGG COMPANY, *et al.*,<br>       *Defendants*.<br>───────────────<br>Nicholas John Stehle,<br>       *Objector*. | Case No. CV-09-08102 (MMM) (RZx)<br><br>**RESPONSE TO AMENDED AND SUPPLEMENTAL STIPULATION OF SETTLEMENT**<br><br>Judge:    Hon. Margaret M. Morrow<br><br>**CLASS ACTION** |

# INTRODUCTION

Objector Nicholas John Stehle thanks this Court for its Tentative Order Conditionally Denying Final Settlement Approval of August 29, 2011. Stehle's objection, the resulting tentative order from the Court, and the settling parties' Amended and Supplemental Stipulation of Settlement of September 9, 2011, have created a proposed settlement that is materially improved in numerous respects. Should the Court approve the newly proposed settlement, these material improvements will entitle Stehle to attorneys' fees; Stehle thus asks that the Court, should it approve the settlement, to defer the award of attorneys' fees until the parties can brief the issue. This brief outlines prospectively Stehle's request for fees in case class counsel agrees to avoid multiplying litigation by not challenging the request.

## I. Stehle Thanks This Court for Its Recognition of His Objection.

As a result of the objections and this Court's Tentative Order, the newly proposed settlement is superior in at least four different respects.

First, Stehle objected that the original settlement proposed to make the Westside Food Bank a *cy pres* beneficiary. As the Court agreed, "the Westside Food Bank serves a primarily local community and … directing *any* funds to the organization is inappropriate." Tentative Order, at 35 (emphasis in original). The newly proposed settlement eliminates the Westside Food Bank from the set of *cy pres* beneficiaries.

Second (and similarly), Stehle objected that a Public Justice program with nebulous goals was a contingent *cy pres* beneficiary. This Court upheld that objection by finding that the mission of the program was "unclear" (Tentative Order, at 38) has resulted in the elimination of that program as well from the settling parties' amended stipulation's set of *cy pres* beneficiaries.

Third, Stehle objected that food donations "having a total retail value of $2.5 million" could not realistically be valued as an expense to defendants of $2.5 million for purposes of settlement calculation. "In response to the objectors' arguments, the [settling]

parties state that Kellogg's charitable donation will be valued not at the retail price of the food products to consumers, but at the price Kellogg sells the food products to its wholesale customers." Tentative Order, at 39. Because "[u]se of this price will result in the donation of more food," *id.,* this new metric – as expressed in the settling parties' amended stipulation – significantly advances the ostensible goal of the settling parties.

Fourth, Stehle objected to class counsel's oversized attorneys' fee request. This court responded by adjusting the attorneys' fees downward by roughly one-third. This is "an appropriate discount in light of the fact that almost half of the settlement's value will not directly benefit class members." Tentative Order, at 56. The discount is (at least in part) driven by the fact that the *cy pres* portion of the settlement will "go *directly* to charitable organizations and bypass class members entirely." Tentative Order, at 51 (emphasis in original).

In short, Stehle thanks this Court for its recognition of the merits of his objection in its Tentative Order.

## II. The Knowlton Declaration Does Not Directly Address Stehle's Concern That The *Cy Pres* Benefits Might Be Illusory.

Both in briefing and at oral argument, objectors expressed concerns that the food-donation portion of the settlement might be illusory. In particular, objectors speculated that the food donations this settlement requires might not create any new gifts from Kellogg to the needy, but only shift pre-existing food donations from one food bank to another and therefore create no net increase in donations. (After all, Kellogg already makes annual food contributions north of $80 million retail value to Feeding America, a food bank Kellogg helped to create.[1]) In response to objectors, Defendants produced a declaration from Tim Knowlton, a Kellogg Company vice-president, stating that Kellogg "had no obligation, was not committed, and had no current plans to make the $2.5 million

---

[1] *See* http://www.bloomberg.com/apps/news?pid=newsarchive&sid=aBq8WbHmj1zk&refer=muse, available at http://is.gd/kellogg_foodbank.

food donation that is the subject of the settlement agreement in this case. As a result of the settlement, Kellogg will now specifically earmark this $2.5 million donation to be sent to Feeding America." Knowlton Declaration at 1.

Regrettably, this declaration fails to directly address the question of whether the "earmark" creates a new $2.5 million donation, or if in the alternative it is simply an accounting measure that transfers a planned donation of food from one future donee to another. An explicit affirmation from Kellogg to the effect that this $2.5 million food donation exists apart from, and will not be deducted from, any other existing or planned donations would have satisfied Stehle's concerns, but such an unambiguous statement is absent from the declaration. The resulting ambiguity might be an oversight in drafting with no ill intent, or it could be artful pleading that attempts to thread the needle. Because the Court is apparently already valuing this portion of the settlement at zero (Tentative Order, at 51), Stehle will not contest the issue, other than to reiterate the concern that his counsel expressed at the fairness hearing: namely, the agreement as presented is symptomatic of a fundamental problem with any class action settlement in which the parties present charitable donations to third parties by a defendant with an already-extensive charitable giving program as a benefit to the class. *See Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784-85 (7th Cir. 2004); Theodore H. Frank, "*Cy Pres* Settlements," *Class Action Watch* 1, 21-22 (Mar. 2008).

### III. Stehle's Attorneys Will Request an Award of Reasonable Fees, Costs, and a Class Representative Incentive at the Appropriate Time.

If the Court approves the settlement, Stehle will request an award of fees, costs, and a class representative incentive. A "litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This principle applies to objector's counsel and plaintiff's counsel alike. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051-52 (9th Cir. 2002).

Attorneys whose actions confer benefits upon class members are entitled to file a claim for reasonable compensation for the attorneys' efforts. *See Great Neck Capital Appreciation Inv. P'ship, L.P. v. PriceWaterhouseCoopers, L.L.P.,* 212 F.R.D. 400, 413 (E.D. Wis. 2002). When such a claim is presented, the court should consider whether the efforts of counsel for the objectors "improved the settlement, assisted the court, and/or enhanced the recovery in any discernible fashion." *Id.* (internal quotations omitted). In this case, Stehle and his counsel respectfully hope that this Court would concur that all three of these objectives were accomplished. Indeed, objectors' "lawyers who contribute materially to the proceeding" are entitled to fees, even if the court would have, *sua sponte,* made the same finding without objection. *Reynolds v. Beneficial Nat. Bank,* 288 F. 3d 277, 288 (7th Cir. 2002). Any other result would be unfair because objectors "must decide whether to object without knowing what objections may be moot because they have already occurred to the judge." *Id.*

Furthermore, Stehle has improved the *process* of the settlement. Class action settlements require a higher level of scrutiny than ordinary cases because there always exists a potential conflict of interest between the class and class counsel. *Thorogood v. Sears,* 627 F.3d 289, 293-94 (7th Cir. 2010) (citing long list of authority for this proposition), *vacated on other grounds*, *Thorogood v. Sears,* 2011 U.S. LEXIS 4939 (Jun. 27, 2011); *accord Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1026 (9th Cir. 1998); *Mars Steel v. Continental Ill. Nat. Bank and Trust*, 834 F.2d 677, 681-82 (7th Cir. 1987). Because the risk of collusive settlements is much greater in class actions than in ordinary litigation, it is "imperative" that a trial judge conduct a "careful inquiry" into the fairness of a proposed class settlement. *Mars Steel,* 834 F.2d at 682.

Objectors assist the settlement process by providing independent scrutiny of a proposed settlement. "Objectors serve as a highly useful vehicle for class members, for the court and for the public generally" in evaluating the terms of a proposed settlement to ensure that it is fair, adequate, and reasonable. *Great Neck,* 212 F.R.D. at 412. Objectors improve the process by reintroducing adversarial criticism at the fairness-hearing stage –

the point at which the adversarial relationship between the parties has ended. This adversarial dynamic helps the trial court ensure that the proposed settlement meets the standards of Fed. R. Civ. P. 23. *See In re General Motors Corp. Pick-Up Truck Fuel Tank Litig.,* 55 F. 3d 768, 803 (3d. Cir. 1995) ("where there is an absence of objectors, courts lack the independently derived information about the merits to oppose proposed settlements").

**IV.   Objector's Counsel's Future Request for Fees Will Be Well Within What Precedent Permits.**

At the appropriate time (under L.R. 54, shortly after this court's final approval of the settlement), Stehle's counsel (the Center for Class Action Fairness) will move for an award of reasonable fees, costs, and a class representative incentive – unless, of course, this Court directs Stehle to make this motion sooner, later, or not at all. (Because L.R. 54 generally requires parties to defer any request for attorneys' fees until after entry of the court's final order unless the court orders otherwise, this Court may wish to avoid final decisions that involve all or attorneys' fees until the parties are permitted to enter briefs on this issue. Should this Court instead adhere to L.R. 54's default schedule, it will thereby have made a decision to award fees to the plaintiffs, but it will be difficult or impossible for this Court to carry out Stehle's requested recommendation, which is to transfer a small fraction of those fees to Stehle and his counsel.) That is, Stehle's counsel intends, when appropriate, to submit a fee award request that will be sharply lower than the compensation it is entitled to by conventional standards.

Objectors are entitled to fees in the event that they cause the settlement to be modified so as to increase compensation to the class. *Vizcaino*, 290 F.3d 1043 at 1051-52. This Court's Tentative Order, and the newly proposed settlement, redirects additional cash to the class: namely, $443,906.64. This modification, when added to the fund that is the basis of the Tentative Order's percentage-of-the-fund calculations (the sum of $2.5 million in cash payable to class members and $431,791 in notice and administration fees;

see Tentative Order, at 55-56), constitutes an increase in the total value of the settlement of just over 15.14%. Because Stehle's objection is responsible for just over 15.14% of class recovery, Stehle is entitled, as a matter of law, to just over 15.14% of the $879,237 that the settling parties more recently stipulated would be awarded to class counsel, or $133,126.52. *E.g., In re Prudential Ins. Co. of Am.,* 273 F. Supp. 2d 563, 572 (D.N.J. 2003), *aff'd* 103 Fed. Appx. 695, 697 (3rd Cir. 2004) (awarding objector 1.4% of class counsel's fee award for objection that was responsible for 1.4% of class recovery); *Larson v. Sprint Nextel Corp.,* 2010 WL 234934 at *28 (D.N.J. Jan 15, 2010) (awarding objectors' attorneys 4.4% of attorneys' fee award for providing 4.4% of total class benefit). *See also Lan v. Ludrof,* 2008 WL 763763 at *28 (W.D. Pa. Mar 21, 2008) (awarding objector 25% of the increase in the benefit to the class).

However, Stehle's counsel will not request the $133,126.52 that it is entitled to as a matter of law. Rather, his counsel will only request one-quarter of that amount, or $33,281.63, even though it is entitled to request four times that figure under the traditional percentage-of-the-fund approach. For the purposes of a lodestar cross-check (*see, e.g., In re Bluetooth Headset Prods. Liab. Litig.,* No. 09-56683, 2011 U.S. App. LEXIS 17224, at *22-*23 (9th Cir. Aug. 19, 2011)), this figure of $33,281.63 will be significantly less than two-thirds of counsel's lodestar. In short, Stehle's counsel intends to submit a fee request that is a fraction of the relevant percentage-of-the-fund or lodestar calculations.

As this Court noted, the $2.5 million in *cy pres* donations has some value, but it is "value that will never be available to members of the class." Tentative Order, at 53. Although Stehle's counsel appreciates this Court's finding that the settling parties increased the value of its *cy pres* donations "[i]n response to the objectors' arguments," there is some possibility that this change in settlement terms has a value *to the class* of zero. Stehle's counsel therefore has not based its request for attorneys' fees on this change in settlement terms.

This calculation of Stehle's attorneys' future fee request contains several additional assumptions. It assumes that Stehle's request for fees will include within the $33,281.63

approximately $600 of expenses reflecting costs of mailing and counsel's travel to Los Angeles. It assumes an additional incentive award of $700 to Nicholas Stehle (*Lonardo v. Travelers Indem. Co.,* 706 F. Supp. 2d 766, 816-17 (N.D. Ohio 2010)), which is less than one-seventh of the award that each of the three class representatives request. (A larger incentive award to the other objector, who appeared at the fairness hearing *pro se*, would also be appropriate.) It assumes that the payments to Stehle and his counsel, which will sum to less than $34,000, will come from the approximately $879,000 plaintiffs' fee award that the Tentative Order, at 55, finds reasonable. *See In re Prudential Ins. Co. of Am.,* 273 F. Supp. 2d 563, 572 (D.N.J. 2003), *aff'd* 103 Fed. Appx. 695, 697 (3rd Cir. 2004) (awarding objector's attorneys' fees out of class counsel's fee award); *Lonardo v. Travelers Indem. Co.,* 706 F. Supp. 2d 766, 816-17 (N.D. Ohio 2010) (same); *Duhaime v. John Hancock Mut. Life Ins. Co.* 2 F. Supp 2d 175, 176 (D. Mass. 1998) (same). Perhaps most importantly, it assumes that the settling parties do not unreasonably multiply future litigation (or, to paraphrase the remarks of one of the settling parties at the fairness hearing, "kill any more trees") in this action.

## CONCLUSION

Stehle thanks this Court for its Tentative Order recognizing the merits of his objection, which paved the way to material improvement of this settlement. Stehle commends the settling parties for their adoption of the Tentative Order's principles. The resulting settlement is still imperfect (Stehle continues to contend that it is inappropriate to award attorneys' fees for notice expenses, and that the 25% Ninth Circuit benchmark is more appropriate than a 30% award), but, under the circumstances of this case, it is within a reasonable range that permits the Court to find it fair, reasonable, and adequate. Stehle asks this Court to permit, at the appropriate point, the entry of a motion for his attorneys' fees, costs, and an incentive award that is consistent with the scheduling required by L.R. 54.

Dated: September 19, 2011

                Respectfully submitted,

*/s/ Daniel Greenberg*
Daniel Greenberg (*pro hac vice*)
**GREENBERG LEGAL SERVICES**
**CENTER FOR CLASS ACTION FAIRNESS LLC**
55 Fontenay Circle
Little Rock, AR 72223
DnGrnbrg@gmail.com
(501) 588-4245

*/s/ George Azadian*
George Azadian (SBN 253342)
**THE MATHEWS LAW GROUP**
2596 Mission Street, Suite 204
San Marino, CA 91108
George@ctmesq.com
(626) 683-8291

*/s/ Theodore H. Frank*
Theodore H. Frank (SBN 196332)
**CENTER FOR CLASS ACTION FAIRNESS LLC**
1718 M Street NW, No. 236
Washington, DC 20036
tedfrank@gmail.com
(703) 203-3848

Attorneys for Nicholas Stehle

Case No. CV-09-08102 (MMM) (RZx)    8
RESPONSE TO AMENDED AND SUPPLEMENTAL STIPULATION OF SETTLEMENT

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I filed (or caused co-counsel to file) the foregoing with the Clerk of the Court, and served true and correct copies upon class counsel and defendants' counsel via Federal Express at the addresses below, per the instructions of the Settlement Notice.

Clerk of Court
United States District Court
Central District of California
Roybal Federal Building
255 East Temple Street
Los Angeles, CA  90012

Gillian L. Wade
Sara D. Avila
Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, CA  90405

Dean N. Panos
Richard P. Steinken
Jenner & Block LLP
353 N. Clark Street
Chicago, IL  60654-3456

DATED this 19th day of September, 2011.

                *(s) Daniel Greenberg*
                Daniel Greenberg