# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF DOCUMENT DISCREPANCIES

FILED
CLERK, U.S. DISTRICT COURT

JUL 26 2011

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

To: ☒ U.S. District Judge / ☐ U.S. Magistrate Judge __Morrow__

From: __C. Powers__, Deputy Clerk       Date Received: __7/25/11__

Case No.: __CV09-8102__   Case Title: __Weeks et al v. Kellog Company__

Document Entitled: __(1) Objection To Proposed Settlement (2) Notice of Intent To Appear (3) Decl. Of Nicholas John Stehle (4) Decl. of Theodore H. Frank__

Upon the submission of the attached document(s), it was noted that the following discrepancies exist:

☐ Local Rule 11-3.1    Document not legible
☐ Local Rule 11-3.8    Lacking name, address, phone, facsimile numbers and email address
☒ Local Rule 11-4.1    No copy provided for judge
☐ Local Rule 19-1      Complaint/Petition includes more than ten (10) Does or fictitiously named parties
☐ Local Rule 15-1      Proposed amended pleading not under separate cover
☐ Local Rule 11-6      Memorandum/brief exceeds 25 pages
☐ Local Rule 11-8      Memorandum/brief exceeding 10 pages shall contain table of contents
☐ Local Rule 7.1-1     No Certification of Interested Parties and/or no copies
☐ Local Rule 6.1       Written notice of motion lacking or timeliness of notice incorrect
☐ Local Rule 56-1      Statement of uncontroverted facts and/or proposed judgment lacking
☐ Local Rule 56-2      Statement of genuine disputes of material fact lacking
☐ Local Rule 7-19.1    Notice to other parties of ex parte application lacking
☐ Local Rule 16-7      Pretrial conference order not signed by all counsel
☐ FRCvP Rule 5(d)      No proof of service attached to document(s)
☐ General Order 08-02  Case is designated for electronic filing
☒ Other: __Documents previously accepted and filed with the Court.__

**Note: Please refer to the court's Internet website at www.cacd.uscourts.gov for local rules and applicable forms.**

═══════════════════════════════════════════

### ORDER OF THE JUDGE/MAGISTRATE JUDGE

IT IS HEREBY ORDERED:

☐ The document is to be filed and processed. The filing date is ORDERED to be the date the document was stamped "received but not filed" with the Clerk. Counsel* is advised that any further failure to comply with the Local Rules may lead to penalties pursuant to Local Rule 83-7.

_____        _____
Date                          U.S. District Judge / U.S. Magistrate Judge

☒ The document is **NOT** to be filed, but instead **REJECTED**, and is ORDERED returned to counsel.* Counsel* shall immediately notify, in writing, all parties previously served with the attached documents that said documents have **not** been filed with the Court.

__7/26/2011__        __Margaret M. Morrow__
Date                          U.S. District Judge / ~~U.S. Magistrate Judge~~

* The term "counsel" as used herein also includes any pro se party. See Local Rule 1-3.

**COPY 1 -ORIGINAL-OFFICE      COPY 2 -JUDGE      COPY 3 -SIGNED & RETURNED TO FILER      COPY 4 -FILER RECEIPT**

G20 U.S. GOVERNMENT PRINTING OFFICE: 2011-771-111

1  GEORGE AZADIAN (SBN
2  Email: george@ctmesq.com
   **THE MATHEWS LAW GROUP**
3  2596 Mission Street, Suite 204
4  San Marino, CA  91108
   Voice: (626) 683-8291
5
6  DANIEL GREENBERG (AR BAR 2007-193)
7  Email: dngrnbrg@gmail.com
   **CENTER FOR CLASS ACTION FAIRNESS LLC**
8  **GREENBERG LEGAL SERVICES**
   55 Fontenay Circle
9  Little Rock, AR  72223
10  Voice: (501) 588-4245
    *Pro hac vice* request pending
11
12  (additional counsel on signature page)
13
14          **UNITED STATES DISTRICT COURT**
15          **CENTRAL DISTRICT OF CALIFORNIA,**
16
17  MICHELLE WEEKS and MARIA          | Case No. CV-09-08102 (MMM) (RZx)
    SANDOVAL, individually and on behalf of
18  all others similarly situated,            **NOTICE OF INTENT TO APPEAR**
19       *Plaintiffs,*
                                        Judge:     Hon. Margaret M. Morrow
20  v.                                  Date:      August 29, 2011
                                        Time:      10:00 a.m.
21                                      Courtroom: 780
22  KELLOGG COMPANY; KELLOGG USA,
    INC., KELLOGG SALES COMPANY, and    **CLASS ACTION**
23  DOES 1 through 100, inclusive
              *Defendants.*
24
25
26  Nicholas John Stehle,
27       *Objector.*
28

RECEIVED AND RETURNED
CLERK U.S. DISTRICT COURT

JUL 2 6 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

RECEIVED
BUT
NOT FILED

JUL 2 5 2011

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

1

2    Let this filing serve as notice that attorneys George Azadian, Daniel Greenberg, and

3    Theodore H. Frank respectfully request to appear and be heard at the August 29, 2011

4    fairness hearing on behalf of objector Nicholas John Stehle. The attorneys have filed an

5    objection brief on behalf of Stehle concurrently with this request.

6

7    In the event that any witnesses testify at the hearing in support of settlement

8    approval, Stehle respectfully requests the Court's permission to cross-examine those

9    witnesses.

10

11   Dated: July 22, 2011

12                              Respectfully submitted,

13                              /s/ Daniel Greenberg

14                              Daniel Greenberg (pro hac vice pending)

15                              **GREENBERG LEGAL SERVICES**
                                **CENTER FOR CLASS ACTION FAIRNESS LLC**

16                              55 Fontenay Circle
                                Little Rock, AR  72223

17

18                              DnGrnbrg@gmail.com

19                              (501) 588-4245

20                              /s/ George Azadian

21                              George Azadian (SBN 253342)

22                              **THE MATHEWS LAW GROUP**
                                2596 Mission Street, Suite 204

23                              San Marino, CA  91108

24                              George@ctmesq.com

25                              (626) 683-8291

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Theodore H. Frank*
Theodore H. Frank (SBN 196332)
**CENTER FOR CLASS ACTION FAIRNESS LLC**
1718 M Street NW, No. 236
Washington, DC 20036
tedfrank@gmail.com
(703) 203-3848

Attorneys for Nicholas Stehle

GEORGE AZADIAN (SBN 253342)
    Email: george@ctmesq.com
**THE MATHEWS LAW GROUP**
2596 Mission Street, Suite 204
San Marino, CA 91108
Voice: (626) 683-8291

DANIEL GREENBERG (AR BAR 2007-193)
    Email: dngrnbrg@gmail.com
**CENTER FOR CLASS ACTION FAIRNESS LLC**
**GREENBERG LEGAL SERVICES**
55 Fontenay Circle
Little Rock, AR 72223
Voice: (501) 588-4245
*Pro hac vice* request pending

RECEIVED AND RETURNED
CLERK U.S. DISTRICT COURT

JUL 26 2011

CENTRAL DISTRICT OF CALIFORNIA
BY_____DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE WEEKS and MARIA SANDOVAL, individually and on behalf of all others similarly situated,<br><br>   *Plaintiffs,*<br><br>v.<br><br>KELLOGG COMPANY; KELLOGG USA, INC., KELLOGG SALES COMPANY, and DOES 1 through 100, inclusive<br><br>   *Defendants.*<br><br>_____<br><br>Nicholas John Stehle,<br>   *Objector.* | Case No. CV-09-08102 (MMM) (RZx)<br><br>**DECLARATION OF NICHOLAS JOHN STEHLE**<br><br>Judge:   Hon. Margaret M. Morrow<br>Date:    August 29, 2011<br>Time:    10:00 a.m.<br>Courtroom: 780<br><br>**CLASS ACTION** |



RECEIVED
BUT
NOT FILED

JUL 25 2011

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____DEPUTY

I, Nicholas John Stehle, under penalty of perjury, declare as follows:

1. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2. My mailing address is 2201 Cherry Crossing, Benton, AR  72015. My phone number is (501) 539-0275.

3. I am a class member in this action. I am not employed by any party to this case or by any of the law firms in this case.

4. Between June 1, 2009 and March 1, 2010, I was a regular purchaser of both Rice Krispies and Cocoa Krispies cereal. Because of the special dietary needs of a member of my family, we bought both Rice Krispies and Cocoa Krispies regularly during that period.

5. With the exception of the instant case (the Rice Krispies/Cocoa Krispies settlement), I have never objected to any class action settlement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _July 20, 2011_, in _Benton, Arkansas_ by _Nicholas John Stehle_
               (date)            (place)                  Nicholas John Stehle

GEORGE AZADIAN (SBN 253342)
Email: george@ctmesq.com
**THE MATHEWS LAW GROUP**
2596 Mission Street, Suite 204
San Marino, CA 91108
Voice: (626) 683-8291

DANIEL GREENBERG (*pro hac vice* pending)
Email: dngrnbrg@gmail.com
**CENTER FOR CLASS ACTION FAIRNESS LLC**
**GREENBERG LEGAL SERVICES**
55 Fontenay Circle
Little Rock, AR 72223
Voice: (501) 588-4245

THEODORE H. FRANK (SBN 196332)
Email: tedfrank@gmail.com
**CENTER FOR CLASS ACTION FAIRNESS LLC**
1718 M Street NW, No. 236
Washington, DC 20036
Voice: (703) 203-3848

RECEIVED AND RETURNED
CLERK U.S. DISTRICT COURT

JUL 2 6 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

RECEIVED
BUT
NOT FILED

JUL 2 5 2011

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA,

| | |
|---|---|
| MICHELLE WEEKS, *et al.*,<br>          *Plaintiffs*,<br><br>v.<br><br>KELLOGG COMPANY, *et al.*,<br>          *Defendants*.<br><br>Nicholas John Stehle,<br>          *Objector*. | Case No. CV-09-08102 (MMM) (RZx)<br><br>**DECLARATION OF THEODORE H. FRANK IN SUPPORT OF OBJECTION OF NICHOLAS STEHLE**<br><br>Judge:      Hon. Margaret M. Morrow<br>Date:       August 29, 2011<br>Time:       10:00 a.m.<br>Courtroom: 780<br><br>**CLASS ACTION** |

I, Theodore H. Frank, declare as follows:

1.     I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.     I am an attorney at law duly licensed to practice in the State of California. I am the founder of the non-profit Center for Class Action Fairness LLC ("the Center"), which represents Mr. Stehle *pro bono* in this matter. The goal of the Center is to protect class members in the class action settlement process, and it has won millions of dollars for class members.

3.     Pursuant to Paragraph 14 of the Court's Preliminary Approval Order, I attach this list of "any other objections submitted by... the objector's counsel to any class actions pending in any court in the United States, state or federal, in the previous (5) years."

4.     I note, however, that this requirement violates the Federal Rules of Civil Procedure. Fed. R. Civ. Proc. 23(e)(5) permits any class member to object, and does not permit additional burdens on objecting. A class member who wishes to object to a class action settlement is entitled to select counsel experienced in the law of class action settlements.

5.     The Center does not object indiscriminately. It evaluates many more settlements than it objects to, and regularly rejects inquiries where it does not feel it has a good chance of establishing precedent useful to class members. Because of this, it has an excellent track record of success, winning millions of dollars for class members.

6.     While many "professional objectors" are accused of bringing bad-faith objections solely to extract extortionate settlements from class counsel, this is not the business model of the Center for Class Action Fairness. The Center has never agreed to a *quid pro quo* settlement of an objection, and asks its clients to confirm that they are objecting for the benefit of the class as a whole. But if this Court has any question whether the Center is bringing this objection in good faith, the Center and Mr. Stehle are

DECLARATION OF THEODORE H. FRANK IN SUPPORT OF OBJECTION OF NICHOLAS STEHLE

willing to stipulate to an injunction prohibiting the Center from settling this objection in exchange for a cash payment.

7.     Below is a list of cases where either I or clients represented by the Center objected. Each of these representations was *pro bono*; except in the two cases where it is indicated that the district court awarded attorneys' fees, the Center did not request or receive compensation.

## Successful and Partially Successful Objections

8.     In 2008, before I founded the Center, I objected to the settlement in *In re Grand Theft Auto Video Game Consumer Litigation*, Case No. 1:06-md-1739 (SWK) (S.D. N.Y.) because, *inter alia*, the requested attorney fees were $1 million dollars while absent class members were to receive less than $27,000, and because the class representatives did not adequately represent a subclass of plaintiffs who were not eligible for relief. The trial court decertified the class. The success of that objection led to many inquiries from class members interested in objecting to class action settlements, and inspired me to start the Center.

9.     In 2009 the Center, through attorney Theodore H. Frank, represented two class members objecting to the settlement *In re TD Ameritrade Account Holder Litigation*, Case No. C 07-2852 VRW (N.D. Cal.) because, *inter alia*, the requested attorney fees were almost $2 million and the class was to receive only vouchers. The trial court rejected the settlement and the settlement was renegotiated to yield a $2.5 million common fund for the class.

10.     In 2009 the Center, through attorneys Theodore H. Frank and M. Frank Bednarz, represented a class member objecting to the settlement in *True v. American Honda Motor Co.*, Case No. 07-cv-00287 VAP (OPx) (C.D. Cal.) because, *inter alia*, the requested attorneys' fees were nearly $3 million and the class was to receive merely coupons. The court sustained the objection and rejected the settlement.

11.     In 2010 the Center, through attorney Theodore H. Frank, represented a class member objecting to the settlement in *Lonardo v. Travelers Indemnity*, Case No. 06-cv-

0962 (N.D. Ohio) because, *inter alia*, the attorneys were to ask for $6.6 million and the class would only receive $2.8 million. In response to the objection, the parties agreed to modify the settlement to transfer $2 million from the fee request to the class. The court approved the modified settlement and awarded the Center attorneys' fees.

12.   In 2010 the Center, through attorney Theodore H. Frank, represented two class members objecting to the settlement in *In re Motor Fuel Temperature Sales Practices Litigation*, Case No. 07-MD-1840-KHV (D. Kan.) because, *inter alia*, the requested attorney fees were $10 million and the class was to receive $0. The court rejected the settlement; the settlement was renegotiated in minor ways and the Center has renewed their objection. Preliminary approval of the new settlement is pending.

13.   In 2010 the Center, through attorney Theodore H. Frank, represented four class members objecting to the settlement in *Dewey v. Volkswagen*, Case No. 07-2249(FSH) (D. N.J.) because, *inter alia*, the requested attorneys' fees were $22.5 million and the settlement fund was $8 million, and because a subclass was not entitled to relief from the settlement fund. The magistrate judge approved the settlement but reduced the fee request to $9.2 million. Both the Center and the settling parties appealed, and the case is pending in the Third Circuit.

14.   In 2010 the Center, through attorney Theodore H. Frank, represented a class member objecting to the settlement in *In re Apple Inc. Securities Litig.*, Case No. C-06-5208-JF (N.D. Cal.) because there was an unnecessary $2.5 million *cy pres* component. The parties agreed to modify the settlement to include the $2.5 million in the settlement fund. The Center sought and was awarded attorneys' fees.

15.   In 2010 the Center, through attorney Theodore H. Frank, represented a class member objecting to the settlement in *In re Classmates.com Consolidated Litigation*, Case No. 09-cv-0045-RAJ (W.D. Wash.) because, *inter alia*, the requested attorneys' fees were over $1 million and the class was to receive approximately $117,000. The court upheld the objection. The parties have negotiated and submitted a revised settlement to provide

DECLARATION OF THEODORE H. FRANK IN SUPPORT OF OBJECTION OF NICHOLAS STEHLE

the class with $2.5 million. The Center will object to the fee request, and is likely to request attorneys' fees for its role in winning millions of dollars for the class.

16.    In 2010 the Center, through attorney Theodore H. Frank, represented two class members objecting to the settlement in *In re HP Inkjet Printer Litigation*, Case No. 05-cv-3580 (N.D. Cal.) because, *inter alia*, the attorneys were requesting $2.9 million and the class was to receive near valueless coupons. The trial court approved the settlement, but agreed with the Center that class counsel was not entitled to its full fee request and reduced the attorney recovery to $2.1 million. The Center has appealed and that appeal is now pending in the Ninth Circuit.

17.    In 2011 the Center, through attorney Daniel Greenberg, represented a class member objecting to the settlement in *In re New Motor Vehicles Canadian Export Antitrust Litigation*, Case No. MDL 03-1532 (D. Me.) because, *inter alia*, there was a needless diversion of $500,000 in *cy pres* to an unrelated third party and because the attorney-fee request was too high. The trial judge upheld the objection to the *cy pres* request and is still considering whether to approve the settlement.

18.    In 2011 the Center, through attorney Daniel Greenberg, represented two class members objecting to the settlement in *Sobel v. Hertz Corp.*, Case No. 06-cv-545 (D. Nev.) because, *inter alia*, the requested attorneys' fees were $1.5 million and the class was to receive only coupons. The court upheld the objection and rejected the settlement.

19.    In 2011 the Center, through attorney Theodore H. Frank, represented a class member objecting to the settlement in *Cobell v. Salazar*, Case No. 1:96-cv-1285 (TFH) (D. D.C.) because, *inter alia*, the proposed settlement class was not sufficiently cohesive to comport with due process and because of an excessive request for attorneys' fees. The court has orally announced that it will approve the settlement but reduce the fee request from $224 million to $99 million. As of yet there is no written opinion or final judgment from the court.

20.    In 2011 Daniel Greenberg objected to the settlement in *Stetson v. West Publishing*, Case No. CV-08-00810-R (C.D. Cal.) because, *inter alia*, the requested

attorneys' fees were greater than $1.8 million and the class was to receive coupons that would be worthless to them. The court issued an oral ruling rejecting the settlement. As of yet there is no written opinion from the court.

### Unsuccessful Objections

21.     In 2009 the Center, through attorney Theodore H. Frank, represented two class members objecting to the settlement in *In re Yahoo! Litigation,* Case No 06-cv-2737 CAS (FMOx) (C.D. Cal.) because, *inter alia*, the requested attorney fees were $4.1 million and the class was to receive $0. The trial court approved the settlement. The objectors chose not to prosecute an appeal. The Center withdrew from representation and received no compensation.

22.     In 2010 Theodore H. Frank objected to the settlement in *Ercoline v. Unilever*, Case No. 10-cv-1747 (D. N.J.) because, *inter alia*, the requested attorneys' fees were $200,000 and the class was to receive $0 and meaningless injunctive relief. The court approved the settlement. Frank did not appeal; another objector did.

### Other Pending Objections

23.     In 2009 the Center, through attorney Theodore H. Frank, represented seven class members objecting to the settlement in *In re Bluetooth Headset Products Liability Litigation*, Case No. 2:07-ML-1822-DSF-E (C.D. Cal.) because, *inter alia*, the requested attorneys' fees were $850,000 and the class was to receive $0. The trial court approved the settlement. The objectors appealed and the case is currently under submission in the Ninth Circuit.

24.     In 2009 the Center, through attorney Theodore H. Frank, represented a class member objecting to the settlement in *Fairchild v. AOL*, Case No. 09-cv-03568 CAS (PLAx) (C.D. Cal.) because, *inter alia*, the *cy pres* in the settlement violated the law. The trial court approved the settlement. The objector appealed and the case is under submission in the Ninth Circuit.

25.     In 2010 the Center, through attorney Theodore H. Frank, represented a class member objecting to the settlement in *Bachman v. A.G. Edwards*, Cause No: 22052-

01266-03 (Mo. Cir. Ct.) because, *inter alia*, the requested attorneys' fees were $21 million and the class was to receive $4 million and coupons. The trial court approved the settlement. The objector appealed and the Court of Appeals affirmed. The objector's motion to transfer to the Missouri Supreme Court will be filed later this month.

26.    In 2010 Theodore H. Frank objected to the Rule 23.1 settlement in *Robert F. Booth Trust v. Crowley,* Case No. 09-cv-5314 (N.D. Ill.) because, *inter alia*, the requested attorneys' fees were $930,000 and the shareholders were to receive $0. Frank's motion to intervene was denied, and he appealed that decision to the Seventh Circuit. The case is pending in both the district and appeals courts.

27.    In 2011 Theodore H. Frank objected to the settlement in *In re HP Laserjet Printer Litigation,* Case No. 8:07-cv-00667-AG-RNB (C.D. Cal) because, *inter alia*, the requested attorneys' fees were approximately $2.6 million and the class was to receive near valueless coupons. The fairness hearing has occurred and the case is still pending in the district court.

28.    In 2011 the Center, through attorney Daniel Greenberg, represented a class member objecting to the settlement in *McDonough v. Toys "R" Us,* Case No. 2:06-cv-00242-AB (E.D. Pa.) because, *inter alia*, the requested attorneys' fees were excessive and the settlement involved impermissible *cy pres*. The fairness hearing has occurred and the case is pending before the district court.

29.    In 2011 the Center, through attorney Theodore H. Frank, represented a class member objecting to the settlement in *Trombley v. National City Bank,* Case No. 10-cv-232 (JDB) (D.D.C.) because, *inter alia*, the attorney-fee request was excessive. The fairness hearing has occurred and the case is pending before the district court.

30.    In 2011 the Center, through attorney Theodore H. Frank, represented a class member objecting to the settlement in *Blessing v. Sirius XM,* Case No. 09-cv-10035 (S.D.N.Y.) because, *inter alia*, the attorneys were requesting $13 million while the class would receive valueless injunctive relief. The fairness hearing is scheduled for August 8, 2011.

1      I declare under penalty of perjury under the laws of the United States of America

2  that the foregoing is true and correct.

3      Executed on July 19, 2011, in Arlington, Virginia.

4

5                                   */s/ Theodore H. Frank*

                                    Theodore H. Frank

GEORGE AZADIAN (SBN 253342)
Email: george@ctmesq.com
**THE MATHEWS LAW GROUP**
2596 Mission Street, Suite 204
San Marino, CA  91108
Voice: (626) 683-8291

DANIEL GREENBERG (*pro hac vice* pending)
Email: dngrnbrg@gmail.com
**CENTER FOR CLASS ACTION FAIRNESS LLC**
**GREENBERG LEGAL SERVICES**
55 Fontenay Circle
Little Rock, AR  72223
Voice: (501) 588-4245

(additional counsel on signature page)

*Attorneys for Class Members Nicholas John Stehle*

RECEIVED AND RETURNED
CLERK U.S. DISTRICT COURT

JUL 2 6 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| MICHELLE WEEKS, *et al.*,<br>         *Plaintiffs,*<br><br>v.<br><br>KELLOGG COMPANY, *et al.*,<br>         *Defendants.*<br><br>_____<br><br>Nicholas John Stehle,<br>         *Objector.* | Case No. CV-09-08102 (MMM) (RZx)<br><br>**OBJECTION TO PROPOSED SETTLEMENT**<br><br>Judge:      Hon. Margaret M. Morrow<br>Date:       August 29, 2011<br>Time:       10:00 a.m.<br>Courtroom: 780<br><br>**CLASS ACTION** |

RECEIVED
BUT
NOT FILED

JUL 2 5 2011

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES .............................................................................. iii

INTRODUCTION .................................................................................................1

I.   The Objector Is a Member of the Class. ........................................1

II.  Under Rule 23, Preventing an Unfair Settlement Is This Court's Duty. ........2

    A.   Courts Should Adopt *ALI Principles* § 3.05 for Reviewing Settlements. ........................................................................3

    B.   The Court Should Discount Attempts by the Settling Parties to Infer Class Approval from a Low Number of Objections. ...................4

    C.   Class Counsel's Recommendation Is Superfluous ..............................6

    D.   The Court Can Apply Section 3.05 of the ALI Principles Consistently With Ninth Circuit Precedent. .........................................7

III. The *Cy Pres* Provisions Betray The Class. ....................................................7

    A.   Class Counsel's Primary Duty Must Be to the Class, Not to Charities .........................................................................8

    B.   The Cy Pres Portion of This Settlement Fails to Target the Class. ...........................................................................9

    C.   The Settlement's Language Permits Donation of Junk Food. ............11

    D.   Class Counsel Overcounts the Value of the *Cy Pres* Remainder. ......12

    E.   The Parties Have Failed to Demonstrate a Lack of Conflict of Interest with the *Cy Pres* Recipients ..............................................13

IV.  This Settlement's Motion Schedule Provides Inadequate Notice to Class Members. ...........................................................................14

V.   Class Counsel's Self-Interested Accounting Has Created Fees That Are Both Excessive and Concealed. ...............................................15

    A.   The Value of Notice and Claim Administration Primarily Benefits Defendants, Not the Class. ................................................15

B.    Class Counsel Has Improperly Valued Charitable Donations of Goods at Their Retail Price. ...................................................................18

C.    Residual *Cy Pres* Should Not Be Valued the Same as Class Benefits. ...................................................................19

D.    In Short, Class Counsel Is Really Asking For One-Third or One-Half the Settlement. ...................................................................20

VI.    The Settlement Places Impermissible and Unjustifiable Burdens upon Both Objectors and Their Counsel. ...................................................................21

VII.    Stehle's *Pro Bono* Attorneys Bring This Objection in Good Faith. .............23

CONCLUSION ...................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*, 52
F.R.D. 373 (D. Kan. 1971)......................................................................6

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .......................................2

*Antoninetti v. Chipotle Mexican Grill*, 614 F.3d 971 (9th Cir. 2010).............................22

*Besinga v. United States*, 923 F.2d 133 (9th Cir. 1991)......................................16

*Coppolino v. Total Call Intern., Inc.*, 588 F. Supp. 2d 594 (D. N.J. 2008) ...................16

*Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir. 2000)....................20

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006)...................................3

*Ellis v. Edward D. Jones & Co.*, 527 F. Supp. 2d 439 (W.D. Pa. 2007). ......................5

*Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434 (S.D. Iowa 2001) ....................4

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .....................................3

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 2005 U.S.
Dist. LEXIS 16468 (D. Me. Aug. 9, 2005)...............................................11

*In re Diet Drugs Prods. Liability Litig.*, 385 F.3d 386 (3rd Cir. 2004) .......................16

*In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106
(7th Cir. 1979) .......................................................................6

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55
F. 3d 768 (3d. Cir. 1995)......................................................2, 4, 5, 6

*In re HP Inkjet Printer Litig.*, No. 5:05-cv-3580 JF, 2011 WL 1158635 (N.D.
Cal. Mar. 29, 2011)...................................................................18

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010)...............14, 24

*In re Prudential Ins. Co. America Sales Practices Litig.*, 148 F.3d 283 (3rd
Cir. 1998)............................................................................18

*In re Relafen Antitrust Litigation*, 360 F.Supp.2d 166 (D. Mass. 2005).........................2

*In re Wells Fargo Securities Litig.*, 991 F. Supp 1193 (N.D. Ca. 1998) ........................11

*Kealoha v. Castle*, 210 U.S. 149 (1908) .....................................................16

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d
677, 680-681 (7th Cir. 1987)...........................................................5

*Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781 (7th Cir. 2004) .................................20

*Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006) ..........................20, 21

*Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292 (M.D. Pa. 1995) ...................5

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) .....................................2

*Riker v. Gibbons*, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) .........................................2

*Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F.Supp.2d 561 (E.D. Pa. 2001)......................................................................................................11, 18

*Silber v. Mabon*, 957 F.2d 697 (9th Cir. 1992) ................................................................2

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ..............................................................................................................*passim*

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)......................................................3, 17

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993)......................................15

*True v. Am. Honda Motor Co.*, 749 F.Supp.2d 1052 (C.D. Cal. 2010). .........................15

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)............................................3

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ..........................17

**Statutes and Regulations**

26 U.S.C. § 170(e)(3)(B) ..................................................................................................18

28 U.S.C. § 1713 ........................................................................................................16, 17

Fed. R. Civ. P. 23..................................................................................................*passim*

Rev. Rul. 85-8, 1985-1 C.B. 59 .......................................................................................18

**Other Authorities**

American Law Institute, Principles of the Law of Aggregate Litig. §3.05 (2010).............................................................................................................*passim*

American Law Institute, Principles of the Law of Aggregate Litig. §3.07 (2010)...........................................................................................................11, 13

John Beisner, *et al.*, *Cy Pres: A Not So Charitable Contribution to Class Action Practice* (2010) ..............................................................................................9

Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 Vand. L. Rev. 1529 (2004)..........................................................................................................6

Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623 (2009) ...................................................................................................................23

Editorial, *When Judges Get Generous; A better way to donate surpluses from class-action awards*, Wash. Post (Dec. 17, 2007)...................................................9

Robert Feenstra and Matthew Shapiro (eds.), SCANNER DATA AND PRICE INDEXES: STUDIES IN INCOME AND WEALTH, vol. 64 (2003) ........................................10

Allison Frankel, "Legal Activist Ted Frank Cries Conflict of Interest, Forces O'Melveny and Grant & Eisenhofer to Modify Apple Securities Class Action Deal," AMERICAN LAWYER LIT. DAILY (Nov. 30, 2010). ..................................23

Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71 (2007).............................5

Adam Liptak, *Doling Out Other People's Money*, N.Y. Times (Nov. 26, 2007) ........................................................................................................................9

Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 13:20 (4th ed. 2002)..........................................................................................................2

Notes of Advisory Committee on 2003 Amendments, Fed. R. Civ. P. 23 .......................14

Martin H. Redish, *et al.*, *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 FLA. L. REV. 617 (2010)...................................................................................................................8, 9

Sam Yospe, *Cy Pres Distributions in Class Action Settlements*, 2009 COLUMBIA BUS. L. REV. 1014 ............................................................................9, 11

Rachel M. Zahorsky, "Unsettling Advocate," ABA J. (Apr. 2010) .................................23

# INTRODUCTION

The settling parties ask this Court to approve a settlement in which class counsel takes the majority of the cash for itself, while directing a majority of the remainder of the settlement's value to charities. As a result, the settlement cannot be approved: class counsel has breached its duty to the class by directing settlement funds to third parties instead of their clients.

Moreover, the settlement cannot be approved because its procedures violate Rule 23. Class counsel gave insufficient notice to the class of its $1.3 million fee request, and the preliminary approval order places improper restrictions upon objections designed to deter class members from exercising their rights.

If the Court does approve the settlement, it cannot approve a $1.3 million award to the attorneys: class counsel has exaggerated the benefits of the settlement to inflate their fee award, and improperly scheduled the fairness hearing to hide the lack of benefit to the class. The Court should wait until the number of claims is known before awarding fees, and then award fees based on the actual benefit to the class.

## I.    The Objector Is a Member of the Class.

Objector Nicholas John Stehle purchased Kellogg's Rice Krispies and Cocoa Krispies cereal between June 1, 2009 and March 1, 2010. Stehle qualifies for membership in the class; he therefore has standing to object to the settlement. Through his counsel, Daniel Greenberg of the Center for Class Action Fairness, Stehle intends to appear at the final approval hearing on August 29, 2011. Greenberg's *pro hac vice* motion is pending; he represents Stehle *pro bono*. Greenberg has filed a separate motion with this court requesting the opportunity to be heard at the final fairness on June 20, 2011; in that brief, he requested the opportunity to cross-examine any witnesses who testify at the hearing in support of settlement approval.

Stehle's mailing address is 2201 Cherry Crossing, Benton, AR 72015; his phone number is (501) 539-0275. Stehle has never objected to any other class action settlement.

1    **II.    Under Rule 23, Preventing an Unfair Settlement Is This Court's Duty.**

2        "Both the United States Supreme Court and the Courts of Appeals have repeatedly

3    emphasized the important duties and responsibilities that devolve upon a district court

4    pursuant to Rule 23(e) prior to final adjudication and settlement of a class action suit." *In*

5    *re Relafen Antitrust Litigation*, 360 F.Supp.2d 166, 192-94 (D. Mass. 2005), citing *inter*

6    *alia Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 623, 117 S. Ct. 2231, 138 L. Ed.

7    2d 68 (1997) ("Rule 23(e) protects unnamed class members from 'unjust or unfair

8    settlements' agreed to by 'fainthearted' or self-interested class 'representatives.'");

9    *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279-80 (7th Cir. 2002) ("district judges

10   [are] to exercise the highest degree of vigilance in scrutinizing proposed settlements of

11   class actions" prior to settlement).

12       "Under Rule 23(e) the district court acts as a fiduciary who must serve as a

13   guardian of the rights of absent class members.... [T]he court cannot accept a settlement

14   that the proponents have not shown to be fair, reasonable and adequate." *In re General*

15   *Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F. 3d 768, 785 (3d. Cir.

16   1995) (quoting *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir.

17   1975)). *See also Riker v. Gibbons,* 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010). "A

18   trial court has a continuing duty in a class action case to scrutinize the class attorney to see

19   that he or she is adequately protecting the interests of the class." Herbert Newberg & Alba

20   Conte, NEWBERG ON CLASS ACTIONS § 13:20 (4th ed. 2002). "Both the class

21   representative and the courts have a duty to protect the interests of absent class members."

22   *Silber v. Mabon,* 957 F.2d 697 (9th Cir. 1992), at 701. *Accord Diaz v. Trust Territory of*

23   *Pacific Islands,* 876 F.2d 1401, 1408 (9th Cir. 1989).

24       There should be no presumption in favor of settlement approval: "[t]he proponents

25   of a settlement bear the burden of proving its fairness." *True v. American Honda Co.*, 749

26   F. Supp. 1052, 1080 (C.D. Cal. 2010) (*citing* 4 NEWBERG ON CLASS ACTIONS § 11:42 (4th

27   Ed.2009)). *Accord* AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE

28   LITIG. § 3.05(c) (2010) ("*ALI Principles*").

1    It is insufficient that the settlement happened to be at "arm's length" without

2    express collusion between the settling parties; because of the danger of conflicts of

3    interest, third parties must monitor the reasonableness of the settlement as well. There is a

4    need for "special attention when the record suggests that settlement is driven by fees; that

5    is, when counsel receive a disproportionate distribution of the settlement, or when the

6    class receives no monetary distribution but class counsel are amply rewarded." *Hanlon v.*

7    *Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998). *Accord Staton v. Boeing Co.*, 327

8    F.3d 938, 964 (9th Cir. 2003) ("If fees are unreasonably high, the likelihood is that the

9    defendant obtained an economically beneficial concession with regard to the merits

10   provisions, in the form of lower monetary payments to class members or less injunctive

11   relief for the class than could otherwise have obtained."). "Because in common fund cases

12   the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting

13   stage, courts have stressed that when awarding attorneys' fees from a common fund, the

14   district court must assume the role of fiduciary for the class plaintiffs." *Vizcaino v.*

15   *Microsoft Corp.,* 290 F.3d 1043, 1052 (9th Cir. 2002) (quoting *In Re Washington Public*

16   *Power Supply Syst. Lit.,* 19 F.3d 1291 (9th Cir. 1994)). "Accordingly, fee applications

17   must be closely scrutinized." *Vizcaino*, 290 F. 3d at 1052.

18   **A.    Courts Should Adopt *ALI Principles* § 3.05 for Reviewing Settlements.**

19   Standards for reviewing settlements differ from circuit to circuit: the "current case

20   law on the criteria for evaluating settlements is in disarray." *ALI Principles* § 3.05

21   comment a at 205. The Ninth Circuit has asked courts to follow an eight-factor test. *E.g.,*

22   *Churchill Village v. General Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004). But the Ninth

23   Circuit has also reversed settlement approvals without reference to the eight-factor test.

24   *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) (reversing settlement approval without

25   reference to eight-factor test).

26   Some of the *Churchill Village* factors are not helpful to evaluating a settlement, not

27   least because the cases give no guidance to how to weight the various factors. Instead,

28   courts should follow § 3.05 of the American Law Institute's *Principles of the Law of*

*Aggregate Litigation*, which, rather than an indeterminate balancing test of factors, asks courts to submit settlements to several tests that demonstrate unfairness. Under § 3.05(a), there is first an initial four-part test that all settlements must meet: the court must consider whether

> (1)   the class representatives and class counsel have been and currently are adequately representing the class;
>
> (2)   the relief offered to the class… is fair and reasonable given the costs, risks, probability of success, and delays of trial and appeal;
>
> (3)   class members are treated equitably (relative to each other) based on their facts and circumstances and are not disadvantaged by the settlement considered as a whole; and
>
> (4)   the settlement was negotiated at arm's length and was not the product of collusion.

In addition to these four mandatory requirements, a "settlement may also be found to be unfair for any other significant reason that may arise from the facts and circumstances of the particular case." *Id.* § 3.05(b).

**B.   The Court Should Discount Attempts by the Settling Parties to Infer Class Approval from a Low Number of Objections.**

Any given class action settlement, no matter how much it betrays the interests of the class, will produce only a small percentage of objectors. The predominating response will always be apathy, because objectors—unless they can obtain *pro bono* counsel—must expend significant resources on an enterprise that will create little direct benefit for themselves. Another common response from non-lawyers will be the affirmative avoidance, whenever possible, of anything involving a courtroom. Class counsel may argue that this understandable tendency to ignore notices or free-ride on the work of other objectors is best understood as acquiescence in or evidence of support for the settlement. This is wrong. Silence is simply *not* consent. *Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 447 (S.D. Iowa 2001) (*citing In re GMC Pick-Up Truck Fuel Tank Prods.*

*Liab. Litig.*, 55 F.3d, at 789.). "Silence may be a function of ignorance about the settlement terms or may reflect an insufficient amount of time to object. But most likely, silence is a rational response to any proposed settlement even if that settlement is inadequate. For individual class members, objecting does not appear to be cost-beneficial. Objecting entails costs, and the stakes for individual class members are often low." Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 73 (2007).

There is usually little hope that opt-outs can recover for their claims—the entire purpose of class actions is to aggregate claims that would be uneconomical to bring individually. "Almost by definition, most class members have too little at stake to warrant opting out of the class litigation and filing an individual lawsuit. Thus, opting out is probably not a viable option even though a proposed settlement is unfair or inadequate." *Id.* at 109. Without *pro bono* counsel to look out for the interests of the class, filing an objection is economically irrational for any individual. "[A] combination of observations about the practical realities of class actions has led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement." *In re GMC Pick-Up Litig.*, 55 F.3d at 812 (*citing In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217-18 (5th Cir. 1981)); *cf. Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292, 297 (M.D. Pa. 1995) ("'[T]he silence of the overwhelming majority does not necessarily indicate that the class as a whole supports the proposed settlement . . . .'"). "[A] low number of objectors is almost guaranteed by an opt-out regime, especially one in which the putative class members receive notice of the action and notice of the settlement offer simultaneously." *Ellis v. Edward D. Jones & Co.*, 527 F. Supp. 2d 439, 446 (W.D. Pa. 2007). "[W]here notice of the class action is, again as in this case, sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a *fait accompli*." *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 680-681 (7th Cir. 1987). "Acquiescence to a bad deal is something quite different than affirmative support." *In re General Motors*

*Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1137 (7th Cir. 1979) (reversing approval of settlement).

When class members have little at stake, as in an action such as this where the maximum recovery is fifteen dollars, the rate of response will be predictably low. This is especially true here, where as discussed below, the notice failed to inform the class that class counsel wished to receive over half of the cash available in the settlement, and the Court placed impermissibly high burdens on objecting. As such, it cannot be seen as something akin to an election or a public opinion poll. *See In re GMC Pick-Up Litig.*, 55 F.3d at 813 (finding that "class reaction factor" does not weigh in favor of approval, even when low number of objectors in large class, when "those who did object did so quite vociferously"); Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1532 (2004). It is typically not worth the average citizen's time or money to object: the slight likelihood that one additional objection will be decisive, when multiplied by the slight increase in an individual class member's payout that such an objection would produce, makes individually-funded objections a losing proposition.

The judge must act as a guardian for *all* class members—whether or not they have formally entered the case by registering an objection. "[T]he absence or silence of class parties does not relieve the judge of his duty and, in fact, adds to his responsibility." *Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*, 52 F.R.D. 373, 375 (D. Kan. 1971). The Court should draw no inference in favor of the settlement from the number of objections, especially given the vociferousness of the objectors. *GM Pick-Up Trucks*, 55 F.3d at 812-13; *ALI Principles* § 3.05 comment *a* at 206.

### C.   Class Counsel's Recommendation Is Superfluous.

Class counsel argues that the opinion of experienced counsel who agreed to the settlement is evidence in favor of settlement approval. Dkt. No. 138-1 at 16. But this makes no sense: counsel negotiated the settlement, and are never going to go to the Court and ask them to disregard what they negotiated, regardless of the underlying fairness of

the settlement. "[T]he lawyers who negotiated the settlement will rarely offer anything less than a strong favorable endorsement." *Principles* § 3.05, comment *a*. The fact that class counsel approves of the settlement can hardly be evidence that the settlement fairly treats the class relative to the benefits received by class counsel.

**D.     The Court Can Apply Section 3.05 of the ALI Principles Consistently With Ninth Circuit Precedent.**

One can use the Section 3.05 standards as a consistent complement to the *Churchill Village* eight-factor test, which also asks courts to examine the risks of the case and the reasonableness of the settlement fund in relation to those risks, and *Molski v. Gleich*, which applied more general grounds of fairness. Stehle recognizes that this court is bound by Ninth Circuit precedent on the question, but asks the Court to adopt ALI's *Principles* § 3.05 in evaluating the settlement, and downplay the importance of *Churchill Village* factors that do nothing to distinguish between good settlements and bad ones. That said, the settlement fails to meet two separate and independent Ninth Circuit precedents.

**III.   The *Cy Pres* Provisions Betray The Class.**

There are five respects in which the *cy pres* provisions are problematic. First, there is a significant possibility that *cy pres* beneficiaries will inappropriately intrude upon and take priority over direct class compensation. Second, the charitable donations' apparently arbitrary area of coverage fails to adequately target the plaintiff class. Third, the language of the settlement permits Kellogg to meet its obligations by donating junk food. Fourth, that arbitrary area of coverage gives rise to legitimate concern that there may be some personal or financial connection between the parties and the *cy pres* beneficiaries. Fifth, especially in the case of public interest litigation *cy pres* beneficiaries, it is impermissible and offensive for class counsel to receive any compensation for directing funds to other members of the bar. Because of the many peculiarities of the *cy pres* portion of this proposed settlement, Stehle asks the parties to take reasonable measures to demonstrate that the *cy pres* portions of this settlement are fair.

## A.   Class Counsel's Primary Duty Must Be to the Class, Not to Charities.

Class counsel has propounded a settlement that gives designated third-party beneficiaries a higher priority than their own clients. Class counsel represents the agreement as delivering $2.5 million of cash and $2.5 million of food "to the Settlement Class" (Plaintiffs' Memorandum of Law, at 1), but this is incorrect. In fact, if the fee request is granted, more than half the cash will go to class counsel; meanwhile, the food donation will go to third parties, not the class. This leaves less than a quarter of the supposed $5 million for the class. What if there are insufficient funds remaining to compensate the class for the claims made? This question is answered in the original stipulated settlement: any taxes owed will be paid in full, class counsel will be paid in full, class representatives will be paid in full – but class members will have their compensation proportionately reduced. Stipulation of Settlement (Dkt. No. 121) at 17-18.

There is no defensible reason to have *any* *cy pres* distribution in this settlement until the class members are completely compensated. Class counsel's acceptance of the consequences of this settlement – that discrete third parties may receive millions of dollars in charitable donations at the expense of a few dollars to thousands of faceless clients – contradicts its duties to its clients. Perhaps class counsel wants the ability to issue a press release suggesting that their law firms are generous donors to a public-spirited organization, when in fact they are spending their putative clients' money. The food banks are not the class counsel's client; the class members are. And the failure of class counsel and the class representative to put the interests of the class first in negotiating this settlement raises severe Rule 23(a)(4) concerns: how can these parties be said to fairly and adequately represent the class when the proposed settlement pursues the interests of third parties at the class's expense?

This prospect is a typical result of *cy pres* settlements, about which there is an emerging consensus that such settlements, by their very nature, invite conflicts of interest. *See, e.g.*, Martin H. Redish, *et al.*, *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 Fla. L. Rev. 617 (2010) (*cy pres*

1    "threatens to undermine the due process interests of absent class members by

2    disincentivizing the class attorneys in their efforts to assure [classwide] compensation of

3    victims of the defendant's unlawful behavior"); John Beisner, *et al.*, *Cy Pres: A Not So*

4    *Charitable Contribution to Class Action Practice* (2010); Sam Yospe, *Cy Pres*

5    *Distributions in Class Action Settlements*, 2009 Columbia Bus. L. Rev. 1014; Editorial,

6    *When Judges Get Generous; A better way to donate surpluses from class-action award*s,

7    Wash. Post (Dec. 17, 2007) ("Federal judges are permitted to find other uses for excess

8    funds, but giving the money away to favorite charities with little or no relation to the

9    underlying litigation is inappropriate and borders on distasteful. In all but the rarest of

10    circumstances, those funds should be made available to individual plaintiffs and not to

11    outside organizations—no matter how worthy"); Adam Liptak, *Doling Out Other*

12    *People's Money*, N.Y. Times (Nov. 26, 2007).

13    **B.**      **The Cy Pres Portion of This Settlement Fails to Target the Class.**

14        Years before an army of commentators began to point out the deficiencies in typical

15    *cy pres* settlements, the Ninth Circuit was on the case. In *Six Mexican Workers v. Arizona*

16    *Citrus Growers,* the district court found that the Arizona Citrus Growers had violated the

17    Farm Labor Contractor Registration Act to the detriment of a class of 1,349

18    undocumented Mexican workers; it then awarded the workers $1.8 million in damages.

19    *Six Mexican Workers,* 904 F.2d 1301 (9th Cir. 1990), at 1303-04. The court ordered "any

20    unclaimed funds be distributed through a *cy pres* award to the Inter-American Fund for

21    indirect distribution in Mexico." *Id.* at 1304.

22        On appeal, the Ninth Circuit remanded. "The district court's proposal benefits a

23    group too far remote from the plaintiff class." *Id.* at 1308. *Cy pres* "will be rejected when

24    the proposed distribution fails to provide the 'next best' distribution." *Id.* Any such

25    distribution must "adequately target the plaintiff class." *Id.* at 1309. "The district court's

26    plan permits distribution to areas where the class members may live, but there is no

27    reasonable certainty that any member will be benefited." *Id.* at 1308. The court insisted

28    that the need for *cy pres* to "effectuate ... the interests of silent class members" was non-

negotiable: "If the district court is unable to develop an appropriate *cy pres* distribution, or finds *cy pres* no longer appropriate, it should consider escheating the funds pursuant to 28 U.S.C. § 2042." *Id.* at 1309.

*Six Mexican Workers'* requirement that the *cy pres* recovery should be directed at the class is not only good law, but good public policy. Strict insistence that a *cy pres* distribution conform to the *cy pres* standards of trust law, and thus serve as a truly "next best" distribution, has the effect of eliminating or deterring arbitrary distributions that betray the interests of class members.

The proposed agreement before the court today contains a *cy pres* provision that not only fails to meet the *Six Mexican Workers* standard, but makes the Inter-American Fund proposal that the trial court proposed and the appellate court rejected appear to be, in comparison, a model of efficiency and precision. The agreement proposes to distribute "Kellogg branded cereals and other food products having a total retail value of $2.5 million" to two food-bank charities, Feeding America and the Westside Food Bank. Order Granting Preliminary Approval, at § IV (b) (2). It is unclear why these two charities were chosen, or what percentages of the distribution each food bank will receive; Feeding America appears to distribute food nationally, but the Westside Food Bank apparently distributes food only within Westside – that is, one portion of Los Angeles County.[1] If each food bank is to receive $1.25 million in "cereals and other food products," then the class members in Westside will be radically overcompensated as compared to the rest of the class. If, on the other hand, the Westside Food Bank will receive a relatively small share of "cereals and other food products" for their distribution, it is unclear why Feeding America is capable of distributing food to the rest of the nation, but not to Westside. (Indeed, Feeding America's Form 990 of 2009 shows that it donated roughly $3.35

---

[1] An Internet search reveals that there are other Westside Food Banks, but presumably this settlement involves the Westside Food Bank in Los Angeles County.

million to the nonprofit Los Angeles Regional Foodbank in food and truck services.[2]) In either case, there is a legitimate concern that this settlement appears to dictate a maldistribution that will betray the interest of class members. The Westside Food Bank's mission has no connection to the nationwide class that has allegedly been harmed; in this respect, the required geographic correspondence between the *cy pres* and the class is wholly absent. *Cf.* Yospe, *supra.*

More and more appellate and district courts are rejecting settlements because they recognize that the *cy pres* cannot be biased toward the home-court territory: *see, e.g., In re Wells Fargo Securities Litig.,* 991 F. Supp 1193, 1197 (N.D. Ca. 1998) (rejecting local *cy pres* distribution); *Schwartz v. Dallas Cowboys Football Club, Ltd.,* 362 F. Supp. 2d. 574, 577 (E.D. Pa. 2005) (rejecting local *cy pres* distribution); *In re Compact Disc Minimum Advertised Price Antitrust Litig.,* 2005 U.S. Dist. LEXIS 16468 (D. Me. Aug. 9, 2005) (rejecting *cy pres* distribution to New York City charities as lacking "national scope"). The American Law Institute's recently-released *Principles of the Law of Aggregate Litigation* makes the same argument: *cy pres* awards "should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class." § 3.07(c) at 217 (2010).

Despite the fact that *Six Mexican Workers* is controlling authority for adjudicating the fairness of a *cy pres* award, it is not cited by class counsel in its brief. Little wonder: the settlement cannot meet that standard. In the words of *Six Mexican Workers,* the *cy pres* fails to "adequately target the plaintiff class." Approval of the Westside Food Bank portion of this settlement would be reversible error.

**C.   The Settlement's Language Permits Donation of Junk Food.**

Furthermore, given the central underlying concern of the settlement – that class members deserve compensation for receiving nutritionally inadequate foodstuffs – it

---

[2] That form is available at http://dynamodata.fdncenter.org/990_pdf_archive/363/363673599/363673599_201006_9 90.pdf .

hardly seems appropriate for any portion of the "cereals and other food products" to include such products as Keebler Rainbow Chips Deluxe Cookies or Kellogg's Pop-Tarts Ice Cream Shoppe Hot Fudge Sundae toaster pastries. The cereals and other food products that Kellogg's distributes as a consequence of this settlement should contain more than empty calories. The proposed settlement contains no such limitation.

### D.   Class Counsel Overcounts the Value of the *Cy Pres* Remainder.

The other *cy pres* portion of this settlement, which will take effect in the event that all class members are fully paid and there is a surplus remaining, itself underscores several *cy pres* problems. In the event of a remainder, those funds will be equally distributed to three charitable and educational institutions: the Westside Food Bank, the food safety program at the University of Georgia, and the Food Safety, Health, and Nutrition Project of Public Justice. Stipulation of Settlement, pp. 17-18.

If this distribution takes place, it will further exacerbate the failure of the *cy pres* to target the class adequately (why wasn't a national food bank named?). Furthermore, it is unclear why a donation to Public Justice's new program is the best use of settlement monies, especially because (according to a recent news release) "the goals of the Food Project have not yet been fully defined."[3] Public Justice is not an appropriate recipient under *Six Mexican Workers*.

The justification for making *cy pres* beneficiaries out of nonprofit law firms appears increasingly distant, and raises problems of self-rewarding behavior as well. This award appears to benefit trial lawyers twice – first by providing *cy pres* recovery to an organization that supports the agenda or causes of trial lawyers generally and that provide litigation support for the trial bar, and second by basing attorneys' fees on the first amount. In effect, this segment of the agreement gives class counsel commissions on commissions.

---

[3] The release is available at
http://www.publicjustice.net/Repository/Files/FoodSafetyAttorneyJobAnnouncement.pdf

These *cy pres* awards, which seem increasingly distant from their appropriate target, raise the questions of what the damages really are to the class, whether the relatively huge (as a part of the settlement) *cy pres* awards are the best possible way to benefit the class, and if there is any ceiling on the commissions that class counsel might claim for its work on behalf of the class. But because it is in the interest of both class counsel and defendants to grease the skids on the settlement, these questions will likely never be answered. These problems demonstrate why it is inappropriate to award attorneys' fees based on the amounts received by third parties: if class counsel gets paid the same whether a dollar goes to the class or goes to charity, class counsel has no incentive to put the interests of their clients first.

### E.    The Parties Have Failed to Demonstrate a Lack of Conflict of Interest with the *Cy Pres* Recipients.

The advocates of a proposed settlement bear the burden of proving its fairness. *See, e.g., True v. Am. Honda Motor Co.,* 749 F. Supp. 2d 1052, 1080 (C.D. Cal. 2010). But there has been no evidence produced by the parties that they have no relationship with the *cy pres* recipients. The American Law Institute's *Principles* dictate that a "*cy pres* remedy should not be ordered if the court or any party has any significant prior affiliation with the intended recipient that would raise substantial questions about whether the selection of the recipient was made on the merits." *Principles* § 3.07 cmt. b at 219.   All of the parties involved in producing the proposed settlement agreement – the named class members, class counsel, defendants, and defendants' counsel – should be required to produce a plain and concise statement for the record attesting that they have no significant affiliation with any of the four projected *cy pres* recipients or those organizations' principals (or, in the alternative, a statement that describes any such affiliation), to be submitted into the docket reasonably in advance of the fairness hearing.[4] In the absence of affirmative disclosures

---

[4] This requirement seems far more relevant and less burdensome than, say, a requirement that any objector must list all the class action objections that he or she, and his or her counsel, has been involved in for the last five years. *See* Section VI below.

evidencing a lack of a conflict of interest, Stehle objects on this independent ground to the *cy pres*.

## IV. This Settlement's Motion Schedule Provides Inadequate Notice to Class Members.

The class notice fails to disclose to the class the size of the attorney-fee request. Moreover, the settling parties have induced this Court to set the calendar of this action so as to foreclose sufficient opportunity for substantive notice. Both are violations of Rule 23(h). *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010), is directly on point. *Mercury Interactive* dictates that a Court must set the objection deadline after the date for filing the fee motion and supporting documents; and that deadline must give class members an "adequate opportunity" to exercise their Rule 23(h) objection powers. *Id.* at 993-94. Rule 23(h) "requires that any class member be allowed an opportunity to object to the fee 'motion' itself, not merely to the preliminary notice that such a motion will be filed." *Id.* When the district court in *Mercury Interactive* set the objection deadline before the deadline for motions for attorneys' fees, and approved a classwide notice that gave no notice of the magnitude of the fee request, it abused its discretion and erred as a matter of law. *Id. at* 993.

Both the class notice and the schedule flunk *In re Mercury*. At the request of the settling parties, the Court set the deadline for objections only one week after motions for attorneys' fees are due—but because objections must be *received* by July 25, and because the Central District of California does not permit objectors to engage in ECF filing, it means that class members must submit their objections by July 22 (and engage an expensive delivery service to do so). Order Granting Preliminary Approval, at ¶¶ 11, 12. "When the district court sets a schedule that denies the class an adequate opportunity to review and prepare objections to class counsel's completed fee motion, it fails to fulfill its fiduciary responsibilities to the class." *In re Mercury*, 618 F.3d at 994-95. *See also* Notes of Advisory Committee on 2003 Amendments, Fed. R. Civ. P. 23 ("For motions by class counsel in cases subject to court review of a proposed settlement under Rule 23(e), it

would be important to require the filing of at least the initial motion in time for inclusion of information about the motion in the notice to the class about the proposed settlement that is required by Rule 23(e)." ).

In short, the absence of any disclosure about the size of the fee request and the flawed motion schedule that the settling parties induced this Court to approve provides an independent ground for the settlement's rejection.

## V.     Class Counsel's Self-Interested Accounting Has Created Fees That Are Both Excessive and Concealed.

Class counsel's memorandum of law in support of its fee award states that it is requesting 24% of the settlement value in exchange for its efforts. Memorandum of Law in Support of Plaintiffs' Motion, at 4. But this fraction is based on the wrong denominator, and is generated entirely through creative accounting. Attorneys' fees should be based on the benefits to the *class*; class counsel is seeking a 24% commission on a variety of payments (and inflated estimates of value of donations) to third parties. Regrettably, a realistic accounting of the settlement reveals that class counsel is asking for something in the neighborhood of one-third to over one-half of the settlement's entire value.

### A.     The Value of Notice and Claim Administration Primarily Benefits Defendants, Not the Class.

Class counsel's first accounting error lies in its contention that it is entitled to count the costs of claim administration and notice to the class as a benefit to the class. This is wrong. First, as a matter of law, post-settlement notice is carried out almost exclusively for the benefit of *defendants*, rather than the class, and thus cannot be double-counted as a class benefit; second, the theory that notice should be counted as a class benefit for purposes of evaluating the settlement would lead to absurd results that contradict the Class Action Fairness Act.

The consideration that defendants receive for settling a class action is a waiver of all claims by class members. But if an individual class member "later claims he did not receive adequate notice and therefore should not be bound by the settlement, he can litigate that issue on an individual basis when the settlement is raised as a bar to a lawsuit

he has brought." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). *See also In re Diet Drugs Prods. Liability Litig.*, 385 F.3d 386, 396 (3rd Cir. 2004) (countenancing "a collateral attack on the order approving the Settlement" for claims of inadequate notice); *Kealoha v. Castle*, 210 U.S. 149, 155 (1908) (holding that there can be no *res judicata* without notice). Defendants therefore have every incentive to ensure that classwide notice meets constitutional requirements. This is far from a hypothetical concern: defendants have found themselves on the wrong end of repeat litigation when class members failed to receive constitutionally-adequate notice. *See, e.g., Besinga v. United States*, 923 F.2d 133, 137 (9th Cir. 1991) (reversing dismissal of plaintiff's case because no notice was given in prior class action). *Cf. Coppolino v. Total Call Intern., Inc.*, 588 F. Supp. 2d 594 (D. N.J. 2008) (holding that plaintiff's claim was not barred by *res judicata* when class notice in earlier settlement was constitutionally inadequate). Notice benefits defendants when it creates claim preclusion that would not otherwise exist. As such, the expense of class notice cannot simply be entered as a benefit on the class's side of the ledger.

Furthermore, if the Court adopted the view that notice benefited the class, the very act of settlement could be considered "consideration"—even if class members got nothing in exchange for waiving their rights—simply because those class members received a letter in the mail notifying them of the settlement. For example, imagine a settlement against a bank that provided only a token $100 *cy pres* award, but in which the defendant was entitled to deduct half the cost of notice from individual customers' accounts to pay for attorneys' fees. Such a settlement would normally be prohibited by 28 U.S.C. § 1713.[5] Because the very act of notice "substantially outweighs the monetary loss," if a court adopted the proposition that notice benefits the class generally, the skimming of all class

---

[5] "The court may approve a proposed settlement under which any class member is obligated to pay sums to class counsel that would result in a net loss to the class member only if the court makes a written finding that nonmonetary benefits to the class member substantially outweigh the monetary loss."

members' accounts would be permissible. Because such a result would be flatly unjust and impossible to square with the plain import of the statute, this suggests that counting notice as a class benefit generally is insupportable and unfair.[6]

The commission that class counsel demands for administrative expenses is similarly indefensible. As part of its share of the settlement, class counsel in effect demands a cut of the court-approved fees and expenses of the claims administrator, as well as a cut of the administrative and maintenance fees associated with the settlement fund. Just as in the case of the notice expenses, the money going to the claims administrator is money going to a third party, rather than the class, and should not be considered part of the common fund for purposes of calculating the fee award. Any other result is the economic equivalent of a kickback where class counsel gets money based on how much the settlement administrator bills.

Such an arrangement would create a conflict of interest between the attorney and the class. Under the current structure, every dollar the settlement administrator receives is a dollar the class will not receive. If attorney fees are paid only on what the class receives, class counsel will have appropriate incentive to ensure that settlement administration is efficient and to take steps to prevent overbilling or wasteful expenditures. But if class counsel is given a commission based on the size of administrative expenses, it would have no financial incentive to oversee the efforts of the administrator, creating a perverse system of compensation that discourages assignment of resources to the class. *Cf. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (attorney fee calculations should use methods which align the interests of attorney and client).

---

[6] There is dictum to the contrary in *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003), but that case cites no authority and provides no reasoning for the proposition. In the context of that opinion—which included notice as a class benefit and found the resultant attorneys' fee award impermissibly high—it appears that the Ninth Circuit was assuming that notice costs could be counted as a class benefit only for the sake of argument. Moreover, any argument to the contrary would have to account for the fact that *Staton* appears to have been legislatively superseded by the enactment in 2005 of 28 U.S.C. § 1713.

1    Class counsel may legitimately request a percentage of what the class receives:
2    however, it should not be rewarded for the amounts the defendant pays the post office and
3    the settlement administrator any more than it should be rewarded for the amounts the
4    defendants pay defense counsel. In short, class counsel should only be asking for a share
5    of the money the class *actually* receives. The "key consideration in determining a fee
6    award is reasonableness in light of the benefit *actually conferred*" (emphasis in original).
7    *In re HP Inkjet Printer Litig.*, No. 5:05—cv—3580 JF, 2011 WL 1158635, at *10 (N.D.
8    Cal. Mar. 29, 2011) (quoting *Create-A-Card Inc., v. Intuit, Inc.*, No. C 07-06452 WHA,
9    2009 WL 3073920, at * 3 (N.D. Cal. Sept. 22, 2009)). "'[N]umerous courts have
10   concluded that the amount of the benefit conferred logically is the appropriate benchmark
11   against which a reasonable common fund fee charge should be assessed.' " *In re*
12   *Prudential Ins. Co. America Sales Practices Litig.*, 148 F.3d 283, 338 (3rd Cir. 1998)
13   (quoting Conte, 1 *Attorney Fee Awards* § 2.05, at 37). "In determining the appropriate
14   amount of attorneys' fees to be paid to class counsel, the principal consideration is the
15   success achieved by the plaintiffs under the terms of the settlement." *Schwartz v. Dallas*
16   *Cowboys Football Club, Ltd.*, 157 F.Supp.2d 561, 579 (E.D. Pa. 2001). *See also ALI*
17   *Principles* § 3.13. In short, class counsel is entitled to request a share of the benefits it
18   brings to the class; its demand for a share of expenditures that benefit other parties in the
19   action is unreasonable.

20   **B.    Class Counsel Has Improperly Valued Charitable Donations of Goods at
         Their Retail Price.**

22       Class counsel's second accounting error lies in its valuation of the cereals and other
23   foods that it intends to distribute to food banks. The agreement at hand requires the
24   defendants to supply cereal and food "having a total retail value of $2.5 million" to
25   charities. But these goods cannot realistically be valued at $2.5 million for purposes of
26   calculating settlement value. If Kellogg made a donation of $2.5 million retail value of
27   food to charities, the IRS would not allow Kellogg to count it as a $2.5 million deduction
28   on its taxes. 26 U.S.C. § 170(e)(3)(B); Rev. Rul. 85-8, 1985-1 C.B. 59. And Kellogg is

1   not counting the donation on its books as a $2.5 million loss. Class counsel should not be

2   allowed to give the charitable donation a higher value than Kellogg or the IRS would. The

3   appropriate measure is Kellogg's costs (or, if one were to use the IRS rule, halfway

4   between costs and market value, capped at twice costs). Of course, nationally branded

5   products will always be sold at a substantial markup. *See* Robert Feenstra and Matthew

6   Shapiro (eds.), SCANNER DATA AND PRICE INDEXES: STUDIES IN INCOME AND WEALTH,

7   vol. 64 (2003), at 190. A more realistic estimate is $1.8 million, rather than $2.5 million.

8        Indeed, because the defendants will be able to make charitable donations of Kellogg

9   brands that haven't sold as well in the marketplace, even the use of wholesale prices for

10  purposes of valuation is a metric that is more favorable for Kellogg (which wants to

11  reduce its exposure) and for class counsel (which wants to maximize its commission) than

12  for the class, whose interests would best be served by valuing Kellogg's food donations at

13  the same amount the IRS would value them.

14       Because there is so little information about what products Kellogg will actually

15  give to charity, any calculation of how much the $2.5 million retail figure overstates the

16  value of the settlement would be inexact. What is clear is that pretending that this portion

17  brings anything like $2.5 million in value to the class is a material accounting error in

18  multiple respects, and one that exaggerates the value of the settlement in the name of

19  inflating the attorney-fee award.

**C.    Residual *Cy Pres* Should Not Be Valued the Same as Class Benefits.**

21       Because the parties scheduled the fairness hearing before the claims deadline, we

22  do not know whether the class will make claims that exceed the amount in the settlement

23  fund. But if the class makes claims short of the total amount in the settlement fund, the fee

24  award should be reduced accordingly. If class counsel receives the same 24% award

25  whether money goes to the class or goes to third parties, it will not have the proper

26  incentive of informing class members of the availability of relief. *See* Section V.A, above.

27

28

**D.     In Short, Class Counsel Is Really Asking For One-Third or One-Half of the Settlement.**

To sum up: class counsel's fee award is a much bigger share than it claims when these errors are stripped from its analysis. As noted above, because of the settling parties' several failures of transparency, it is difficult to calculate class counsel's likely expectation, but one can make reasonable assumptions. Indisputably, class counsel is demanding nearly 53% of the cash that the settlement will produce, and perhaps a higher percentage of the cash that the class (rather than impermissibly unrelated third parties) will receive. Calculating what portion class counsel will actually receive of the entire settlement value that is outlined in class counsel's fee request is more difficult, but that share is assuredly much higher than 24%.

As noted above, it is inappropriate to count notice and administration costs as a class benefit – one might just as well argue that a substantial part of the value derived from the purchase of a new car comes from the experience of negotiating with the dealership's sales staff. Furthermore, it is a significant overstatement to express the value to the class of food bank donations in retail dollars. If we assume that the $2.5 million in cash is fully paid out so as to benefit class members as much as possible, and that the $2.5 million in food donations actually is worth two-thirds of that to the class, this means that class counsel is actually asking for nearly 32% of the settlement. But given the possibility that the fund may not be able to pay all claimants, in that case even this significantly higher percentage will understate class counsel's share of the settlement. Alternatively, if we assume that the settlement lacks the money to pay the class, each class member's share is therefore reduced *pro rata*. This would mean that the food bank donations would not qualify as class benefits, and therefore that the value of those donations to class members would be minimal. *See, e.g., Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2004) ("There is no indirect benefit to the class from the defendant's giving the money to someone else."); *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952 (7th Cir. 2006); *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877, 882 (7th Cir. 2000). This

would also mean that class counsel would, in fact, be demanding nearly 53% of the value of the settlement. One thing is for sure: whether counsel's share of the settlement is in the upscale neighborhood of one-third (which is, of course, the typical plaintiff attorney's fee for an individual action) or in the posh neighborhood of over one-half, class counsel has moved out of the neighborhood of the Ninth Circuit's 25% benchmark entirely. *E.g.*, *Six Mexican Workers*, 904 F.2d at 1311. The appropriate fee award is 25% of the amount claimed by class members.

## VI. The Settlement Places Impermissible and Unjustifiable Burdens upon Both Objectors and Their Counsel.

Under Rule 23(e), "any class member may object" to a proposed settlement. Class members have a right to object; in some sense, it is the only right that an objector has. That right is not merely a privilege that a settlement agreement may regulate or obstruct. Regrettably, the settlement agreement burdens this right in a manner that seems almost designed to make the task of a legitimate objector inordinately difficult.

In particular, the Order that preliminarily approves this settlement requires any objector to "provide a detailed list of any other objections submitted by the objector, or the objector's counsel, to any class actions pending in any court in the United States, state or federal, in the previous five (5) years." Order Granting Preliminary Approval, at ¶ 15. One can conceive of several reasons for this requirement; none of those reasons are good.

If the settlement agreement required the disclosure of past judicial sanctions (for, e.g., vexatious litigation or other abuse of the legal process), requiring such disclosure could be reasonable. But simply requiring objectors to list all the circumstances in which they have been so victimized by flawed settlements that they have chosen to pursue legal remedies seems to serve no legitimate purpose. Rather, this requirement seems unduly burdensome and impermissibly designed to deter legitimate objections.

In a now-vacated federal district court opinion, the judge once noted that the plaintiff in that case has participated in multiple class action lawsuits; according to the judge, this indicated that the plaintiff was "merely seeking the 'quick buck' " and was

1  "not truly interested in vindicating any of the rights of the proposed class members."

2  *Murray v. GMAC Mortgage Corporation,* 434 F.3d 948 (7th Cir. 2006), at 954. But this

3  judgment was vacated: as the appellate court noted, "The district judge did not cite a

4  single decision supporting the proposition that someone whose rights have been violated

5  by 50 different persons may sue only a subset of the offenders." *Id.* Similarly, a class

6  member subjected to several unfair class action settlements is entitled to object multiple

7  times without penalty. *Cf., e.g., Antoninetti v. Chipotle Mexican Grill, Inc.,* 614 F.3d 971,

8  980 (9th Cir. 2010) (reversible error to hold plaintiff's litigation history against him).

9  The justification for the provision that requires Stehle's counsel to disclose any

10  objections they have submitted in pending settlements is equally mysterious. The theory is

11  apparently that when the objector's counsel has experience in class actions, this is grounds

12  for suspicion. The benefits of experience are uncontroversial in any other practice area; if

13  you've just been named in a criminal indictment, you don't hire a patent lawyer. There is

14  no reason to hold against Stehle the Center for Class Action Fairness's success in

15  objecting to previous bad class action settlements. As another court in this District

16  responded to the claim that the arguments of the objectors' attorneys should be

17  downgraded because they have had the temerity to represent other objectors in the past:

18  "Plaintiffs attack many of the Objectors' counsel because they have represented objectors

19  in other actions in the past. This has no greater bearing on the merits of the objections

20  raised than a plaintiffs counsel's experience in filing class action suits speaks to the merits

21  of claims he brings." *True v. Am. Honda Motor Co.,* 749 F. Supp. 2d 1052, 1079 (C.D.

22  Cal. 2010) (citation omitted).

23  Notwithstanding Stehle's contention that the requirement to list any other class

24  action objections that his counsel have been involved in is puzzling, burdensome, and

25  improper, the Center for Class Action Fairness provides the required list in an attached

26  declaration from Theodore Frank, the attorney who runs the Center.

27

28

**VII.   Stehle's *Pro Bono* Attorneys Bring This Objection in Good Faith.**

Daniel Greenberg, Stehle's attorney, is senior counsel for the Center for Class Action Fairness LLC ("the Center"), a non-profit program of the 501(c)(3) DonorsTrust that was founded in 2009. The attorneys engaged by the Center represent consumers *pro bono* by, among other things, representing class members aggrieved by class action attorneys—particularly attorneys who negotiate settlements that benefit themselves at the expense of their putative clients. The Center has won millions of dollars for class members since its founding in 2009. *See, e.g.*, Rachel M. Zahorsky, "Unsettling Advocate," ABA J. (Apr. 2010); Allison Frankel, "Legal Activist Ted Frank Cries Conflict of Interest, Forces O'Melveny and Grant & Eisenhofer to Modify Apple Securities Class Action Deal," AMERICAN LAWYER LIT. DAILY (Nov. 30, 2010).

It is perhaps relevant to distinguish the Center's mission from the agenda of those who are often styled "professional objectors." A number of "professional objectors" are for-profit attorneys who attempt or threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the attorneys' fees; thus, some courts presume that the objector's legal arguments are not made in good faith. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009), 1635-36. This is not the business model of the Center for Class Action Fairness, which is funded entirely by charitable donations and court-awarded attorneys' fees. While the Center focuses on bringing objections to unfair class action settlements, it refuses to engage in *quid pro quo* settlements to extort attorneys; the Center has never settled an objection.

Because the Center does not object indiscriminately, it has an excellent track record of success. In 22 cases to date where the Center has objected 23 times, courts have rejected the underlying settlement or materially modified the settlement and fee request ten times; on two other occasions, parties responded to the Center's objection before the fairness hearing by modifying settlements so as to provide millions of dollars more of cash to the class. The Center has lost two objections with finality and has thirteen objections pending in trial or appellate courts (including four where its objection was

1 | upheld in part). In short, Stehle brings this objection in good faith to protect the interests
2 | of the class. Nonetheless, it is the experience of the Center, based on the conduct of class
3 | counsel in other cases, that some attorneys will falsely and unjustifiably accuse the Center
4 | of seeking to extort class counsel. If this Court has any doubt whether the Center's
5 | objection is brought in good faith, Stehle and the Center are willing to stipulate to an
6 | injunction prohibiting them from accepting a cash payment in exchange for the settlement
7 | of this objection.

8 | ## CONCLUSION

9 | Class counsel has breached its duty to the class by creating insufficient notice, by

10 | sending the lion's share of the settlement to third parties, by requesting an impermissibly

11 | large attorneys' fee, by making extraordinarily self-interested calculations that do not

12 | accurately represent the settlement's value, and by creating impermissible obstacles to

13 | objections. The proposed settlement and accompanying notice fails to meet the

14 | requirements of either *Six Mexican Workers* or *Mercury Interactive*. For these

15 | independent reasons, this Court should refuse to approve the settlement.

16 | Should the Court nevertheless approve the settlement, it must sharply reduce the

17 | fees that class counsel requests, so as to be consistent with the Ninth Circuit 25%

18 | benchmark and so as to reward class counsel only for the benefits this settlement brings to

19 | the class. As such, it must delay ruling on the fee motion until the number of claims is

20 | known.

21 | Dated: July 22, 2011

22 | Respectfully submitted,

23 |

24 | */s/ Daniel Greenberg*
Daniel Greenberg (*pro hac vice* pending)

25 | **GREENBERG LEGAL SERVICES**
**CENTER FOR CLASS ACTION FAIRNESS LLC**

26 | 55 Fontenay Circle
Little Rock, AR 72223

27 | DnGrnbrg@gmail.com
(501) 588-4245

28 |

1

2      */s/ George Azadian*
       George Azadian (SBN 253342)
3      **THE MATHEWS LAW GROUP**
       2596 Mission Street, Suite 204
4      San Marino, CA  91108
       George@ctmesq.com
5      (626) 683-8291
6
7      */s/ Theodore H. Frank*
       Theodore H. Frank (SBN 196332)
8      **CENTER FOR CLASS ACTION FAIRNESS LLC**
       1718 M Street NW, No. 236
9      Washington, DC 20036
       tedfrank@gmail.com
10     (703) 203-3848
11
12     Attorneys for Nicholas Stehle
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CERTIFICATE OF SERVICE

I hereby certify that on this day I served true and correct copies of the foregoing **OBJECTION OF NICHOLAS JOHN STEHLE** and **NOTICE OF INTENT TO APPEAR** upon class counsel and defendants' counsel via Federal Express to the addresses below for delivery Monday, July 25, 2011, per the instructions of the Settlement Notice.

Clerk of Court
United States District Court
Central District of California
Roybal Federal Building
255 East Temple Street
Los Angeles, CA  90012

Gillian L. Wade
Sara D. Avila
Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, CA  90405

Dean N. Panos
Richard P. Steinken
Jenner & Block LLP
353 N. Clark Street
Chicago, IL  60654-3456

DATED this 22nd day of July, 2011.

<u>(s) Adam Schulman</u>
Adam Schulman